# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE LAND AND MINERAL GROUP, LLC | : |
| Plaintiff, | : |
| v. | : 3:16-CV-00897 |
| | : (JUDGE MARIANI) |
| DELAWARE RIVER BASIN COMMISSION | : |
| Defendant, and | : |
| DELAWARE RIVERKEEPER NETWORK MAYA K. VAN ROSSUM, THE DELAWARE RIVERKEEPER | : |
| Intervenors-Defendants | : |

## MEMORANDUM OPINION

Presently before the Court is a Motion to Intervene filed by Damascus Citizens for Sustainability, Inc. ("DCS"). (Doc. 49). For the reasons that follow, the motion will be denied.

### I.   INTRODUCTION AND PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group LLC filed a Complaint against Defendant Delaware River Basin Commission (the "DRBC"). (Doc. 1). In the Complaint, Plaintiff asks the Court to enter a declaratory judgment holding that the DRBC lacks jurisdiction or the authority to require it to seek prior approval from the DRBC for Plaintiff's intended plan to construct a well pad and drill a natural gas well on property which Plaintiff

owns in Wayne County, Pennsylvania (75 acres of which is located in the Delaware River Basin).

Intervenors-Defendants the Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper (collectively referred to as the "DRN") filed a motion to intervene on July 5, 2015, (Doc. 10), which the Court granted on September 12, 2016.[1] (Doc. 26). On November 11, 2016, the DCS filed a Motion to Intervene. (Doc. 49). The DRBC opposes the DCS's Motion. (Doc. 61).

## II. STATEMENT OF FACTS

The Delaware River Basin Compact (the "Compact") is an interstate compact dated November 2, 1961, by and among the Commonwealth of Pennsylvania, New York State, New Jersey, Delaware, and the United States. (Doc. 11, at 2). The purpose of the Compact is the conservation, utilization, development, management and control of the water and related resources of the Delaware River Basin. (*Id.*) (citing 32 Pa. Stat. Ann. § 815.101). The Compact created the Defendant DRBC, which is tasked with the adoption and promotion of uniform and coordinated policies for water conservation, control, use and management in the Delaware River Basis. (*Id.*).

---

[1] The DRN is a not-for-profit organization established in 1988 whose purpose is "to protect, preserve, and enhance the Delaware River, all of its tributary streams, and the habitats and communities of the Basin." (*Id.* at 2-3). It has over 15,000 members and works on issues, actions, regulations, legislation, policies, programs, and decisions that impact the health of the Delaware River Basin. (*Id.* at 3). In this matter, the DRN "seeks to intervene to defend the validity of the DRBC's jurisdiction and authority over activities that may affect the water resources of the Basin and to protect and preserve the interests of DRN and its members in the Basin." (*Id.* at 2).

The DCS "is a non-profit 501(c)(3) grass roots citizens group focused on protection of public health and the environment from pollution caused by oil and gas development using hydraulic fracturing and horizontal drilling and production and related activities and infrastructure." (Doc. 55, at 3). It seeks to intervene in this litigation in order "to defend the jurisdiction of DRBC under the Compact and its authority over activities that may affect the water resources of the Basin." (*Id.*). According to the DCS:

> Many of DCS's 5000 members live, work, have interests in, and recreate in the Delaware River Basin. Millions of others, such as residents of New York City and Philadelphia, use water from the Basin. DCS and its members rely on the Delaware River Basin Compact and its implementations by the Delaware River Basin Commission to review and regulate any and all projects that may have an adverse effect on the waters of the Basin and, by extension, public health and the environment of the Basin.
>
> Since its inception in 2008 DCS has seen a growing number of cases where individuals and communities outside the Delaware River Basin have suffered serious health impacts from pollution caused by fracking near their homes and communities or upstream from them. DCS and its members are very concerned that similar types of fracking impacts would occur in the Basin if these activities are determined to be beyond the control of the DRBC.

(*Id.*). The Defendant DRBC opposes DCS's Motion. (Doc. 61).

### III.   ANALYSIS

#### A.  Intervention As of Right

Federal Rule of Civil Procedure 24(a)(2) governs intervention as of right. It provides, in relevant part:

> On timely motion, the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

3

Fed. R. Civ. P. 24(a)(2). In this Circuit, a non-party may intervene as of right if it can satisfy four factors:

(1) The application for intervention is timely;
(2) The applicant has a sufficient interest in the litigation;
(3) The interest may be affected or impaired, as a practical matter by the disposition of the action; and
(4) The interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995) (citations omitted). The Court will address each in turn.

### i.     The DCS's Motion is Timely

In considering whether an intervention motion is timely, the Court considers "all the circumstances," including "(1) how far the proceedings have gone when the movant seeks to intervene, (2) the prejudice which resultant delay might cause other parties, and (3) the reason for the delay." *Choike v. Slippery Rock Univ. of Pennsylvania*, 297 F. App'x 138, 140 (3d Cir. 2008) (internal citation and quotation marks omitted). Here, the Court finds that the DCS's motion is timely. At such an early stage of the litigation, where the parties have not exchanged any discovery and the Court has yet to rule on any dispositive motions, the Court finds that the DCS's intervention will not prejudice the parties. *See Nat'l Collegiate Athletic Ass'n v. Corbett*, 296 F.R.D. 342, 347 (M.D. Pa. 2013) ("Generally, an applicant's intervention will not prejudice the current parties where discovery has yet to commence and dispositive motions have yet to be filed.") (citing *Mountain Top*, 72 F.3d at 370). Accordingly, the DCS has satisfied the first factor for intervention as of right.

### ii. The DCS Has a Sufficient Interest in the Litigation

Next, the Court will consider whether the DCS has a sufficient interest in the litigation. The Supreme Court has held that in order to intervene as of right, the proposed intervenors must possess an interest that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). The Third Circuit has instructed that a "significantly protectable" interest "must be a legal interest as distinguished from interests of a general and indefinite character." *Mountain Top*, 72 F.3d at 318 (internal citation and quotation marks omitted). Specifically, "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.*

The Director of the DCS, Barbara Arrindell, has a submitted a Declaration identifying several interests of the DCS which it alleges are significantly protectable. These interests include various health and environmental interests related to fracking. (Doc. 55-1). The Court concludes that the DCS possesses a "significantly protectable" legal interest in this litigation. Courts in this Circuit have granted intervention as of right to environmental groups seeking to oppose a challenge to EPA water quality standards where the proposed intervenors alleged that their members used the waters for aesthetic and recreation purposes and the core objective of the organization was the restoration and preservation of the water. *See, e.g., Am. Farm Bureau Fed'n v. United States Enviro. Protection Agency*, 278 F.R.D. 98 (M.D. Pa. 2011). In that case, the Court found that the proposed intervenors' interest was "significantly protectable" where the group claimed to "have an interest in

efforts affecting the Bay, not only because the groups' individual members utilize the Bay and its tributaries for recreational and aesthetic purposes, but also because such efforts go to the core mission of the groups." *Id.* at 107. "Given their past legal, educational, and physical efforts given toward protecting and restoring the Bay, and the personal use and enjoyment of the Bay by the groups' individual members, the court finds that these groups have demonstrated a legally protectable interest in the outcome of the case." *Id.* The same logic applies to the DCS in the instant litigation, and the Court finds that the DCS has demonstrated a sufficient interest and "significantly protectable" interest in the litigation and therefore satisfied the second intervention as of right factor.

### iii.   Impairment of Interests

The third intervention as of right factor requires the movant to demonstrate an interest that may be affected or impaired, as a practical matter, by the disposition of the action. "In order to meet the requirements of Rule 24(a)(2), proposed intervenors must also demonstrate that their interest might be affected or impaired, as a practical matter, by the disposition of the action in their absence." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 107 (citing *Mountain Top*, 72 F.3d at 368). In determining whether the DCS's interest may be impaired, the Court must consider the nature of the relief sought as well as the practical consequences of such a ruling. According to the DCS:

> As discussed in the Arrindell Declaration, in many other parts of Pennsylvania that are outside of the Delaware River Basin there have been very significant adverse health impacts caused by the whole range of unconventional gas exploration, production, and development (often referred to collectively as 'fracking'). To the best of our knowledge

6

> no one who lives, works, or recreates within the Basin has experienced such health impacts as yet for one and perhaps only one reason. That reason is the moratorium on fracking and the protections built into the Compact and the regulatory controls established and enforced by the DRBC.

(Doc. 55 at 6).

The Court agrees with the DCS, and finds that granting Plaintiff's relief could affect or impair its interests. "[C]ourts have granted intervention as of right to public interest groups in actions challenging the legality of a measure which it had supported or in circumstances where the outcome of the litigation might affect the group's members' enjoyment of the resource." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 109. Because granting the Plaintiff's requested relief could, as a practical matter, impair the DCS's members' health, enjoyment and use of the River Basin, the Court finds that the DCS has demonstrated that its interests may be impaired by the disposition of the action and thus satisfied the third factor for intervention as of right.

### iv. Adequate Representation

Finally, the Court will address the fourth intervention as of right factor: whether the Defendant DRBC and the Intervenors-Defendants adequately represent the DCS's interests. The entirety of the DCS's argument with respect to this factor is as follows:

> The Declaration of Barbara Arrindell attached to this brief describes the focus of the advocacy and educational activities of DCS on health issues related to fracking. The environmental concerns of DRBC and DRN would logically extend to health impacts, public health issues are not the direct founding principles of either organization. Clearly, adverse health impacts of fracking are far more of the driving force for DCS than such impacts are for DRBC or DRN.

7

(Doc. 55, at 6). The DRBC opposes the DCS's Motion on the grounds that its interests are adequately represented by the DRN. Specifically, the DRBC maintains that:

> DCS contends that its purported interest in protecting the personal health and well-being of its members living in the Delaware River Basin against pollution and environmental risks associated with hydraulic fracturing in the Basin would not be adequately represented by the DRBC or the DRN because public health issues are not the 'founding principles' of either organization. In the context of this lawsuit, DCS's interest is virtually identical to that of the DRN who likewise seeks to protect the recreational, aesthetic and environmental concerns of its members living in the Basin from the pollution, pollutants and use of water resources attendant in natural gas exploration. Because both DRN and DCS are groups of citizens living in the Basin who are concerned about potential adverse effects on water resources, the environment and public health from natural gas exploration and production activities using high volume hydraulic fracturing techniques, their respective interests are co-extensive. DCS's interests would be adequately and diligently pursued by DRN.

(Doc. 61, at 7-8).

"Inadequate representation can be based on any of three possible grounds." *United States v. Territory of Virgin Islands*, 748 F.3d 514, 519-20 (3d Cir. 2014). Those grounds are: "(1) that although the applicant's interest are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interest; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." *Id.* at 520 (internal citation and quotation marks omitted).

Here, the Court finds that the DCS's interests are adequately represented by both the Defendant and the Intervenors-Defendants. As the DCS's Motion notes, it "seeks intervention to defend the jurisdiction of DRBC under the Compact and its authority over

8

activities that may affect the water resources of the Basin." (Doc. 55, at 3). That is the same interest shared by both of the Defendants and the Intervenors-Defendants. Moreover, the Court agrees with the DRBC that "[b]ecause both DRN and DCS are groups of citizens living in the Basin who are concerned about potential adverse effects on water resources, the environment and public health from natural gas exploration and production activities using high volume hydraulic fracturing techniques, their respective interests are co-extensive" and the "DCS's interests would be adequately and diligently pursued by DRN." (Doc. 61, at 8). Accordingly, because the DCS's interests are adequately represented by the parties in this litigation, the Court will deny the DCS's Motion to Intervene as of Right. (Doc. 49).

### B. Permissive Intervention

Alternatively, the DCS seeks permissive intervention. Under Rule 24(b)(2) the Court may permit "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In deciding whether to permit intervention under Rule 24(b), 'courts consider whether the proposed intervenors will add anything to the litigation.'" *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 (quoting *Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 462, 471 (M.D. Pa. 2005)). The Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Nat'l Collegiate Athletic Ass'n*, 296 F.R.D. at 350.

Here, DCS argues that the granting permissive intervention "will not prejudice existing parties at this early stage of litigation." (Doc. 55, at 6). DCS further argues that it "will add considerably to the evaluation of public and individual health impacts that could result from the Court's disposition of this matter." (*Id.*). Although the Court finds that the DCS's participation will not prejudice existing parties, it doubts whether the DCS's participation will add anything to this litigation. Specifically, the narrow issue before the Court is whether the DRBC lacks jurisdiction or the authority to require the Plaintiff to seek prior approval from it for Plaintiff's intended plan to construct a well pad and drill a natural gas well on property which Plaintiff owns in Wayne County, Pennsylvania (75 acres of which is located in the Delaware River Basin). Moreover, and notably, the DCS has failed to provide the Court with the pleading required by Federal Rule of Civil Procedure 24(c) which makes analyzing whether the DCS would add anything to this litigation difficult, if not impossible.[2] Therefore, the Court will deny the DCS's Motion for Permissive Intervention.

---

[2] Rule 24(c) requires an intervention motion to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Here, the DCS have failed to attach any pleading setting out their defense for which intervention is sought, which in and of itself warrants a denial of the motion. *See, e.g., Ulrich v. Corbett*, Civil No. 1:14-CV-0919, 2014 WL 3339566, at *3 (M.D. Pa. July 8, 2014) (denying motion to intervene for failure to comply with Rule 24(c)); *Hemy v. Perdue Farms, Inc.*, Civil Action No. 11-888 (FLW), 2011 WL 6002463, at *8 n.4 (D.N.J. Nov. 30, 2011) ("Some courts have held that the failure to attach a pleading asserting a claim or defense is, alone, a basis for denying a motion to intervene.") (citing *Lexington Ins. Co. v. Caleco, Inc.*, No. 01-5196, 2003 WL 21652163, at *5 (E.D. Pa. Jan. 25, 2003); *Porter v. T.D. Bank, N.A.*, Civil Action No. 10-7243, 2011 WL 925734, at *2 (Mar. 14, 2011) ("The requirements of Rule 24(c) are not, however, mere suggestions.") (citing 6 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 24.20 (3d ed. 2010) ("[A] district court will be unable to evaluate a motion to intervene, and the existing parties will be unable to make a meaningful response to the motion, unless they know exactly what claims or defenses the movant proposes to bring to the lawsuit. A proposed pleading is, therefore, an essential part of the motion.").

## IV. CONCLUSION

For the reasons set forth above, the Court will deny the DCS's Motions to Intervene. A separate Order follows.

_____
Robert D. Mariani
United States District Judge