## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE LAND AND MINERAL   :
GROUP, LLC   :
  :
    Plaintiff,   :
    v.   :   **3:16-CV-00897**
  :   **(JUDGE MARIANI)**
DELAWARE RIVER BASIN   :
COMMISSION   :
  :
    Defendant, and   :
  :
DELAWARE RIVERKEEPER NETWORK :
MAYA K. VAN ROSSUM, THE   :
DELAWARE RIVERKEEPER   :
  :
    Intervenors-Defendants   :

## <u>MEMORANDUM OPINION</u>

Presently before the Court is a Motion to Dismiss filed by Defendant Delaware River

Basin Commission (the "Commission" or "DRBC"). (Doc. 12). For the reasons that follow,

Defendant's Motion will be granted. On the face of Plaintiff's Complaint, it is apparent that

its proposed activities within the Delaware River Basin constitute a "project" within the

meaning of that term as defined in Sections 1.2(g) and 1.2(i) of the Delaware River Basin

Compact (the "Compact"). Accordingly, the Compact requires Plaintiff to submit an

application to the Commission for a determination as to whether its proposed "project" has a

"substantial effect on the water resources of the Basin" and, if so, whether the Commission

shall approve or disapprove such project based on its determination that the project would

or would not substantially impair or conflict with the Commission's comprehensive plan. Compact at § 3.8.

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group, LLC ("WLMG" or "Plaintiff") filed a Complaint against the Commission. (Doc. 1). In the Complaint, Plaintiff "asks this Court to declare that the Delaware River Basin Commission lacks authority under the Delaware River Basin Compact to review and approve a natural gas well pad, a gas well and related facilities and associated activities on WLMG's property in the Delaware River Basin ('Basin')." (*Id.* at 1). Intervenors-Defendants the Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper (collectively referred to as the "DRN") filed a Motion to Intervene on July 5, 2016, (Doc. 10), which the Court granted on September 12, 2016.[1] (Doc. 26).

On July 8, 2016, the Commission filed a Motion to Dismiss the Complaint. (Doc. 12). On September 19, 2016, WLMG filed a Motion for Oral Argument and Plenary Hearing on Defendant's Motion to Dismiss, (Doc. 29), which the Court granted on November 7, 2016. (Doc. 43). The Court held an evidentiary hearing and heard oral argument on January 24, 2017.

---

[1] Thereafter, Senators Joseph B. Scarnati, Lisa Baker, and Gene Yaw filed a Motion to Intervene, (Doc. 35), which the Court denied on January 5, 2017. (Doc. 68). The Damascus Citizens for Sustainability, Inc. also filed a Motion to Intervene, (Doc. 49), which the Court denied on January 5, 2017. (Doc. 70).

## II.    STATEMENT OF FACTS

### A. The Complaint

Plaintiff WLMG "owns approximately 180 acres of land, including the natural gas and minerals present on the land, in Wayne County, Pennsylvania. Approximately 75 acres of the land owned by WLMG is located in the Basin" (the "Property"). (Doc. 1, at ¶ 12). The Property "is located in a part of the Basin that overlays natural gas reserves in shale formations," (*Id.* at ¶ 13), and Plaintiff "acquired the Property with an intent to explore for, extract and sell the natural gas located in shale formations associated with the Property and other nearby land in order to recoup, and earn a reasonable return on, its investment in the Property." (*Id.* at ¶ 21).

The Defendant Commission is an agency created by the Compact, an agreement entered into by the United States, New York, Pennsylvania, New Jersey, and Delaware, and approved by Congress in 1961. (*Id.* at ¶ 14). Section 3.8 of the Compact provides that: "[n]o project having a substantial effect on the water resources of the basin shall hereafter be undertaken by any person, corporation or governmental authority unless it shall have been first submitted to and approved by the commission, subject to the Provisions of Section 3.3 and 3.5." (*Id.* at ¶ 15). Project is defined as "any work, service or activity which is separately planned, financed, or identified by the commission, or any separate facility undertaken or to be undertaken within a specified area, for the conservation, utilization, control, development or management of water resources which can be established and

3

utilized independently or as an addition to an existing facility, and can be considered as a separate entity for purposes of evaluation." (*Id.* at ¶ 16).

Plaintiff intends to construct a well pad, drill exploratory wells on its property, and commence hydraulic fracturing. Plaintiff "will proceed in phases, beginning with the construction of an access road and well pad on the Property," (*Id.* at ¶ 22), and "has identified a location for the access road and well pad on the Property, taking into account siting requirements." (*Id.* at ¶ 23). Following construction of the well pad and access road, Plaintiff "will drill an exploratory well to locate productive zones of natural gas located in shale formations on the Property. The next phase of development will include the drilling of one or more lateral wells followed by hydraulic fracturing and, ultimately, the production of natural gas." (*Id.* at ¶ 24). The well pads and facilities constructed on the Property, as well as all related activities, "will be designed, built, operated and carried out for the exploration, extraction and development of natural gas and not for the conservation, utilization, control, development or management of water resources." (*Id.* at ¶ 27). Plaintiff "does not propose to develop, construct or operate a water withdrawal, dam, impoundment or reservoir, or to construct or operate a wastewater treatment or discharge facility in connection with the development of the Property." (*Id.* at ¶ 28). "All water used in connection with the planned Well Pad on the Property will be obtained from properly licensed and approved sources owned and operated by persons or entities other than WLMG, which will be managed and delivered to the Well Pad in accordance with all applicable laws and regulations and any

4

applicable fees will be paid." (*Id.* at ¶ 29). "All wastewater generated in connection with the Well Pad on the Property will be managed by properly licensed and/or permitted entities other than WLMG in accordance with all applicable laws and regulations." (*Id.* at ¶ 30).

According to the Complaint, the Commission "has declared that all natural gas well pads and related facilities targeting shale formations in the Basin are 'projects' that it will review under Section 3.8 of the Compact." (*Id.* at ¶ 4). Specifically, Plaintiff alleges that the Commission "has determined, and, by publicly announcing its position, has informed WLMG and other landowners in the Basin, that it has jurisdiction over natural gas and well pads, all appurtenant facilities, and related activities carried out in connection with gas wells targeting shale formations in the Basin."[2] (*Id.* at ¶ 17). Moreover, the Commission "has determined, and publicly announced, that Well Pads constitute 'projects' that cannot be constructed or undertaken in Wayne County, Pennsylvania and other areas of the Basin with[out] first applying for and obtaining Commission approval." (*Id.* at ¶ 18). "The Commission has also announced that it will not consider applications for approvals for Well Pads, which are referred to by the Commission as 'well pad dockets,' until after it adopts regulations

---

[2] Plaintiff also alleges that "[t]he Commission, purporting to interpret and rely on Section 3.8 of the Compact, claims discretionary authority to review, approve, and thereby regulate nearly all forms of human activity in the Basin, including the use of private land for residential, commercial, and industrial purposes." (*Id.* at ¶ 1). The Complaint further alleges that, according to the Commission, "any activity, development or other human undertaking in the Basin that uses water in some manner is a 'project' that the Commission has the prerogative to review and approve if the Commission believes that the undertaking may have a 'substantial effect' on the water resources of the Basin." (*Id.* at ¶ 2). "Because it is difficult, if not impossible, to identify an undertaking in the Basin that does not involve water in some manner, the Commission's discretionary 'project' review authority purportedly extends to nearly every form of human endeavor in the Basin, subject only to the Commission believing, in a given case, that a proposed 'project' may have a 'substantial effect' on the water resources of the Basin." (*Id.* at ¶ 3).

purporting to govern Well Pads." (*Id.* at ¶ 19). "The Commission's *de facto* moratorium on

the otherwise lawful use of private property for natural gas development has been in force

since 2010 and the Commission has yet to adopt regulations governing Well Pads." (*Id.* at

¶ 20).

The State of Pennsylvania "has adopted comprehensive environmental regulations

governing all phases of development of natural gas resources within Pennsylvania." (*Id.* at

¶ 25). According to those regulations, "persons and entities seeking to construct well pads

and appurtenant facilities, and proposing to carry out related activities such as drilling,

fracturing, completing and operating natural gas wells in Pennsylvania, must obtain permits

and approvals from the Pennsylvania Department of Environmental Protection" ("PaDEP").

(*Id.*). According to the Complaint, the proposed development on Plaintiff's property, as well

as all related activities, "will be designed, constructed and carried out in accordance with all

applicable statutory and regulatory requirements including those implemented" by the

PaDEP. (*Id.* at ¶ 26). However, according to the Plaintiff:

> It would be futile and wasteful for WLMG to apply for permits and approvals from PaDEP
> before resolving the insurmountable obstacle created by the Commission's assertion of
> jurisdiction and imposition of a moratorium. Permits and approvals issued by PaDEP
> are valid for defined and limited periods of time and, moreover, PaDEP will not issue
> final permits and approvals for a Well Pad over which the Commission has asserted
> jurisdiction and project review authority until after the Commission reviews and approves
> the Well Pad.

(*Id.* at ¶ 32). Moreover, "[g]iven the Commission's decision not to consider well pad dockets

until some indefinite point in the future, it would be futile for WLMG to apply for Commission

approval for the Well Pad to be developed on the Property." (*Id.* at ¶ 33). Plaintiff further claims that it "should not be required to engage in an expensive, time consuming, and ultimately futile exercise of attempting to obtain review and approval by the Commission for its Well Pads where . . . no such review and approval is required under the Compact." (*Id.* at ¶ 34).

Plaintiff's Complaint alleges that "[t]he Commission's final determination that Well Pads constitute "projects" subject to the Commission review and approval under Section 3.8 of the Compact," constitutes an "unlawful assertion of jurisdiction," and poses "an absolute barrier to WLMG's ability to move forward with its plan to develop a Well Pad on the Property." (*Id.* at ¶ 35). "As a result of the Commission's unlawful assertion of jurisdiction, WLMG is unable to develop a Well Pad on the Property and to thereby recoup its upfront costs and earn a reasonable return on its investment." (*Id.* at ¶ 37). "Among other things, WLMG is unable to drill an exploratory well in order to precisely identify productive gas zones on the Property and, thereby, to immediately increase the value of the Property and WLMG's nearby land." (*Id.*).

The Commission "is authorized to seek civil penalties from a person who undertakes a 'project' without Commission approval pursuant to Section 3.8 of the Compact." (*Id.* at ¶ 38). "Specifically, Section 14.17 of the Compact provides that a person, association or corporation who violates or attempts to conspire to violate a provision of the Compact or a rule, regulation or order of the Commission may be liable for a penalty of as much as $1,000

for each offense and $1,000 per day for a continuing violation, attempt or conspiracy to be
fixed by a court of competent jurisdiction." (*Id.*). According to the Plaintiff, the
Commission's "final determination regarding its jurisdiction and authority under the Compact
puts the public on notice that persons that construct well pads and appurtenant facilities, or
that engage in related activities, in connection with wells targeting shales located in Wayne
County and other areas of the Basin without prior authorization from the Commission that
they are at risk of incurring substantial civil penalties and other potential enforcement
actions." (*Id.* at ¶ 39). Thus, Plaintiff "must choose between proceeding in the face of
substantial civil penalties and other sanctions or waiting for the Commission to lift the
moratorium at some indefinite point in the future and then incurring substantial expense of
seeking Commission approval for an undertaking over which the Commission does not have
jurisdiction." (*Id.* at ¶ 40).

Therefore, Plaintiff, through the Complaint, "seeks relief from the Commission's *ultra
vires* assertion of jurisdiction and related dictate that WLMG is prohibited from constructing
a well pad and drilling a natural gas well without Commission approval." (*Id.* at ¶ 6). The
Plaintiff "requests that the Court declare that the Commission does not have authority to
require WLMG to apply for and obtain Commission 'project' approval for a natural gas well
pad and related facilities targeting natural gas in shale formations on WLMG's property."
(*Id.* at ¶ 7). Absent the relief requested, Plaintiff maintains that it "will be deprived of its
constitutionally protected right to use its Property in a lawful and productive manner" and

"will incur economic injury in that it will be prevented from confirming the full scope of, and then extracting and selling natural gas associated with, the Property and also from benefiting from an increase in the market value of the Property which will follow the drilling of an exploratory well." (*Id.* at ¶ 44).

## B. The Commission's Actions Regarding Well Pad Construction, Natural Gas Drilling, and Related Activities in the Basin

The Commission has raised a factual challenge to many of the allegations in the Complaint.   Specifically, the DRBC disputes Plaintiff's allegations that it has taken final action in connection with well pad construction and natural gas drilling activities in the Basin and therefore moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon Plaintiff's request, the Court held a plenary hearing to address and resolve certain material factual disputes with respect to subject matter jurisdiction. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006) ("If a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence.  If there is a dispute of material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction.").

At the plenary hearing conducted on January 24, 2017, the Court heard argument and received testimony with respect to the DRBC's challenge to this Court's jurisdiction in support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). DRBC Executive Director Steven Tambini, the Executive Director of the DRBC since August

of 2014, testified. Mr. Tambini testified that although the DRBC has yet to adopt final rules regarding the conduct of natural gas activities within the Basin, that the Commission would entertain a jurisdiction determination with respect to natural gas activity if such a determination were sought:

Q.    So if someone sought a jurisdiction determination from the commission today with respect to a natural gas activity, would the commission entertain it?

A.    Yes.

Q.    Anyone sought a jurisdictional determination from the commission?

A.    No.

Q.    Regarding natural gas activities?

A.    That's correct, yes, there have been other jurisdictional determination questions, yes.

Q.    Not with regard to natural gas?

A.    That's correct, yes.

Q.    Have the commissioners made a final decision regarding whether the commission has jurisdiction over plaintiff's proposed activities?

A.    No, the commission has not made a final decision.

Q.    Have the commissioners made a final decision regarding whether or not plaintiff's activities constitute a project?

A.    No, they have not.

Q.    Has the commission made a final decision regarding whether plaintiff's activities may have a substantial effect on the water resources of the basin?

A.    No.

Q.    In other words, has the commission made any determination as to whether they have section 3.8 authority over natural gas exploration and activity – exploration and production activities at a well pad site?

A.    They have not made a final determination, no.

Jan. 24, 2017, Unofficial Hr'g Tr. at 53:8-25; 54:1-10.

However, on cross-examination, Executive Director Tambini confirmed that his predecessor, Carol R. Collier, issued a document on May 19, 2009 entitled "Determination of the Executive Director Concerning National Gas Extraction Activities in Shale Formations Within the Drainage Area of Special Protection Waters" (the "2009 EDD"). (Def's Exhibit 2). The 2009 EDD provides that sponsors of natural gas extraction projects in shale formations within the drainage area of Special Protection Waters (such as Plaintiff) must apply for and obtain Commission approval.[3]  Neither the Plaintiff nor any individual or entity filed an

---

[3] The 2009 EDD provides that "[t]he Executive Director therefore specifically directs by this notice to natural gas extraction *project* sponsors that they may not commence any natural gas extraction *project* located in shale formations within the drainage area of Special Protection Waters without first applying for and obtaining Commission approval." (Doc. 12-1, at 10) (emphasis added). "For this purpose a *project* encompasses the drilling pad upon which a well intended for eventual production is located, all appurtenant facilities and activities related thereto and all locations of water withdrawals used or to be used to supply water to the *project*." (*Id.*) (emphasis added). "Wells intended solely for exploratory purposes are not covered by this Determination. Commencing a *project* encompasses performing any of the activities associated with the *project*, including the activities identified in the first paragraph above." (*Id.*) (emphasis added). The activities identified in the first paragraph above include "horizontal drilling and hydraulic fracturing," "construction of a well pad and associated roadways at or about surface elevations, the drilling of a well bore to depths of as much of 6000 feet or more, the withdrawal of transport or surface or ground water, the injection of the water and chemical fracturing mixtures into the wells to release the trapped gas, the recovery and storage of recovered fracturing fluid, water and associated leached constituents extracted with the gas, the storage and potentially the reuse of recovered wastewater and chemicals and the eventual disposal of water and chemicals." (*Id.* at 9).

administrative appeal pursuant to the DRBC's Rules of Practice and Procedure, or an application requesting the DRBC Commissioners to review the 2009 EDD, and the Commissioners have not done so. At a May 5, 2010, meeting of the Commissioners, the Commission postponed any consideration of applications of well pad approvals until certain regulations could be drafted which would govern any such review.[4]

Tambini confirmed that the 2009 EDD issued by then-Executive Director Collier provided notice to natural gas extraction project sponsors that "they may not commence any natural gas extraction projects located in shale formations within the draining area of special protection waters without first applying for and obtaining Commission approval." Jan. 24, 2017, Unofficial Hr'g Tr. at 63:10-16. Tambini agreed that his predecessor issued the 2009 EDD pursuant to the authority given to her by the Commission to act on its behalf.[5] Yet, on cross-examination, Tambini repeated his testimony that "the Commission has not made a decision that the

---

[4] Commission staff published draft regulations governing natural gas development projects for public comment on December 9, 2010, and also held eighteen hours of public hearings on the proposed regulations. The DRBC received oral comments and approximately 69,000 written comments. Thereafter, the DRBC published a revised set of draft regulations in November 2011. The DRBC staff and the Commissioners continue to consider the public comments and the results of further scientific studies and regulatory developments in federal and state jurisdictions. (Doc. 12-1, at 3).

[5] The Commission's Rules of Practice and Procedure, (Pl.'s Exhibit 1), in Section 2.3.5B.18 provides:

> All other projects which have or may have a substantial effect on the water resources of the Basin shall be submitted to the Commission in accordance with these regulations for determination as to whether the project impairs or conflicts with the *Comprehensive Plan*. Among these are projects involving the following (except as provided in Paragraph A. of this section): . . . (18) Any project that the Executive Director may specially direct by notice for the Project sponsor or landowner as having a potential substantial water quality impact on waters classified as Special Protection Waters.

jurisdictional determination on what is a project and what is not in this case." *Id.* at 71:20-22.

Tambini further testified that WLMG was not required to wait for rule-making by the Commission in order to obtain a jurisdictional determination, stating: "[i]f you'd like a jurisdictional determination, you don't have to wait for rule-making, come and do it." *Id.* at 81: 3-5. Tambini was also questioned with respect to Plaintiff's Exhibit 8, the August 8, 2008, letter from William J. Muszynski, Manager, Water Resources Management Branch of the DRBC to Stone Energy Corporation wherein the Commission found that Stone Energy's drilling project in Clinton, Wayne County, Pennsylvania, was undertaken "without prior review and approval by the Commission." (Pl.'s Ex. 8). The letter indicated that the penalty for Stone Energy Corporation's violation was a fine of not less than $90,000.

When asked whether it was clear from the 2009 EDD and the DRBC's fine imposed on Stone Energy Corporation that drilling activity and construction of a well pad require that an application had to be filed with the DRBC, Tambini testified:

Q.   Okay. So it was clear from the executive director's determination that if you were going to drill a well, construct a well pad, you had to file with the Commission.

A.   Yes.

Jan. 24, 2017, Unofficial Hr'g Tr. at 89:22-26.

Tambini, when asked by Plaintiff's counsel whether the Commission would process

its application for its proposed well pads, answered:

A.    We are speaking past each other. I answered the question. So you
      keep saying I want to understand the jurisdictional determination path,
      and then you move on to the project review path. So I suggest we
      following one path at a time. If you want me to answer the question
      what would it take to do a jurisdictional determination, we can do that.
      If you want to get me to say that we're not accepting applications for
      jurisdictional determination, you're not going to get the answer. I think
      the Commission has indicated in its documents that it would accept
      whatever. If you went to the website, I will be the first to admit that
      there is no application for jurisdictional determination.

      But if you'd like to have a meeting, have a conference, write a letter,
      write me an e-mail, whatever you want to do to get this started on
      jurisdictional determination, the commission has indicated that we will
      make a jurisdictional determination.

*Id.* at 100:5-21.[6]

When asked what WLMG would have to do to get a jurisdictional determination,

Tambini answered: "[a] lot more information on the activities associated with the *project*,"

and when pressed further, stated:

A.    We need to know where the water is coming from, how much water is
      being used, how many wells, how many wells by when. Gain [sic],
      your oil and gas expert is indicating how much will stay in the
      formation, how much will be returned, when it does return, what is the
      water quality, how is it being stored, potentially how it is being treated,
      where it is discharged. That's a start. You know, that's a start. So

---

[6] Nothing in Compact provides for a "jurisdictional determination" to determine whether the DRBC has
jurisdiction under Section 3.8 of the Compact. Moreover, the testimony at the January 24, 2017 plenary
hearing makes clear that the DRBC has never bifurcated its analysis under Section 3.8 to determine
whether a proposed activity constitutes a "project" and, if so, whether the project has a "substantial effect
on the water resources" of the Basin. The Commission, instead, has always considered these issues
together. Jan. 24, 2017, Unofficial Hr'g Tr. at 32:15-33:16; 66:15-67:14.

again, how would it happen, I've already indicated that open avenue
for any way you like it to happen, send me a letter, send the
commissioners a letter. I'm – I'm not going to say there is an
application that you have to fill out. Then you will say there's no
application. Then you're going to say the commission won't act on it
because they already said they would. So – if we have information on
the activities, the full scope of the activities, then the commissioners
can make a jurisdictional determination.

*Id.* at 101:6-17. Plaintiff's counsel then asked Tambini:

> Q.     What if we just want the Commission to decide whether this activity is
>        a project, that's all we want to ask for? I want to come to you, Mr.
>        Tambini, and I want you to tell me, is this a project because that's what
>        we asked this Court to do and – if we have to come to you, what
>        information do you need in order to apply the definition of project?

Mr. Tambini answered: "I am going to – I said it multiple times. The commission is going to

look at the 3.8 issue not as a threshold issue and a secondary issue they're going to look at.

So I've already described the type of things we need." *Id.* at 102:21-25; 103:1-6.

When questioned concerning Plaintiff's Exhibit 21, the 2011 Annual Report of the

DRBC, and in particular page 26 of that Report entitled "DRBC's Natural Gas Timeline

(2008-2011)," which details the actions of the Commission and its Executive Director,

including the Commissioner's unanimous approval of a resolution directing staff to develop

draft regulations on well pads in the shales for notice and comment rule-making and the

statement that "consideration of well pad dockets will be postponed until regulations are

adopted," and the publication of revised draft regulations in November of 2011, Tambini

testified:

> Q.    My question was sir, whether a member of the regulated community reading this end of 2011 summary would fairly conclude that the commission has asserted jurisdiction over well pads and natural gas?
>
> A.    That's not accurate.

Jan. 24, 2017, Hr'g Tr. at 126:13-17.  Tambini then added that the "commission did indicate that people can come in for jurisdictional determinations either before or after rule-making."

*Id.* at 128:8-10.

Former Commission Executive Director Carol Collier also testified at the January 24, 2017 hearing.  When asked what direction she gave in her 2009 EDD, Ms. Collier testified:

> A.    You know, I guess I would consider it giving the industry guidance or a warning that if they were to drill in the basin they needed to come into the commission to look at, you know whether the commission rules apply, sort of like a – you know, we're here, we regulate water, different than from the states that many of the industry members were from where they didn't regulate the water withdrawal and you needed to come in and determine whether the DRBC would regulate your well and other activities.
>
> Q.    When you said needed to come in, who would they come into and for what purpose?
>
> A.    They would come into the commission so that the commissioners could determine whether DRBC, one considered this *project* that would have significant effect on the basin, potential significant effect and in need of a docket or approval.

*Id.* at 143:21-25; 144:1-13 (emphasis added).

Collier testified that although she issued the 2009 EDD, and a supplemental determination on June 14, 2010, (Def's Exhibit 3), that she was not the "decision maker,"

testifying that "the Commissioners are the decision maker. This is sort of a clarification to the industry that DRBC is here, you need to come to us if you are doing these activities." *Id.* at 146:3-6.   Collier further testified that her 2009 and 2010 Executive Director determinations were appealable to the Commissioners and the supplemental determination was in fact the subject of an appeal.[7]  *Id.* at 146:13-15.  While she detailed the resolution of the appeal, she testified that as of the time she left the DRBC, the Commission had not made a final decision with respect to any of its jurisdiction over well pad projects. *Id.* at 152:8-13.

When asked about the construction of Section 3.8 of the Compact, she testified that she "never really separated the word project from, you know, potential effect." *Id.* at 158:22-23.  Ms. Collier was then asked:

> Q.   But if we look at 3.8 you agree with me you don't get to the substantial effect question unless the activity is first determined to be a project, correct?
>
> A.   If you read it that way.
>
> Q.   A project is a defined term under the compact, correct?
>
> A.   Yes.

---

[7]  The 2010 determination stated that sponsors of natural gas exploratory wells, intended solely for exploratory purposes in the shale formations within the drainage area of Special Protection waters, except those for which the Pennsylvania Department of Environmental Protection had already granted natural gas well permits, must apply for and obtain Commission approval. (Doc. 12-1, at 25-26).  That same month, Collier amended the 2010 determination to provide that Hess Corporation did not require Commission approval to install two exploratory wells for which Hess had obtained PaDEP permits. (*Id.* at 28-29). Several parties filed an administrative appeal requesting the DRBC Commissioners vacate or amend the 2010 determination and 2010 amended determination.

*Id.* at 158:24-25; 159:1-4.

Collier reiterated her testimony that any of her determinations were subject to appeal

to the Commissioners who would make the final decision. *Id.* at 165:23-166:1. She

conceded, however, that the Commissioners were "fully aware" of her Executive Director

determinations and that they did nothing to countermand them or otherwise indicate their

disagreement with her determinations. *Id.* at 169:19-25.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power

authorized by Constitution and statute, which is not to be expanded by judicial decree."

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d

391 (1994) (internal citations omitted).

> [T]he federal courts are without power to adjudicate the substantive claims in
> a lawsuit, absent a firm bedrock of jurisdiction. When the foundation of federal
> authority is, in a particular instance, open to question, it is incumbent upon the
> courts to resolve such doubts, one way or the other, before proceeding to a
> disposition of the merits.

*Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is

power to declare the law, and when it ceases to exist, the only function remaining to the

court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S.

(7 Wall.) 506, 514, 19 L.Ed. 264 (1868). This rule "'springs from the nature and limits of the

judicial power of the United States' and 'is inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quoting *Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L. Ed. 462 (1884)). Moreover, "the burden of establishing the [existence of subject-matter jurisdiction] rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377 (internal citations omitted). This is because, since the federal courts' jurisdiction is strictly limited by Constitution and statute, "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Id.*

A motion to dismiss for lack of subject-matter jurisdiction is properly made under Federal Rule of Civil Procedure 12(b)(1). When a motion under Federal Rule of Civil Procedure 12 is based on several grounds, a court should first consider a 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, "all other defenses and objections become moot." *In re Corestates Trust Fee Litig.,* 837 F.Supp. 104, 105 (E.D.Pa. 1993), *aff'd* 39 F.3d 61 (3d Cir. 1994).

"A district court has to first determine, however, whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).

> A facial attack, as the adjective indicates, is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship

among the parties, or because some other jurisdictional defect is present. Such an attack can occur before the moving party has filed an answer or otherwise contested the factual allegations of the complaint. A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case – and here the District Court may look beyond the pleadings to ascertain the facts – do not support the asserted jurisdiction.

*Id.* at 358.

Thus, a Rule 12(b)(1) factual evaluation "may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed." *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891-892 (3d Cir. 1977). However, "[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted." *Id.* at 892 n.17. When a party files a motion attacking jurisdiction prior to filing an answer to the complaint or otherwise presenting competing facts, the motion is "by definition, a facial attack." *Aichele,* 757 F.3d at 358.

### B. Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

A complaint must be dismissed under Federal Rule Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

20

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted). A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Labs.*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks

omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim. Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth. Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted). This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id*.

## IV. ANALYSIS

In the Complaint, WLMG "asks this Court to declare that the Delaware River Basin Commission lacks authority under the Delaware River Basin Compact to review and approve a natural gas well pad, a gas well and related facilities and associated activities on WLMG's property in the Delaware River Basin." (Doc. 1 at 1). Specifically, in its Prayer for Relief, Plaintiff seeks a declaration "that the Commission does not have jurisdiction over, or the authority to review and approve, or require WLMG to seek prior approval from the Commission for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on" the Property.[8] (Id. at 18). Defendant seeks dismissal of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[9]

The DRBC seeks dismissal of the Complaint "for lack of subject-matter jurisdiction pursuant to F.R.C.P. 12(b)(1) on ripeness and standing grounds." (Id. at ¶ 11). In support, Defendant notes:

(a) Because the Commission disputes the allegations of the Complaint, the instant Motion makes a factual attack and evidence may be introduced to resolve this dispute. Accordingly, this Court may consider documents outside the pleadings and may take judicial notice of decisions of an administrative agency such as the DRBC.

---

[8] Put another way, the relief Plaintiff seeks is a declaration that "under no set of facts is a natural gas well or a natural gas well pad a project" within the meaning of the Compact. Jan. 24, 2017, Unofficial Hr'g Tr. at 70:25-71:2

[9] The DRN "haven't taken a position on whether the court should grant or deny the motion to dismiss." Jan. 24, 2017 Unofficial Hr'g Tr. at 12:17-19.

(b) As alleged more fully in paragraph 10, above, the Commission has not been asked to review whether it has project review jurisdiction with respect to some or all of WLMG's proposed activities.

(c) With respect to the portion of WLMG's claim alleging that the Commission has no jurisdiction over WLMG's plan to install a natural gas exploratory well, the 2010 Order resolving the administrative appeal of the 2010 SEDD makes clear that the Commission's decision is deferred until such time as an application is submitted to the Commission regarding a particular project or the Commission issues final natural gas regulations. To date, WLMG has not submitted an application and final regulations have not been issued.

(d) With respect to the portion of WLMG's claim alleging that the Commission has no jurisdiction over WLMG's plan to install natural gas production wells and conduct various activities including hydraulic fracturing, WLMG has not requested the Commission to review the 2009 EDD, which was not appealed by any person. Likewise, WLMG never submitted an application asking the Commission whether WLMG's proposed production well activities would trigger the Commission's project review jurisdiction.

(*Id.* at ¶ 11(a)-(d)).[10]

The DRBC also seeks dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.* at ¶ 12). Specifically, the DRBC asserts the Complaint must be dismissed because "WLMG remains able to file an application requesting that the Commission decide its jurisdiction to review WLMG's proposed activities to determine whether they would substantially impair or conflict with DRBC's Comprehensive Plan." (*Id.* at ¶ 12(b)). "If WLMG files such an

---

[10] Plaintiff maintains that Defendant has mounted a facial, rather than factual attack, "because WLMG's well-pleaded facts have not been properly controverted." (Doc. 22, at 13). But Plaintiff ignores that it is the one who requested the plenary hearing to resolve factual disputes with respect to subject matter jurisdiction. (Doc. 29). Moreover, it is plainly evident that the DRBC has mounted a factual attack on the Complaint and has properly contested multiple factual allegations in the Complaint concerning this Court's subject matter jurisdiction.

application, the Commission will conduct administrative proceedings to establish the

relevant facts of WLMG's proposal, evaluate the statutory, regulatory and policy

considerations at issue and make a final determination regarding whether WLMG's planned

activities trigger the Commission's project review jurisdiction." (*Id.*). Defendant also seeks

dismissal of the Complaint on the theory that, if the Complaint is construed as a challenge to

the 2009 EDD, such a challenge "would be barred by the statute of limitations and/or failure

to file a timely administrative appeal." (*Id.* at ¶ 13).

## A. The Court Has Subject Matter Jurisdiction Over Plaintiff's Declaratory Judgment Claim

The Commission seeks dismissal of the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(1) on the theory that this Court lacks subject matter jurisdiction because:

(1) Plaintiff's claim is not ripe for adjudication; and (2) Plaintiff lacks standing.[11]

WLMG brings a single claim under the Declaratory Judgment Act. The Declaratory

Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any

court of the United States, upon the filing of an appropriate pleading, may declare the rights

and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought." 28 U.S.C. § 2201(a). "The Supreme Court has long

held that this confers discretionary, rather than compulsory, jurisdiction upon federal courts."

---

[11] As an initial matter, the Court notes that "[t]he construction of an interstate compact approved by Congress presents a federal question under 28 U.S.C. § 1331." *Pievsky v. Ridge,* 98 F.3d 730, 732 (3d Cir. 1996) (citing *Petty v. Tennessee-Missouri Bridge Comm'n,* 359 U.S. 275, 278, 79 S.Ct. 785, 788, 3 L.Ed.2d 804 (1959)). In addition, Section 15.1(p) of the Compact provides, in part, that "[t]he United States district court shall have original jurisdiction of all cases or controversies arising under the Compact." Compact at § 15.1(p).

*Reifer v. Westport Ins. Co.*, 751 F.3d 129, 134 (3d Cir. 2014) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942)).

### i. Standing

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (citing U.S. Const., Art. III, § 2). "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Id.* (quoting *Lujan*, 504 U.S. at 560-61). WLMG, as "[t]he party invoking federal jurisdiction bears the burden of establishing standing." *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148, 185 L.Ed.2d 264 (2013) (internal citation and quotation marks omitted).

"The question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). As discussed, it is well-settled that three elements must be satisfied to meet "the irreducible constitutional minimum of standing": (1)

a "plaintiff must have suffered an injury in fact - an invasion of a legally protected interest

that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

hypothetical"; (2) "there must be a causal connection between the injury and the conduct

complained of"; (3) "it must be likely, as opposed to merely speculative, that the injury will

be redressed by a favorable decision." *U.S. v. Hays*, 515 U.S. 737, 742-743, 115 S.Ct.

2431, 132 L.Ed.2d 635 (1995).  Apart from the constitutional limitations, several prudential

principles bear on the question of standing.  First, "when the asserted harm is a 'generalized

grievance' shared in substantially equal measure by all or a large class of citizens, that

harm alone normally does not warrant exercise of jurisdiction." *Warth,* 422 U.S. at 499.

Second, "even when the plaintiff has alleged injury sufficient to meet the 'case or

controversy' requirement, . . . the plaintiff generally must assert his own legal rights and

interests, and cannot rest his claim to relief on the legal rights or interests of third parties."

*Warth,* 422 U.S. at 499.  Finally, "a plaintiff's grievance must arguably fall within the zone of

interests protected or regulated by the statutory provision or constitutional guarantee

invoked in the suit." *Bennett*, 520 U.S. at 162.

Although "it is the burden of the party who seeks the exercise of jurisdiction in his

favor clearly to allege facts demonstrating that he is a proper party to invoke judicial

resolution of the dispute," *Hays*, 515 U.S. at 743 (internal quotation marks and citations

omitted), when ruling on a motion to dismiss predicated on a lack of standing, such as what

Defendant DRBC is currently asking this Court to do:

both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

*Warth,* 422 U.S. at 501-502.

The Court is satisfied that WLMG has met its burden to demonstrate it has standing. First, WLMG's Complaint sufficiently alleges that it is suffering an injury in fact. WLMG intends to construct a well pad, drill an exploratory well on its Property, and commence hydraulic fracturing "as soon as the uncertainty and threat of fines, penalties and other sanctions resulting from the Commission's assertion of jurisdiction is resolved." (Doc. 22, at 30). "Absent the relief requested in its Complaint, WLMG cannot develop the natural gas on its Property in a reasonable and timely manner." *Id.* In the Complaint, WLMG further alleges that it "has incurred, and will continue to incur, economic injury by being prevented from exploring for, extracting and selling natural gas associated with the Property and also from benefitting from an increase in the market value of the property." *Id.* The Court is satisfied that WLMG has demonstrated an injury in fact.

Second, the Court agrees with WLMG that its injury has a sufficient causal connection to the DRBC's conduct. As WLMG notes, "[t]he material and adverse effect on WLMG's rights to use the Property and to conduct a lawful business activity is caused by the Commission's . . . assertion of jurisdiction, not simply by the existence of the Compact,"

(*Id.* at 31), and "[n]o action of a third party is a more immediate cause of these harms." *Id.*

Finally, there is a likelihood that WLMG's injury will be redressed by a favorable decision of

this Court. A decision in favor of WLMG would permit it to plan and develop the Property

without first submitting an application to the DRBC for its approval.

### ii. Ripeness

The Commission also seeks dismissal of the Complaint on the theory that Plaintiff's

claim is not ripe for adjudication. "A claim is not ripe for adjudication if it rests upon

contingent future events that may not occur as anticipated, or indeed may not occur at all."

*Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)

(internal citation and quotation marks omitted). However, "ripeness is a matter of degree

whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG*

*Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). "This is especially so in declaratory

judgment actions 'because declaratory judgments are typically sought before a completed

injury has occurred.'" *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs,*

*Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009) (quoting *Pic-A-State Pa., Inc. v. Reno*,

76 F.3d 1294, 1298 (3d Cir. 1996)). Where, as here, a defendant moves to dismiss a

declaratory judgment action on the theory that the claim is not ripe for judicial review, three

factors should be considered: "(1) the parties must have adverse legal interests; (2) the

facts must be sufficiently concrete to allow for a conclusive legal judgment, and (3) the

judgment must be useful to the parties."[12] *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006) (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990)). The Court will consider each factor in turn.

"In assessing the adversity of the parties' interest, courts look to '[w]hether the claim involves uncertain and contingent events, or presents a real and substantial threat of harm.'" *Id.* (quoting *NE Hub Partners*, 239 F.3d at 342 n. 9). "It is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest so long as there is a substantial threat of real harm that remains throughout the course of the litigation." *Id.* "For instance, a declaratory judgment claim is ripe if a regulation requires immediate and significant change in the plaintiffs' conduct of their affairs." *Market Street Sec. Inc. v. NASDAQ OMX PHLX, LLC*, 900 F. Supp. 2d 529, 533 (E.D. Pa. 2012) (internal citation and quotation marks omitted). According to the DRBC, Plaintiff "cannot satisfy the first prong of the test, the adversity of the parties' interests," because the "[t]he Commissioners have never determined the scope of Commission jurisdiction over natural gas exploration and production activities or WLMG's specific activities." (Doc. 19, at 29). Rather, "the former Executive Director issued three interpretative rules that . . . are non-binding." (*Id.*).

The Court concludes that the parties have an adversity of interest and therefore the first factor weighs in favor of the Plaintiff. WLMG seeks a declaration that the DRBC lacks

---

[12] Although the Third Circuit considers these three factors to be "the most important," *Step-Saver*, 912 F.2d at 647, the three factors "are not exhaustive of the principles courts have considered in evaluating ripeness challenges." *Armstrong World Indus., Inc. v. Adams*, 961 F.2d 405, 412 (3d Cir. 1992).

jurisdiction over its proposed activities. Although the DRBC asks the Court to dismiss

Plaintiff's Complaint because it has never taken a position on Plaintiff's proposed activities,

or determined whether it has jurisdiction over natural gas extraction and related activities, it

is clear that should Plaintiff commence its proposed activities it is under a very real and

substantial threat for the imposition of fines and penalties from the DRBC. *See Surrick*, 449

F.3d at 528 ("Accordingly, we conclude that the threat of sanctions is sufficiently real and

substantial to satisfy the first prong of the *Step-Saver* inquiry."). A review of Plaintiff's

Exhibit 8 makes clear that, in 2008, the DRBC fined Stone Energy Corporation $90,000 for

commencing natural gas drilling activities in the Basin "without prior review and approval by

the Commission." (Pl.'s Ex. 8). Moreover, when asked whether it was apparent from the

2009 EDD "that if you were going to drill a well, construct a well pad, you had to file with the

Commission" Mr. Tambini responded affirmatively. Jan. 24, 2017, Unofficial Hr. Tr. at

89:22-26. Equally apparent is that if Plaintiff were required to submit an application to the

DRBC in order for it to determine whether it has Project Review authority under Section 3.8,

Plaintiff will incur significant costs. Specifically, Mr. Tambini testified that in order for the

Commission to undertake a "jurisdictional determination" to determine whether WLMG's

proposed activities would be subject to DRBC project review under Section 3.8 of the

Compact, the Commission would need to know, at a minimum, "where the water is coming

from, how much water is being used, how many wells, how many wells by when. Gain [sic]

your oil and gas expert is indicating how much will stay in the formation, how much will be

returned, when it does return, what is the water quality, how is it being stored, potentially

how it is being treated, where it is discharged. That's a start." *Id.* at 101:6-17. But,

according to Plaintiff, the DRBC lacks the authority in the first instance to require it to submit

this information because its proposed activities do not constitute a "project" subject to

review under Section 3.8 of the Compact. On these facts, the Court is satisfied that the

parties have an adversity of interest.[13]

The second factor, conclusiveness of the judgment, requires courts "to consider the

fitness of the issue for adjudication to ensure that the declaratory judgment would in fact

determine the parties' rights, as distinguished from an advisory opinion based on a

hypothetical set of facts." *Surrick*, 449 F.3d at 528 (citing *Presbytery of N.J. of Orthodox

Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir. 1994)). "Even though, 'by its

nature a declaratory judgment will almost always have some conclusive effect,' the

conclusiveness factor requires the Court to determine whether a 'live controversy' exists

---

[13] In *Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012), individual and corporate plaintiffs sought a declaratory judgment and an injunction barring the enforcement of a state statute regulating trusts, claiming that the state statute was preempted by federal law. The Defendant Pennsylvania Department of Public Welfare sought dismissal on the theory that the case was not ripe for adjudication because it has not yet issued regulations addressing the statute's "scope and meaning" and because the Defendant had yet to enforce the statute. *Id.* at 342. The Third Circuit, applying *Step-Saver*, concluded that the case was ripe for adjudication. The Third Circuit held that the "opposing interests [required under the ripeness doctrine] are clearly present here, as Defendants have an obligation to enforce Section 1414, and Plaintiffs seek to evade its strictures . . . . A decision here would establish whether the statute can be enforced against the Plaintiffs, so it would define and clarify Plaintiffs' legal rights." *Id.* at 341; *see also Free Speech Coalition, Inc. v. Holder*, Civil Action No. 9-4607, 2012 WL 6059189, *6 (E.D. Pa. Dec. 5, 2012) ("*Lewis* teaches that when a statute requires a class of persons to conduct their behavior in a particular way, and the government has the right to enforce the statute, and the affected persons would be risking legal sanction if they chose not to comply, *Step-Saver* is satisfied.").

that can be resolved through a judicial declaration, and that the Complaint does not ask for a mere advisory opinion." *Colony Nat'l Ins. Co. v. Deangelo Bros., Inc.*, No. 3:13-CV-00401, 2014 WL 1159776, at \*7 (M.D. Pa. Mar. 21, 2014) (quoting *Armstrong*, 961 F.2d at 421-23).

The Court finds that the facts at issue are sufficiently concrete to allow for a conclusive legal judgment and that Plaintiff does not seek a mere advisory opinion. The relief Plaintiff seeks is whether, on the face of its Complaint, its proposed activities which include constructing a well pad, drilling an exploratory well, and commencing hydraulic fracturing are subject to DRBC Project Review. The Plaintiff maintains that they are not, and that the DRBC has exceeded its jurisdiction under Section 3.8 of the Compact. If the Court were to grant Plaintiff the relief it requests, then Plaintiff could proceed with its proposed development without being subject to the DRBC's Project Review authority under Section 3.8 of the Compact because its proposed activities would not constitute a "project" subject to DRBC review. If the Court were to deny Plaintiff the relief it requests, then Plaintiff would be required to submit an application to the DRBC for approval under Section 3.8 of the Compact or risk the imposition of fines. Regardless of the result, the Court's ruling would have real, substantial, and practical consequences for the parties. Moreover, further factual development would not be helpful in resolving the predominately legal dispute here: namely; whether on the face of Plaintiff's Complaint, its proposed activities are subject to DRBC Project Review under Section 3.8 of the Compact.

The final factor the Court must consider is "whether a declaratory judgment will affect the parties' plans of actions by alleviating legal uncertainty." *Surrick*, 449 F.3d at 529 (citing *Step-Saver*, 912 F.2d at 649 n.9). Put another way, the final factor requires the Court to consider the utility of a declaratory judgment. "A judgment has utility if its affects the parties' plans of action." *Market Street*, 900 F. Supp. 2d at 534 (citing *Step-Saver*, 912 F.2d at 649). The Court finds that this factor is easily satisfied. Plaintiff has refrained from commencing activities including the construction of a well pad and drilling an exploratory well because it has been deterred by the fear of sanctions from the DRBC. A grant or denial of the relief WLMG seeks would therefore "materially affect the parties and serve the purposes of the Declaratory Judgment Act—clarifying legal relationships so that plaintiffs . . . [can] make responsible decisions about the future." *Surrick*, 449 F.3d at 529 (internal citation and quotation marks omitted). The Court therefore concludes that Plaintiff's Complaint is ripe for judicial resolution and will deny Defendant's Motion to Dismiss in this respect.[14]

---

[14] Other factors, too, weigh in favor of concluding that this action is ripe for judicial review. Principal among those factors is the DRBC's somewhat confounding and steadfast refusal to admit in this case, contrary to its conduct throughout the better part of a decade (including multiple determinations from its Executive Director and the imposition of a moratorium), that it has determined that well pads, exploratory wells, hydraulic fracturing and related activities are subject to its review under Section 3.8 of the Compact. Moreover, despite repeatedly claiming that it has never determined whether WLMG's proposed activities would constitute a "project" the DRBC continues to maintain that "WLMG is able to file an application requesting that the Commission decide its jurisdiction to review WLMG's proposed activities *to determine whether they would substantially impair or conflict with DRBC's Comprehensive Plan*." (Doc. 12, at ¶ 12(b)) (emphasis added). But that assumes that WLMG's proposed activities constitute a "project" in the first instance. The DRBC's conduct throughout this litigation and over the past decade has been, at best, contradictory and confusing, warranting a clarification of the legal relationship between Plaintiff and similarly situated individuals and the DRBC.

In sum, the Court concludes that WLMG has standing and its claim is ripe for judicial review. Accordingly, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) will be denied.

### B. Plaintiff's Complaint Must Be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6)[15]

Having concluded that the Court has subject matter jurisdiction over Plaintiff's declaratory judgment claim the Court will next address whether the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Dismissal of a declaratory judgment claim is appropriate pursuant to Federal Rule of Civil Procedure 12(b)(6) where, on the face of the complaint, the plaintiff "is not entitled to the declaratory relief he seeks." *Hawkins v. Supreme Court of New Jersey*, 174 F. App'x 683, 685 (3d Cir. 2006). The Court will thus review the allegations in Plaintiff's Complaint and the language of the Compact to determine whether

---

[15] "When a motion to dismiss implicates both Rule 12(b)(6) and Rule 12(b)(1), outside evidence may be considered for Rule 12(b)(1) purposes but not for Rule 12(b)(6) purposes." *United States ex rel. Custom Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 251 (3d Cir. 2016). However, "[i]n deciding motions under Rule 12(b)(6), courts may consider documents integral to or explicitly relied upon in the complaint . . . or any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016) (internal citation and quotation marks omitted).

In the present case, the Court has not considered evidence submitted in connection with Defendant's Rule 12(b)(1) motion to dismiss for purposes of determining whether the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To do so would convert Defendant's Motion into a Motion for Summary Judgment, requiring compliance with Federal Rule of Civil Procedure 12(d). Rather, the Court has considered only the Complaint and the Compact to conclude that Plaintiff's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Although it would be proper for the Court to consider the Executive Director Determinations issued in 2009 and 2010 in connection with Defendant's 12(b)(6) Motion, the Court finds that reliance upon these documents is not necessary to decide the 12(b)(6) Motion.

Plaintiff has stated a plausible claim for relief under the Declaratory Judgment Act.[16] Before doing that, the Court will briefly discuss the Commission's arguments that: (1) the Complaint must be dismissed for lack of final agency action; and (2) WLMG failed to exhaust its administrative remedies.

### i.     Lack of Final Agency Action

The Commission claims that WLMG's Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because "the absence of final agency action prevents WLMG from proving an essential element of its claim." (Doc. 19, at 28). Although the Commission recognizes that the Administrative Procedure Act "is inapplicable because Section 15.1(m) of the Compact exempts the Commission from the purview of the APA," it directs the Court to the final sentence of Section 3.8 of the Compact, maintaining that Section 3.8 only provides for judicial review of the final decisions of the Commission. The operative language in Section 3.8 of the Compact is that "*[a]ny determination of the commission hereunder shall be subject to judicial review in any court of competent jurisdiction.*" Compact at § 3.8 (emphasis added).

The Court rejects the Defendant's argument for at least three reasons. First, Defendant's theory ignores that Section 3.8 is not the only grant of jurisdiction contained in the Compact. Section 15.1(p) of the Compact provides:

---

[16] "Interstate compacts are construed as contracts under the principles of contract law." *Tarrant Regional Water District v. Herrmann*, 133 S.Ct. 2120, 2130 (2013) (citing *Texas v. New Mexico*, 482 U.S. 124, 128, 107 S.Ct. 2279, 96 L.Ed.2d 105 (1987)). Thus, as the Supreme Court instructed in *Tarrant* "[s]o as with any contract, we begin by examining the express terms of the Compact as the best indication of the intent of the parties." *Id.*

The United States district courts shall have original jurisdiction of all cases or controversies arising under the Compact, and this Act and any case or controversy so arising initiated in a State Court shall be removable to the appropriate United States district court in the manner provided by ' 1446, Title 28 U. S. C. Nothing contained in the Compact or elsewhere in this Act shall be construed as a waiver by the United States of its immunity from suit.

Compact at § 15.1(p). For the reasons discussed, this is a case or controversy arising under the Compact and, regardless of any final agency action, or lack thereof, jurisdiction is appropriate. Second, WLMG is not seeking judicial review of the DRBC's action. Rather, it seeks a declaratory judgment that its proposed activities do not constitute a "project" subject to DRBC project review under Section 3.8 of the Compact. Finally, as both parties recognize, the Administrative Procedure Act is inapplicable to claims arising under the Compact. Therefore, contrary to Defendant's assertion, the absence of final agency action does not prevent WLMG from proving an essential element of its claim.

## ii. Failure to Exhaust Administrative Remedies

The Commission also seeks dismissal of the Complaint on the theory that Plaintiff has failed to exhaust its administrative remedies. According to Defendants, "[w]hether or not DRBC rendered a final decision, which it did not, WLMG's Complaint must still be dismissed because WLMG has failed to exhaust its available administrative remedies." (Doc. 19, at 39). According to the Commission, because WLMG has never submitted an application for its review, and "the application process, including an administrative hearing if requested, remains a clear and available administrative remedy that WLMG has failed to exhaust," (Id. at 40), WLMG's Complaint must be dismissed for failure to exhaust

administrative remedies. WLMG, in contrast, claims that its Complaint "presents a purely legal issue that does not require, and will not benefit from, any further Commission review, which, in any event, would plainly be futile." (Doc. 22, at 37).

The Court need not discuss these issues at length but notes, as an initial matter, that neither party has directed the Court to any provision in the Compact that requires a putative Plaintiff to exhaust his or her administrative remedies prior to bringing challenge to the DRBC's jurisdiction (and the Court is aware of none). Moreover, declaratory judgments are available in circumstances where the plaintiff has other available remedies.[17] *See Davis v. Romney*, 490 F.2d 1360, 1370 (3d Cir. 1974) (declaratory judgments "are available where appropriate even though other remedies are also available"); *see also* 28 U.S.C § 2201(a) (declaratory judgment available "whether or not further relief is or could be sought").

### iii.   The Allegations in the Complaint and the Plain Language of the Compact Demonstrate That WLMG is Not Entitled to the Relief it Seeks

Irrespective of whether WLMG failed to exhaust its administrative remedies, or that lack of final agency action requires dismissal of the Complaint, WLMG's Complaint fails to state a claim for relief and must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The sole cause of action in Plaintiff's Complaint is a request for a declaratory

---

[17] Defendant also seeks dismissal of the Complaint on statute of limitations grounds. According to the DRBC, "if a facial challenge to the 2009 EDD were inferred from the Complaint, such challenge would be barred by the applicable statute of limitations." (Doc. 19, at 41). The Court disagrees. First, the Court does not construe Plaintiff's challenge to be a facial challenge to the 2009 EDD. Second, there is insufficient information before the Court to conclude that, on the face of Plaintiff's Complaint, it must be dismissed on statute of limitations grounds.

judgment declaring that the Commission "in asserting jurisdiction over WLMG's proposed

Well Pad, is misconstruing and unlawfully exceeding its authority under the Compact."

(Doc. 1, ¶ 52). It further requests a declaratory determination that the Commission

"otherwise lacks authority to require WLMG to submit for its review, and to obtain its prior

approval for, the proposed Well Pad." (Id., ¶ 51). Specifically, Plaintiff, in its Prayer for

Relief, asks this Court to:

> [d]eclare that the Commission does not have jurisdiction over, or the authority to
> review and approve, or to require WLMG to seek prior approval from the
> Commission for, or to otherwise preclude the development of, WLMG's proposed
> well pad, appurtenant facilities or the related activities to be carried out on the
> Property.

Id. at 18.

In support of this request, WLMG describes the activities which it intends to engage

in on the Property within the Basin as follows:

27. The well pad and the appurtenant facilities to be constructed on the Property,
as well as all related activities to be carried out on the Property, will be
designed, built, operated and carried out for the exploration, extraction and
development of natural gas and not for the conservation, utilization, control,
development or management of water resources.

28. WLMG does not propose to develop, construct or operate a water withdrawal,
dam, impoundment or reservoir, or to construct or operate a wastewater
treatment or discharge facility in connection with the development on the
Property.

29. All water used in connection with the planned Well Pad on the Property will be
obtained from properly licensed and approved sources owned and operated
by persons or entities other than WLMG, will be managed and delivered to
the Well Pad in accordance with all applicable laws and regulations and any
applicable fees will be paid.

30.   All wastewater generated in connection with the Well Pad on the Property will be managed by properly licensed and/or permitted entities other than WLMG in accordance with all applicable laws and regulations.

*Id.,* ¶¶ 27, 28, 29 and 30.

Thus, the underlying premise of Plaintiff's Complaint is that its proposed activities do not and cannot constitute a "project" as defined in the Compact. (Doc. 1 at ¶¶ 48-50). Specifically, the Complaint alleges that WLMG's proposed activities do not constitute a "project" because it "will be designed, built, operated and carried out for the exploration, extraction and development of natural gas and not for the conservation, utilization, control, development or management of water resources." (*Id.* at ¶ 27). Despite the DRBC's best efforts to side-step this issue, it is apparent from the face of Plaintiff's Complaint that its proposed activities which include, *inter alia,* a "natural gas well pad, a gas well and related facilities and associated activities," (*Id.* at 1), constitute a "project" subject to DRBC project review under Section 3.8 of the Compact.

The DRBC generally asserts that whether Plaintiff's activities as alleged in its Complaint constitute a "project" within the meaning of Section 1.2(g) of the Compact will be determined as part of the Commission's overall determination as to whether Plaintiff's proposed well pad and drilling activities have a "substantial effect on the water resources of the Basin," which, in turn, requires that such a project first be submitted to and approved by the Commission. Compact at § 3.8. The DRBC's interpretation of the Compact would require the submission of WLMG's proposed well pad and drilling activities to the

Commission for comprehensive review under Section 3.8 of the Compact without there first

having been a determination that WLMG's activities constitute a "project" for purposes of the

assertion by the DRBC of its jurisdiction over those activities. Thus, the DRBC invites an

interpretive conundrum: if WLMG's proposed activities in the Basin are subject to a

determination as to whether those activities have a "substantial effect on the water

resources of the Basin," then those activities will, *ipso facto*, be deemed to be a "project"

requiring an application under Section 3.8 of the Compact, an application that WLMG will

have already been required to submit. If, however, a determination is made that the

activities proposed do not have a "substantial effect on the water resources of the Basin,"

then WLMG and its proposed activities have been subjected to the entire application

process, and the expense associated with that process, without there first having been a

determination whether or not WLMG's proposed activities constitute a "project" under

Section 1.2(g) and 1.2(i). The effect of the DRBC's interpretation of Section 3.8 is to

eliminate the requirement that the DRBC's authority to require the submission to it for

approval of an application under Section 3.8 is only as to those activities which constitute a

"project" under Section 1.2(g) of the Compact. The language of Section 3.8 of the Compact,

in the Court's view, require that the terms of the Compact be interpreted to resolve this

threshold issue, specifically, whether the Plaintiff's activities as alleged in its Complaint

constitute a "project" within the meaning of Section 1.2(g), as informed by Section 1.2(i), so

as to require the Plaintiff to submit an application to the DRBC under Section 3.8 of the
Compact.

In accordance with its authority to interpret the terms of the Compact, the Court finds
that the allegations of the Plaintiff's Complaint, taken as true and viewed in the light most
favorable to WLMG, establish that WLMG's proposed activities constitute a "project" as that
term is defined in Section 1.2(g) of the Compact. That section provides:

> (g)     "Project" shall mean any work, service or activity which is separately
> planned, financed, or identified by the Commission, or any separate
> facility undertaken or to be undertaken within a specified area, for the
> conservation, utilization, control, development or management of water
> resources which can be established and utilized independently or as
> an addition to an existing facility, and can be considered as a separate
> entity for purposes of evaluation; . . . .

Compact § 1.2(g).[18]   Plaintiff's Complaint alleges, among other things, separate well
pad and gas drilling activity to be undertaken on a property which it owns located in
the Basin for the "utilization . . . of water resources" in connection with the planned

---

[18] "Facility," as defined in the Compact:

> shall mean any real or personal property, within or without the basin, and improvements
> thereof or thereon, and any and all rights of way, water, water rights, plants, structures,
> machinery and equipment, acquired, constructed, operated or maintained for the beneficial
> use of water resources or related land uses including, without limiting the generality of the
> foregoing, any and all things and appurtenances necessary, useful or convenient for the
> control, collection, storage, withdrawal, diversion, release, treatment, transmission, sale or
> exchange of water; or for navigation thereon, or the development and use of hydroelectric
> energy and power, and public recreational facilities; or the propagation of fish and wildlife;
> or to conserve and protect the water resources of the basin or any existing or future water
> supply source, or to facilitate any other uses of any of them.

Compact at § 1.2(e).

well pad on WLMG's property from which will be carried out "related activities such

as drilling, fracturing, completing and operating natural gas wells in Pennsylvania."

(Doc. 1, at ¶ 25).

If there were any questions as to whether WLMG's proposed activities constitute a

"project" under the Compact, Section 1.2(i), which defines "water resources," (and which

Plaintiff conveniently ignores) resolves that question conclusively in favor of a determination

that WLMG's proposed activities constitute a "project" for the utilization of water resources

and, therefore, subject to DRBC Project Review under Section 3.8 of the Compact.  Section

1.2(i) of the Compact provides that the definition of "water resources" "shall include water

and related natural resources in, on, under or above the ground, *including related uses of*

*land, which are subject to beneficial use, ownership or control.*  Compact at § 1.2(i)

(emphasis added).

The allegations set forth in Plaintiff's Complaint clearly describe a facility undertaken

for the utilization of "water resources," since the well pad and related drilling, fracturing and

operation of natural gas wells admittedly involve "water resources," *i.e.*, water "in, on, under

or above the ground" and "related uses of land." *Id.*  WLMG's well pad, drilling, and

fracturing activities are uses of land related to the utilization of water and related natural

resources in, on, under and above the ground where the land use of well pad installation,

fracturing and drilling will occur. As such, this Court finds that the activities described in the

allegations of Plaintiff's Complaint plainly constitute a "project" within the meaning of Section

1.2(g) of the Compact. Because WLMG's proposed activities constitute a "project" within

the meaning of the Compact, it must comply with the requirements of Section 3.8 of the

Compact which requires:

> No project having a substantial effect on the water resources of the Basin
> shall hereafter be undertaken by any person, corporation or governmental
> authority unless it shall have first been submitted to and approved by the
> Commission, subject to the provisions of Sections 3.3 and 3.5. . . .

Compact at § 3.8.

In sum, the Plaintiff asks this Court to declare that the DRBC "does not have jurisdiction

over, or the authority to review and approve, or to require WLMG to seek prior approval

from the Commission for, or to otherwise preclude the development of, WLMG's proposed

well pad, appurtenant facilities or the related activities to be carried out on the Property."

(Doc. 1, at 18). On the face of Plaintiff's Complaint, however, it is apparent that its

proposed activities within the Delaware River Basin constitute a "project" within the meaning

of that term as defined in Sections 1.2(g) and 1.2(i) of the Compact. Accordingly, the

Compact requires Plaintiff to submit an application to the Commission for a determination as

to whether its proposed "project" has a "substantial effect on the water resources of the

Basin" and, if so, whether the Commission shall approve or disapprove such project based

on its determination that the project would or would not substantially impair or conflict with

the Commission's comprehensive plan. Compact at § 3.8.

## V.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, (Doc. 12), will be granted.  A

separate order follows.

Robert D. Mariani
United States District Judge