THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE LAND AND MINERAL GROUP, LLC | : : : | |
| Plaintiff, | : : | |
| v. | : : | **3:16-CV-00897** **(JUDGE MARIANI)** |
| DELAWARE RIVER BASIN COMMISSION | : : : | |
| Defendant, and | : : | |
| DELAWARE RIVERKEEPER NETWORK MAYA K. VAN ROSSUM, THE DELAWARE RIVERKEEPER | : : : : : | |
| Intervenors-Defendants | : | |

## MEMORANDUM OPINION

Presently before the Court is Senators Joseph B. Scarnati, Lisa Baker, and Gene

Yaw's Motion to Intervene as Parties Plaintiff. (Doc. 108.) Senators Scarnati, Baker, and

Yaw ("Senators"), assert that they should be permitted to intervene as of right pursuant to

Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, by permission pursuant to

Federal Rule of Civil Procedure 24(b)(1)(B). (Doc. 108 at 1-2.) For the reasons discussed

below, the Court will deny the Senators' motion.

### I.    INTRODUCTION AND PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group LLC ("WLMG" "Plaintiff")

filed a Complaint against Defendant Delaware River Basin Commission (the "DRBC").

(Doc. 1.) In the Complaint, Plaintiff asks the Court to enter a declaratory judgment holding that the DRBC "does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the [DRBC] for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property." (Doc. 1 at 18.) WLMG owns approximately 180 acres of land, including the natural gas and minerals present on the land, in Wayne County, Pennsylvania. (Doc. 1 ¶ 12.) Approximately 75 acres of the land owned by WLMG is located in the Delaware River Basin. (*Id.*)

Intervenors-Defendants the Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper (collectively referred to as the "DRN") filed a motion to intervene on July 5, 2015, (Doc. 10) which the Court granted on September 12, 2016, (Doc. 26).[1] On October 11, 2016, the Senators, in their official capacities, filed a Motion to Intervene ("2016 Motion"). (Doc. 35.) The Court denied the Senators' 2016 Motion on January 5, 2017. (Doc. 68.)

On March 23, 2017, the Court granted Defendant Delaware River Basin Commission's Motion to Dismiss the Complaint (Doc. 12) and closed the case. (Doc. 93.)

---

[1] The DRN is a not-for-profit organization established in 1988 whose purpose is "to protect, preserve, and enhance the Delaware River, all of its tributary streams, and the habitats and communities of the Basin." (*Id.* at 2-3). It has over 15,000 members and works on issues, actions, regulations, legislation, policies, programs, and decisions that impact the health of the Delaware River Basin. (*Id.* at 3). In this matter, the DRN "seeks to intervene to defend the validity of the DRBC's jurisdiction and authority over activities that may affect the water resources of the Basin and to protect and preserve the interests of DRN and its members in the Basin." (*Id.* at 2).

Plaintiff appealed the Court's dismissal to the United States Court of Appeals for the Third Circuit. (Doc. 94.) The Circuit Court entered Judgment on July 3, 2018, ordering that the District Court's Order entered on March 23, 2017, be vacated and the case be remanded to this Court for further proceedings. (Doc. 97.)

Following remand, the Court reopened the case (Doc. 98) and, on August 27, 2018, issued an Order establishing the pretrial schedule (Doc. 107). The schedule included the directive that "[m]otions to join additional parties shall be filed on later than September 17, 2018." (Doc. 107 at 1.)

The Senators filed the motion under consideration here on September 17, 2018. (Doc. 108.) On October 1, 2018, they filed their supporting brief. (Doc. 110.) Defendants filed opposition briefs on October 15, 2017. (Docs. 111, 112.) The Senators filed a reply brief on October 29, 2018. (Doc. 115.) Therefore, the pending motion is fully briefed and ripe for disposition.

## II. STATEMENT OF FACTS

As the Court has previously explained,

> the Delaware River Basin Compact (the "Compact") is an interstate compact dated November 2, 1961, by and among the Commonwealth of Pennsylvania, New York State, New Jersey, Delaware, and the United States. The purpose of the Compact is the conservation, utilization, development, management and control of the water and related resources of the Delaware River Basin. The Compact created the Defendant DRBC, which is tasked with the adoption and promotion of uniform and coordinated policies for water conservation, control, use and management in the Delaware River Basin.

(Doc. 67 at 2-3 (internal citations omitted).)

At issue in this action is Section 3.8 of the Compact which provides for DRBC's review of a "project having a substantial effect on the water resources of the basin." In considering Defendant Delaware River Basin Commission's Motion to Dismiss the Complaint (Doc. 12), the Court determined that the issue presented the need to interpret terms of the contract, specifically the meaning of "project" under Section 1.2(g) as informed by the meaning of "water resources" under Section 1.2(i). (Doc. 92 at 40.) The Court granted the motion to dismiss based on the following findings:

> On the face of Plaintiff's Complaint . . . it is apparent that its proposed activities within the Delaware River Basin constitute a "project" within the meaning of that term as defined in Sections 1.2(g) and 1.2(i) of the Compact. Accordingly, the Compact requires Plaintiff to submit an application to the Commission for a determination as to whether its proposed "project" has a "substantial effect on the water resources of the Basin" and, if so, whether the Commission shall approve or disapprove such project based on its determination that the project would or would not substantially impair or conflict with the Commission's comprehensive plan. Compact at § 3.8.

(Doc. 92 at 43.) The Circuit Court disagreed, concluding that "the meaning of the word 'project' as used in the compact is ambiguous" and, therefore, the district court's decision on the merits was premature. *Wayne Land and Mineral Group LLC v. Delaware River Basin Commission*, 894 F.3d 509, 515, 527 (3d Cir. 2018). The Circuit Court directed that, upon remand, further fact-finding would be required to discover the Compact drafters' intent and the interpretation of ambiguous terms which prevails should be "the one that aligns best with the drafters' intent." *Id.* at 534.

Turning now to the motion at issue, the Senators are acting in their official capacities as members of the Pennsylvania State Senate and as trustees of the State's natural resources. (Doc. 108 at 1.) Senator Scarnati represents the 25th Senatorial District and is the President *Pro Tempore* of the Senate. (Doc. 108 ¶ 9.) Senator Baker represents the 20th Senatorial District, consisting of approximately 2,581 square miles, of which more than half allegedly is located within the Basin. (*Id.* ¶ 10.) Senator Yaw represents the 23rd Senatorial District and is the chairman of the Senate Environmental Resources and Energy Committee. (*Id.* ¶ 11.) They note that the pending motion is based on different grounds than their first motion to intervene (Doc. 35) and the current motion is based on grounds that could not have been previously asserted. (Doc. 108 at 5 n.1.) Specifically, the Senators now assert that the DRBC's interpretation of the Compact: "(a) usurps the legislative authority vested in the Senators in direct contravention of the Compact; and (b) to the extent its interpretation is supportable under the Compact, the moratorium is a regulatory taking of property without just compensation, relative to which the Senators have fiduciary duties as trustees." (Doc. 108 ¶ 21 (citing Doc. 108 Ex. A, [Proposed] Complaint).) The Senators' "[Proposed] Complaint" (Doc. 108 at 17-27) contains two counts: Count I for Violation of the Terms of the Contract (*id.* at 23); and Count II for Regulatory Taking in Violation of the Fifth Amendment (*id.* at 25). The Senators request "that this Court invalidate the *de facto* moratorium and enjoin its further enforcement, or in the alternative, order the Commission to

5

provide just compensation for the deprivation of the economic value of the property in question." (*Id.* at 27.)

## III. ANALYSIS

As noted above, the Senators move to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). (Doc. 108 at 1.) Alternatively, the Senators seek permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B). (*Id.* at 2.) Defendants respond that the pending motion is barred by the law of the case doctrine and the motion also fails on its merits. (Doc. 111 at 13-24; Doc. 112 at 8-26.)

### A. Law of the Case

Defendants assert that the Court's January 5, 2017, denial of the Senators' October 11, 2016, motion to intervene forecloses consideration of the pending motion. (Doc. 111 at 13-15; Doc. 112 at 8-13.) The Senators maintain that the motion is not barred because, in deciding the 2016 Motion, the Court did not address the issues now presented. (Doc. 115 at 8.) Alternatively, they assert that the issues now raised present a well-recognized exception to the application of the doctrine. (Doc. 115 at 10.) The Court concludes the law of the case doctrine does not bar the pending motion.

The doctrine of the law of the case

limits relitigation of an issue once it has been decided. . . . [T]his doctrine is concerned with the extent to which the law applied in decisions at various stages of the same litigation becomes the governing legal precept in later stages. 18 James Wm. Moore Et Al., Moore's Federal Practice ¶ 134.20 (3d ed.1999). The Court has defined the law of the case as a precept that "'posits that when a court decides upon a rule of law, that decision should continue to

6

govern the same issues in subsequent stages in the same case.' This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (citing *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), and citing 1B James Wm. Moore Et Al., Moore's Federal Practice ¶ 0.404[1], p. 118 (1984)).

*In re Cont'l Airlines, Inc.,* 279 F.3d 226, 232–33 (3d Cir. 2002).

It is well-established that the law of the case doctrine "does not restrict a court's power but rather governs its exercise of discretion." *In re City of Philadelphia Litig.,* 158 F.3d 711, 718 (3d Cir. 1998) (citing *Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir.1997)). Accordingly, the doctrine does not preclude reconsideration of previously decided issues in extraordinary circumstances such as where: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *Id.* at 718 (citation omitted).

In this legal framework, the Court must first determine if the issues raised with the Senators' current motion were decided in the prior determination regarding the Senators' request to intervene and, if the issues were previously decided, whether extraordinary circumstances warrant reconsideration. As noted above, the Senators now assert that the DRBC's interpretation of the Compact: "(a) usurps the legislative authority vested in the Senators in direct contravention of the Compact; and (b) to the extent its interpretation is supportable under the Compact, the moratorium is a regulatory taking of property without

just compensation, relative to which the Senators have fiduciary duties as trustees." (Doc.

108 ¶ 21.) In the 2016 Motion, the Senators asserted that DRBC's actions:

> (i) usurp the authority of the Pennsylvania General Assembly, including the
> Pennsylvania Senate, to enact laws that permit commercial activities within the
> Commonwealth of Pennsylvania under certain defined circumstances; and (ii)
> seek to abrogate laws duly enacted by the Pennsylvania General Assembly,
> including the Pennsylvania Senate, that permit the development of gas well
> pads, gas wells and related facilities and that also allow drilling for natural gas
> in shale formations.

(Doc. 35 ¶ 13.)

This comparison of the two motions shows that the Senators raise the trustee basis

for intervention for the first time in the pending motion, but they raised the usurpation basis

for intervention in the 2016 Motion. Although the Court acknowledged the usurpation

argument in the January 5, 2017, Memorandum Opinion (Doc. 67 at 3-4, 6), the Court's

analysis focused on the argument regarding laws previously enacted (*id.* at 8-12). The

Court concluded that "[o]nce legislation is enacted, legislators such as the three Senators

seeking to intervene in this litigation, do not have a significantly protectable interest in its

implementation to entitle them to intervene as of right."   (Doc. 67 at 8.)   With this

determination, the Court did not specifically rule on the broader issue of whether the

DRBC's actions usurped the authority of the General Assembly.   Therefore, the Court

concludes that the specific issues raised in the pending motion do not present an attempt to

relitigate previously decided issues and a merits-analysis of the pending motion is

warranted.

## B. Intervention as of Right

The Senators assert that they have a right to intervene because their motion is

timely, it seeks to protect significant interests which cannot be adequately represented by

WLMG, and the Senators' interests will be affected or impaired by the disposition of the

action. (Doc. 110 at 8.) Defendants refute each asserted basis for intervention. (Doc. 111

at 15-23; Doc. 112 at 13-26.) For the reasons discussed below, the Court concludes the

Senators have not satisfied their burden of showing they are entitled to intervention as of

right.

Federal Rule of Civil Procedure 24(a)(2) governs intervention as of right. It provides,

in relevant part:

> On timely motion, the Court must permit anyone to intervene who . . . claims
> an interest relating to the property or transaction that is the subject of the action,
> and is so situated that disposing of the action may as a practical matter impair
> or impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). In this Circuit, a non-party may intervene as of right if it can satisfy

four factors:

(1) The application for intervention is timely;
(2) The applicant has a sufficient interest in the litigation;
(3) The interest may be affected or impaired, as a practical matter by the disposition of
the action; and
(4) The interest is not adequately represented by an existing party in the litigation.

*Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366

(3d Cir. 1995) (citations omitted). Each of these requirements must be met to intervene as

of right, and it is the movant's burden to make the needed showing. *Id.*; *Benjamin ex rel.*

*Yock v. Dep't of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 958 (3d Cir. 2012).

## 1. Timeliness

The Senators assert that their motion is timely because the action is still in its

formative stages and it will not cause any delay or otherwise prejudice existing parties.

(Doc. 110 at 8.) Defendants respond that the motion is untimely given the current stage of

the litigation. (Doc. 111 at 16; Doc. 112 at 13-15.) For the reasons discussed below, the

Court concludes the Senators' motion is timely.

Timeliness for purposes of a motion to intervene "is not just a function of counting

days; it is determined by the totality of the circumstances." *United States v. Alcan*

*Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994) (citation omitted). The Third Circuit

Court of Appeals has identified three factors courts should consider to determine if a motion

to intervene is untimely: (1) the stage of the proceeding; (2) the prejudice that delay may

cause the parties; and (3) the reason for the delay." *Mountain Top*, 72 F.3d at 369 (citation

omitted). *Mountain Top* explained that the mere passage of time does not render an

application untimely—even when several years elapse before the motion to intervene is

filed, "the critical inquiry is: what proceedings of substance on the merits have occurred? . . .

This is because the stage of the proceeding is inherently tied to the question of the

10

prejudice the delay in intervention may cause to the parties already involved. 72 F.3d at 369–70. Although the time of filing is not dispositive, "to the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." *Alcan Aluminum*, 25 F.3d at 1183. In considering the relevant factors, courts should be cognizant of the "general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene." *Benjamin*, 701 F.3d at 949.

Regarding the stage of the current proceedings, the Court concludes that, although the motion to dismiss was decided and the case was closed (Docs. 92, 93), the remand and reopening of the case following appeal (Docs. 97, 98) as well as pending discovery disputes (*see* Docs. 116, 126) indicate that the case is at the early stage of proceedings.

The prejudice that delay may cause the parties is a closer question. Although the Senators posit that "it is difficult to conceive of any delay or prejudice to the parties, particularly since the Motion was submitted within the timeframe established by this Court for joining additional parties or amending pleadings" (Doc. 110 at 9), DRBC points to the broadened scope of discovery as a source of delay (Doc. 112 at 14). Specifically, DRBC argues that "[t]he Senator's assertion that allowing them to intervene will not cause delay is untenable" because granting the motion would "convert the present declaratory judgment action, which is narrowly focused on whether WLMG's facilities and activities constitute a

"project," into a regulatory takings case seeking damages concerning Commonwealth

assets and unspecified private property." (Doc. 112 at 14.) The Senators respond that

DRBC's assertion is "unsustainable":

> although the "damages stage" of such an action may require a modest
> adjustments [sic] in the Scheduling Order, assessing the existence of liability
> would not require exhaustive discovery beyond the scope of what is presently
> anticipated. Moreover, the need for extensive discovery pertaining to damages
> is highly speculative because the Commission may alleviate its regulatory
> taking by simply rescinding its moratorium on fracking, rather than providing
> financial compensation for the property-owners. See Lucas v. S.C. Coastal
> Council, 505 U.S. 1003, 1030 (1992).

(Doc. 115 at 14.) The Senators also assert that the Commission would not be prejudiced if

there should be a minor delay. (Id. at 15.)

Notably, the Senators' [Proposed] Complaint contains a Fifth Amendment claim:

Count II is for "Regulatory Taking in Violation of the Fifth Amendment." (Doc. 108 at 25.)

With this claim, the Senators request the following:

> to the extent this Court finds that the de facto moratorium is within the ambit of
> authority transferred to the Commission under the Compact, the Senators
> respectfully request that this Court declare it an unconstitutional regulatory
> taking under the Fifth Amendment and, in consequence, enter an order: (a)
> invalidating the moratorium and enjoining the Commission from enforcing it; or,
> in the alternative (b) directing the Commission to afford just compensation for
> the diminution of the economic value of the property it has appropriated.

(Doc. 26 ¶ 43.) Clearly this claim presents more than a minor "damages stage"

consideration that would not require discovery beyond the scope anticipated by WLMG's

declaratory judgment action. Insofar as the claim could require extensive additional

12

discovery, Defendants would be prejudiced by the delay in the progress in the case as well as additional costs and expenses incurred.

Finally, regarding the reason for delay, the Senators do not acknowledge that there has been any delay in filing the pending motion but rather point to the reopening of the case on July 18, 2018, and the filing of the Answer to the Complaint on August 21, 2018. *See, e.g.,* Doc. 115 at 13. In another section of their reply brief, the Senators assert that their Motion, in significant part, is predicated on supervening legal development, i.e., the Pennsylvania Supreme Court's decision in "*Pennsylvania Envtl. Def. Found. v. Commonwealth,* 161 A.3d 911 (Pa. 2017) . . . which was issued in June 2017, broadened the scope of the fiduciary obligations imposed by the Environmental Rights Amendment under the Pennsylvania Constitution, thereby bringing the Senators' interests as trustees in this action into sharper focus." (Doc. 115 at 11.)

If the Court agreed with the Senators that their current motion is based on the announcement of "a supervening new law" (Doc. 115 at 10), the time for the delay in filing would be measured from the point where the "new law" was announced which, in this case would be June 20, 2017, the date *Pennsylvania Envtl. Def. Found* ("*PEDF*") was decided. *Alcan Aluminum,* 25 F.3d at 1183. Insofar as this case was on appeal at the time, delay in filing from June 2017 to the reopening of this case on July 18, 2018, would not be attributed to the Senators and the two-month delay from reopening to the filing of this motion on September 17, 2018, would not indicate untimeliness. For purposes of consideration of this

factor only, rather than engage in a detailed analysis of the merits of the Senator's assertion, the Court will assume *arguendo* that the filing of the pending Motion two months after the case was re-opened presents a valid reason for any delay in filing.

The foregoing analysis shows that two factors weigh in favor of finding the motion timely and the prejudice factor weighs against such a finding. The Court considers the prejudice factor extremely important given the broadened scope of the litigation which would result from the Senators' intervention. However, based on the Circuit Court's indication regarding the "general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene," *Benjamin*, 701 F.3d at 949, the Court will assume *arguendo* that the motion is timely filed and proceed to the analysis of the remaining relevant factors.

## 2. *Interest in the Litigation*

The Senators assert that their interest in the litigation is threefold: 1) they have a significantly protectable interest in the litigation because their contractual rights are squarely at issue; 2) they have a significantly protectable interest in the natural resources affected by the DRBC moratorium; and 3) they must be permitted to intervene because this action will have a substantial *stare decisis* effect on their rights. (Doc. 110 at 10-18.) Defendants contend that the Senators do not have a significantly protectable interest in the litigation. (Doc. 111 at 17-21; Doc. 112 at 15-18.) For the reasons discussed below, the Court

14

concludes the Senators have not satisfied their burden of showing they have a sufficient interest in the litigation.

The Supreme Court has held that in order to intervene as of right, the proposed intervenors must possess an interest that is "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). The Third Circuit has instructed that a "significantly protectable" interest "must be a legal interest as distinguished from interests of a general and indefinite character." *Mountain Top*, 72 F.3d at 318 (internal citation and quotation omitted). Specifically, "[t]he applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene." *Id.*

a.    Interest Based on Contractual Rights

The Senators assert that they "have a significantly protectable interest that warrants intervention because, they are parties to a contract whose 'contractual rights . . . may be affected by a proposed remedy.'" (Doc. 110 at 11 (citing *Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 463, 467 (M.D. Pa. 2005) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir. 1987))).) Although the Court agrees with the Senators that an interstate compact is to be construed using principles of contract law (*see* Doc. 110 at 10), the Court concludes the Senators have not shown they have significantly protectable interests as parties to the Delaware River Basin Compact.

First, the Senators' assert that "the fact that interstate compacts are fundamentally a creature of the legislature is not only a common thread running through the passages of

15

*Doe* [*v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95 (3d Cir. 2008)], *see e.g.*, *id.* at 110 (explaining that the interstate compact at issue "reflect[ed] the collective wisdom . . . of the Pennsylvania General Assembly," as well as that of the New Jersey Legislature and Congress), but is also manifest in the panel's opinion in Wayne Land II." (Doc. 110 at 10-11.) The Court concludes this assertion is without legal significance because *Doe* did not indicate that individual legislators are parties to an interstate compact or imply that individual legislators had a significantly protectable interest in the interpretation of the compact. Although *Doe* referenced the role of the Pennsylvania General Assembly in adopting the compact at issue (the Interstate Compact Concerning Parole and Probation), 513 F.3d at 110, the Circuit Court stated that "Pennsylvania and New Jersey are the obvious parties to the Compact," *id.* at 105. Further, while the Senators are correct that the Circuit Court instructed this Court to consider the intent of the parties in resolving the ambiguity at issue (*see* Doc. 110 at 12 (citing *Wayne Land*, 894 F.3d at 534)), the fact-finder "'must attempt to discover what the contracting parties . . . intended [the disputed provisions] to mean.'" 894 F.3d at 534 (quoting *Sumitomo Machinery Corp. of Am., Inc., v. AlliedSignal, Inc.*, 81 F.3d 328, 335 (3d Cir. 1996)). Relevant interpretive tools include "how other interstate compacts, the parties' course of performance, and the negotiation and legislative history of the Compact, among other evidence, bear on the question of intent." 894 F.3d at 534.

The Circuit Court's list of sources relevant to the inquiry does not contemplate the intent of the *current* legislative body of a signatory party or individuals currently holding a

legislative position. The Senators do not present, nor does the Court find, any evidence that

individuals currently serving in a legislative position have a perspective on the original intent

of the contracting parties other than their individual viewpoint. Similarly, no evidence

suggests that the Senators have access to evidence which bears on the question of intent

which is not generally available. Thus, the directive that "[t]he interpretation that should

prevail is the one that aligns best with the drafters' intent," 894 F.3d at 534, does not give

rise to a significantly protectable interest on the part of an individual currently serving in the

legislature of a party to the contract.

As the Court determined in the context of the 2016 Motion,

[o]nce legislation is enacted, legislators such as the three Senators seeking to intervene in this litigation, do not have a significantly protectable interest in its implementation to entitle them to intervene as of right. *See Roe*, 464 F. Supp. at 486 ("Nor do we find the interests of Dougherty, as legislator, member of the General Assembly and cosponsor of Public Act 148, to be sufficiently substantial, direct, or legally protectable interests to warrant intervention."), *aff'd*, 623 F.2d 829 (3d Cir. 1980). *See also Nat'l Collegiate Athletic Ass'n*, 296 F.R.D. at 349 ("Once again, *Roe* controls, and the Court cannot conclude that Senator Corman's interest in arguing the constitutionality of the Act is sufficiently substantial, direct, or legally protectable to warrant intervention.).

(Doc. 44 at 8-9.) On this basis, the Court found that the Senators lacked a significantly

protectable interest. (*Id.* at 9.) Although the Senators did not frame their argument in

contractual terms in the 2016 Motion (*see* Docs. 40, 51), the distinction is not significant for

the reasons discussed above.

The Senators also offer the related argument that this action "squarely places" their

contractual rights at issue because

17

the Court must determine whether the challenged actions are within the ambit of authority conferred to the Commission by the Compact, or whether the Member States continue to retain the right to legislate on those matters. In short, the principal task before this Court is to establish the allocation of powers under the Compact between the Commission and the respective legislatures of the Member States. Accordingly, because the scope of the Senators' legislative rights pursuant to the Compact would be affected by the Commission's proposed remedy, the Senators must be permitted to intervene.

(Doc. 110 at 12-13.) In their reply brief, the Senators state "their legislative interest is in promoting the proper interpretation of a contract that, in a legal sense, they were responsible for drafting and ratifying." (Doc. 115 at 15-16.) The Court disagrees.

The Senators' initial argument and the clarification of their legislative interest based on contractual principles fail for reasons similar to those set out above: the Senators are not parties to the contract and the intent of the contracting parties regarding what sovereign power the parties intended to cede to the DRBC is not an issue of *current* intent. Importantly, though the Senators posit that their legislative rights "*would be* affected by the Commission's proposed remedy" (*id.* (emphasis added)), this eventuality would only come to pass if DRBC's interpretation is found to be "the one that aligns best with the drafters' intent," *Wayne Lands*, 894 F.3d at 534. As per the Third Circuit's opinion, intent includes the question of the extent to which "Pennsylvania intended to cede its sovereign power." *Wayne Land*, 894 F.3d at 534. Thus, notwithstanding the Court's rejection of the Senators' argument that they are entitled to intervene as contracting parties to the Compact, the

resolution of the case will encompass the 1961 intent of the contracting parties regarding

ceding of the states' sovereign powers. [2]

The Senators next aver that considerations other than those based on the premise

that they are contracting parties support their interest in interpreting the Compact. (Doc.

115 at 16.) The Senators state that while their "interest in resolving an ambiguity in an

ordinary question of statutory interpretation is arguably is [sic] limited, actions involving

ambiguity in interstate [sic] compact are palpably different and, thus, the Senators are

entitled to intervene." (*Id.* at 16.) They further state that

> unlike other legislative actions subject to the [sic] judicial review, interstate
> compacts cannot be amended or repealed by the legislature. The importance
> of this distinction cannot be understated because, ordinarily, if the General
> Assembly disagrees with a court's interpretation of an ambiguous statute, it has
> an opportunity to repeal the law or enact clarifying legislation. Conversely,
> interstate agreements, including the Compact, can be repealed or modified
> during their term only by concurrent legislation of the signatory states and the
> United States Congress. Thus, the only meaningful opportunity to effectuate
> legislative intent under the present circumstances is before the judiciary. In
> terms of the public policy implications, given the potentially far-reaching
> consequences of decisions affecting the balance of power under an interstate
> compact, the Senators should have a right to intervene.

---

[2] The Senators and other legislators filed a similar motion to intervene in appellate proceedings. *Wayne Land*, No. 17-1800, Doc. 003112756570 (3d Cir., filed Oct. 18, 2017). The Circuit Court denied the motion without opinion. *Id.*, Doc. 003112763039 (3d Cir., filed Oct. 26, 2017). In their July 2018 opinion, the Circuit Court noted "[w]e denied a request from the Pennsylvania senators and representatives to intervene as appellants, but we granted their request to participate in oral argument." 894 F.3d at 521 n.7. The Circuit Court identified the state legislators' argument as follows: "The state senators and representatives argue that the District Court's determination that the word 'project' in the Compact encompasses fracking-related activities permits the Commission to usurp the legislative authority that the Pennsylvania Constitution vests exclusively in the Pennsylvania General Assembly." 894 F.3d at 521.

(Doc. 115 at 17.) Notably, the Senators identify a method for modifying the Compact such that the ambiguity currently at issue could be resolved, i.e., "the Compact[ ] can be repealed or modified during their term . . . by concurrent legislation of the signatory states and the United States Congress." (Doc. 115 at 17.)

The Compact itself identifies how it can be amended or supplemented. Section 14.20 of the Compact provides the following: "Amendments and supplements to this compact to implement the purposes thereof may be adopted by legislative action of any of the signatory parties concurred in by all of the others." While there are different views as to how such language found in multi-state compacts operates in practice, there is agreement that "concurred in" language found in a compact provides a method to amend the compact. See, e.g., International Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Commission, 311 F.3d 273, 276-81 (3d Cir. 2002).

The "de facto moratorium" and allegedly erroneous interpretation of the Compact have been in place since 2010. (See Doc. 108 at 23 ¶¶ 26-27.) Therefore, the Senators have had ample opportunity to mount a challenge through the methodology identified in the Compact, and the record does not reveal that they have attempted to do so. Moreover, their statement that intervention in the current action is "the only meaningful opportunity to effectuate legislative intent" presupposes that the Senators' interpretation is what the 1961 legislature and the legislatures of other signatory parties intended and the Circuit Court issued a hollow directive when it instructed this Court to "to evaluate in the first instance

how other interstate compacts, the parties' course of performance, and the negotiation and legislative history of the Compact, among other evidence, bear on the question of intent" and thereafter adopt the interpretation "that aligns best with the drafters' intent." *Wayne Land*, 809 F.3d at 534. As previously discussed, the Court rejects the Senators' argument that, as current legislators, they are in a better position than the current litigants to ascertain the parties' intent in 1961.[3]

The foregoing analysis indicates that the Senators' assertion in their reply brief that legislative history bolsters their interest in litigation (Doc. 115 at 17) does not provide the suggested support. The Court does not dispute the accuracy of the Senators statement that

---

[3] Rather than supporting intervention as asserted by the Senators, the Court finds that the identified modification process, other aspects of interstate agreements in general, and this Compact in particular suggest the opposite. "Under the Compact Clause, Article I, Section 10, Clause 3 of the United States Constitution, states may enter into agreements regarding matters of common concern provided they obtain the consent of Congress. *Local 524*, 311 F.3d at 274. As the Supreme Court has explained:

> Bistate entities occupy a significantly different position in our federal system than do the States themselves. The States, as separate sovereigns, are the constituent elements of the Union. Bistate entities, in contrast, typically are creations of three discrete sovereigns: two States and the Federal Government. *Their mission is to address interests and problems that do not coincide nicely either with the national boundaries or with State lines—interests that may be badly served or not served at all by the ordinary channels of National or State political action.*

*Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 40 (1994) (internal quotations and citations omitted) (emphasis added). Such entities "are to be regarded not as extensions of each compacting state's authority, but rather as 'independently functioning parts of a regional polity and of a national union.'" *Local 542*, 311 F.3d at 276 (quoting *Hess*, 513 U.S. at 40). Moving from the general to the specific, the signatories to the Compact at issue here agreed, pursuant to Section 1.6, to an initial term of 100 years and, pursuant to Section 14.20, they agreed to an amendment methodology which required the concurrence of all signatory parties. Clearly, the 1961 signatory parties fundamentally intended to commit to a long-term agreement to serve multi-state interests and they did not intend for modification of the Compact to be a simple process. These core facts support the Court's conclusion that, over fifty years later, the perspective of three current members of the legislature of one signatory party is not the proper perspective from which the intent at issue here may be discerned.

21

the "the general framework of the enabling legislation and its procedural history reveals the critical role of the Senate in the passage of the Compact." (Doc. 115 at 18.) However, the Court finds the statement without legal significance to the present inquiry in that the Senators do not show how the role of the legislature in the passage of the Compact in 1961 gives them a significantly protectable interest in the current interpretation of the contract.[4] Further, in ascertaining the interpretation that best aligns with the drafters' intent, the Court will review relevant legislative history as directed by the Circuit Court. *Wayne Land*, 894 F.3d at 523-24.

With their additional contention in their reply brief that they have a right to intervene under ordinary principles of contract law (Doc. 115 at 20), the Senators do not present a basis for intervention as of right. Essentially the Senators criticize certain points made by Defendants without offering further support for the proposition that their right to intervene is

---

[4] In *Fumo v. City of Philadelphia*, 972 A.2d 487, (Pa. 2009), the Pennsylvania Supreme Court considered state legislators' standing in the Pennsylvania state law context and concluded that the legislators did not have standing to assert a claim that the City did not act properly in exercising its statutory authority to license because the claim reflected "nothing more than the legislators' disagreement with the way the Commerce Director interpreted and executed her duties on behalf of the City." *Id.* at 502. Though standing criteria in state and federal court are different and "Pennsylvania courts are much more expansive in finding standing than their federal counterparts," *Robinson Twp. V. Com.*, 52 A.3d 463, 472 (Pa. Commw. Ct. 2012), *aff'd in part rev'd in part on other grounds sub nom. Robinson Twp., Washington Cty. V. Com.*, 83 A.3d 901 (Pa. 2013), the Pennsylvania Supreme Court applied standing criteria to the question of whether legislators had a "sufficient interest" to intervene in *Robinson Twp. v. Com.*, 84 A.3d 1054 (Pa. 2014). The Court held that the General Assembly legislators did not have a right to intervene where they sought to "offer their perspective on the correctness of governmental conduct." *Id.* at 1055. Though the circumstances of this case are contextually and factually distinct, the Court finds the reasoning instructive in analyzing the "significantly protectable interest" inquiry at issue here.

supported by ordinary contract principles. (*Id.* at 20-21.) Thus, further discussion of this alleged basis for intervention is not warranted.

b.    Interest Based on Trustee Status

The Senators also argue that they have a significantly protectable interest as trustees of the Commonwealth's natural resources because the moratorium extends to property that is part of the Trust over which the Senators and other elected officials have trustee obligations. (Doc. 110 at 13-16; Doc. 115 at 22-24.) Defendants respond that the Senators do not have a legally cognizable interest based on their alleged status as trustees. (Doc. 111 at 19-21; Doc. 112 at 18.) The Court concludes the Senators have not shown they have significantly protectable interests as trustees of the Commonwealth's natural resources.

The Court agrees that the legislature has fiduciary duties in its role as trustee of the Commonwealth's natural resources pursuant to Article I, Section 27 of the Pennsylvania Constitution which provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27. In *PEDF*, the Pennsylvania Supreme Court extensively reviewed the Commonwealth's obligations pursuant to Section 27 and related legislation and stated, as a general proposition, that "[t]he Commonwealth (including the Governor and General

23

Assembly) may not approach our public natural resources as a proprietor, and instead must at all times fulfill its role as a trustee." 161 A.3d at 939. Elsewhere in the opinion, the Pennsylvania Supreme Court noted the following: "Trustee obligations are not vested exclusively in any single branch of Pennsylvania's government, and instead all agencies and entities of the Commonwealth government, both statewide and local, have a fiduciary duty to act toward the corpus with prudence, loyalty, and impartiality." 171 A.3d at 932 n.23 (citing *Robinson Twp.*, 83 A.3d at 956–57; and citing Pa. L. Journal, 154th General Assembly, No. 118, Reg. Sess., 2269, 2271 (1970)).)[5] Thus, the legislature has trustee obligations which were constitutionally established with the adoption of Section 27 and the creation of the natural resources trust.

However, finding that the legislature must act as a trustee regarding the Commonwealth's natural resources does not equate with finding that this obligation provides the Senators with a significantly protectable interest for the purpose of intervening

---

[5] *PEDF* then noted that, pursuant to subsequent legislation, the Department of Conservation and Natural Resources ("DCNR")

> in addition to its trustee obligations, the DCNR also has a statutory responsibility "to maintain, improve and preserve State parks, to manage State forest lands to assure their long-term health, sustainability and economic use." *See* 71 P.S. § 1340.101. To pursue this mission, the DCNR is empowered with exclusive authority "to make and execute contracts or leases in the name of the Commonwealth for the mining or removal of any valuable minerals that may be found in State forests" when, and only when, the DCNR determines that doing so is in the best interests of the Commonwealth. 71 P.S. § 1340.302(a)(6).

161 A.3d at 932 n.23.

as a matter of right in the current litigation. The Senators summarize their argument as

follows:

> the Commonwealth owns substantial property within the Basin, all of which,
> pursuant to PEDF, are part of the Trust. The moratorium, if permitted to remain
> intact, will totally and permanently divest the aforementioned property from the
> Trust. Indeed, the Commission's proposed interpretation of the Compact
> arrogates [sic] for itself total control and management of the property held in
> Trust. The Senators, in turn, have a fiduciary duty to prevent such a diminution
> of the Trust and, whenever in the best interest of the Trust, increase the value
> of its corpus.

(Doc. 110 at 16 (citing *PEDF*, 161 A.3d at 932; and citing 20 Pa.C.S. § 7780.6)[6].)

This argument shows that the Senators' attempt to establish intervention as of right

in their trustee role is grounded in their alleged significantly protected interest as legislators

and they seek to enforce their individually preferred interpretation of the Compact—a basis

which the Court determined in the previous section of the Memorandum to be inadequate to

support intervention as of right. *See supra* pp. 16-22 & n.4. In the main, the Senators'

purported support for their position on the issue is proffered in conclusory terms and no

cited case stands for the proposition that a member of a state legislature has a significantly

protectable interest in his or her role as trustee to intervene where the value of the corpus of

the trust could be diminished upon the occurrence of a future event. (*See* Doc. 110 at 14-16

(citing *PEDF.*, 161 A.3d at 931-32; *Robinson Twp.*, 52 A.3d at 473; *Mountain Top*, 72 F.3d

---

[6] The Senators cite 20 Pa.C.S. § 7780.6 for the proposition that it identifies a trustee's obligations to include
"the duty to bring and defend actions that impact the trust and, the duty to take reasonable steps that would
increase the value of a trust's assets." (Doc. 110 at 16.)

at 367; *Agua Caliente Band of Cahuilla Indians v. Coachella Valley, Water Dist.*, 162 F.

Supp. 3d 1053, 1056 (C.D. Cal. 2014); *Sierra Club v. Robertson*, 960 F.2d 83, 86 (8th Cir.

1992)).)

The shaky ground on which the Senators' argument stands is highlighted by their

unsupported assertion that "[t]he moratorium, if permitted to remain intact, will *totally and*

*permanently divest* the aforementioned property from the Trust" (Doc. 110 at 16 (emphasis

added)) when, *at most*, the DRBC's interpretation of the Compact affects limited aspects of

the property held in trust. Further, although the Senators assert that whether "the

moratorium comports with the purpose of the trust . . . is not [an issue] before the Court"

(Doc. 115 at 23), their core argument assumes, as a basis for intervention, that the

moratorium presents a "diminution of the Trust" (Doc. 110 at 16). While there is no need to

further parse the Senators' trustee argument, the Court notes that the Senators' conclusory

statement regarding diminution is at odds with the Pennsylvania Supreme Court's

discussion of the contours of the Constitutional Amendment establishing the Trust, Pa.

Const. art. I, § 27.

*PEDF*, upon which the Senators' heavily rely for their trustee argument (Doc. 110 at

14, 15, 16), cited the drafters' recognition and acknowledgment of the "shocks to our

environment and quality of life" which resulted from inadequate stewardship of the

Commonwealth's natural resources:

> We seared and scarred our once green and pleasant land with mining
> operations. We polluted our rivers and our streams with acid mine drainage,

26

with industrial waste, with sewage. We poisoned our 'delicate, pleasant and wholesome' air with the smoke of steel mills and coke ovens and with the fumes of millions of automobiles. We smashed our highways through fertile fields and thriving city neighborhoods. We cut down our trees and erected eyesores along our roads. We uglified our land and we called it progress.

161 A.3d at 918 (citing 1970 Pa. Legislative Journal–House at 2270 (quoting anonymous 1698 description of Penn's Woods air)).) *PEDF* acknowledged that "a trustee is empowered to exercise discretion with respect to the proper treatment of the corpus of the trust, [but] that discretion is limited by the purpose of the trust and the trustee's fiduciary duties, and does not equate 'to mere subjective judgment.'" *Id.* at 978 (quoting *Robinson Twp.*, 83 A.3d at 978). PEDF explained in detail the Commonwealth's role as a trustee and resulting fiduciary duties:

The third clause of Section 27 establishes a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth is the trustee, and the people are the named beneficiaries. *Robinson Twp.*, 83 A.3d at 955–56. The terms "trust" and "trustee" carry their legal implications under Pennsylvania law at the time the amendment was adopted. *See Appeal of Ryder*, 365 Pa. 149, 74 A.2d 123, 124 (1950) (providing that "words having a precise and well-settled legal meaning must be interpreted" accordingly); *see also Robinson Twp.*, 83 A.3d at 956 (citing Pa.C.S. § 1903). Notably, Professor Broughton explained that the Commonwealth's role was plainly intended to be that of a "trustee," as opposed to "proprietor." *See* Pa. L. Journal, 154th General Assembly, No. 118, Reg. Sess., 2269, 2273 (1970) (Broughton Analysis). As a trustee, the Commonwealth must deal "with its citizens as a fiduciary, measuring its successes by the benefits it bestows upon all its citizens in their utilization of natural resources under law." *Id.* Under Section 27, the Commonwealth may not act as a mere proprietor, pursuant to which it "deals at arms['] length with its citizens, measuring its gains by the balance sheet profits and appreciation it realizes from its resources operations." *Id.*

The *Robinson Township* plurality aptly described the Commonwealth's duties as the trustee of the environmental trust created by the people of Pennsylvania as follows:

> As trustee, the Commonwealth is a fiduciary obligated to comply with the terms of the trust and with standards governing a fiduciary's conduct. The explicit terms of the trust require the government to "conserve and maintain" the corpus of the trust. *See* Pa. Const. art. I, § 27. The plain meaning of the terms conserve and maintain implicates a duty to prevent and remedy the degradation, diminution, or depletion of our public natural resources. As a fiduciary, the Commonwealth has a duty to act toward the corpus of the trust—the public natural resources— with prudence, loyalty, and impartiality.

*Robinson Twp.*, 83 A.3d at 956–57.

*PEDF*, 161 A.3d at 931–32. *PEDF* summarized the two basic duties imposed on the

Commonwealth as the trustee as follows:

> First, the Commonwealth has a duty to prohibit the degradation, diminution, and depletion of our public natural resources, whether these harms might result from direct state action or from the actions of private parties. *Robinson Twp.*, 83 A.3d at 957. Second, the Commonwealth must act affirmatively via legislative action to protect the environment. *Id.* at 958 (citing *Geer v. Connecticut*, 161 U.S. 519, 534, 16 S.Ct. 600, 40 L.Ed. 793 (1896) (trusteeship for the benefit of state's people implies legislative duty "to enact such laws as will best preserve the subject of the trust, and secure its beneficial use in the future to the people of the state")).

*PEDF*, 161 A.3d at 933.

Finally, the Court notes that the Senators' trust argument and the assertion of the

trust relationship as the basis for Count II of their [Proposed] Complaint for Regulatory

Taking in Violation of the Fifth Amendment (Doc. 108 at 25-26 ¶¶ 37-43) call into question

their statement that they

are not required to meet the criteria for standing because intervenors need not establish independent Article III standing, unless they seek relief that is broader that [sic] the party on whose behalf they seek to intervene. *Commonwealth of Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018) (citing *Town of Chester v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017))). Here, the Senators and Plaintiffs seek identical relief – *i.e.*, a declaration that the Commission lacks authority to implement a moratorium.

(Doc. 115 at 21.) Although the Senators made this statement in the context of their earlier contractual argument, they also generally aver that "standing is not presently at issue" (Doc. 115 at 24). In so doing, they do not address the broadened scope of the current litigation which their [Proposed] Complaint presents. It may be true that the relief sought in Plaintiff's Complaint (Doc. 1 at 18) is sufficiently similar to the relief sought in Count I of the Senator's [Proposed] Complaint (Doc. 108 at ¶ 36) that the Senators need not meet standing criteria for that claim.[7] However, Count II of the Senators' [Proposed] Complaint is an additional count with a request for alternative relief:

> to the extent this Court finds that the *de facto* moratorium is within the ambit of authority transferred to the Commission under the Compact, the Senators respectfully request that this Court declare it an unconstitutional regulatory taking under the Fifth Amendment and, in consequence, enter an order: (a) invalidating the moratorium and enjoining the Commission from enforcing it; or, in the alternative (b) directing the Commission to afford just compensation for the diminution of the economic value of the property it has appropriated.

---

[7] As set out previously, *supra* p. 2, Plaintiff requests that the Court

> [d]eclare that the Commission does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the Commission for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property.

(Doc. 1 at 18.) With Count I of their [Proposed] Complaint, the Senators "request that this Court declare that the Commission lack authority to institute a de facto moratorium within the Basin." (Doc. 108 at 25 ¶ 36.)

(Doc. 108 at 26 ¶ 43.) Thus, it is clear that the Senators seek relief "that is broader tha[n] the party on whose behalf they seek to intervene." (Doc. 115 at 21.) Given the Senators failure to discuss this aspect of their proposed pleading, the Court cannot conclude they have shown that they are not required to satisfy standing criteria to support their claim for intervention as of right.

This conclusion is bolstered by a more in-depth look at the Supreme Court's decision in *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645 (2017), which directly addressed the issue of whether an intervenor of right must meet the requirements of Article III standing. The Court held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* at 1651. Further, because Article III standing "is not dispensed in gross[,] . . . a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* at 1650 (internal citations and quotations omitted). Accordingly, the Senators cannot categorically avoid the standing issue presented by their [Proposed] Complaint.

c.     Interest Based on *Stare Decisis*

The Senators also assert that they are entitled to intervention as of right because "this Court's decision is likely to have a profound a *stare decisis* impact on the Senators, which, according to this Court, is a sufficient basis for intervention as of right." (Doc. 110 at 17 (citing *Benjamin v. Dep't of Pub. Welfare of Cmwlth.*, 267 F.R.D. 456, 461 (M.D. Pa. 2010); *Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 257 (3d Cir.

30

2017)).) Defendant DRN responds that the Court rejected this basis for intervention in the January 2017 opinion addressing the Senators' 2016 Motion. (Doc. 111 at 21 (citing Doc. 67 at 8).) The Court concludes the Senators have not satisfied their burden of showing that the potential *stare decisis* impact of this Court's decision gives rise to a legally sufficient interest to warrant intervention as of right.

The Senators have not satisfied their burden because they do not show how the two cases cited support their position. *Benjamin* assessed the intervenor rights of "residents of intermediate care facilities for the mentally retarded" and, in listing bases for intervention as of right, stated that "an applicant typically has a right to intervene where 'the action will have a significant *stare decisis* effect on the applicant's rights,'" 267 F.R.D. at 461 (quoting *Harris v. Pernsely*, 820 F.2d 592, 601 (3d Cir. 1987)). *Benjamin* did not further discuss *stare decisis*. However, in *Harris*, the Third Circuit Court of Appeals followed the listed bases for intervention with further contextual explanation:

> At the same time, . . . to have an interest sufficient to intervene as of right, "the interest must be 'a legal interest as distinguished from interests of a general and indefinite character.'" *United States v. American Telephone and Telegraph Co.,* 642 F.2d 1285, 1292 (D.C.Cir.1980), *quoting Radford Iron Co. v. Appalachian Elec. Power Co.,* 62 F.2d 940, 942 (4th Cir.1933). In many cases, . . . the disposition of the action will have some impact on the interests of third parties. To intervene as of right as a party to the litigation, however, the applicant must do more than show that his or her interests may be affected in some incidental manner. Rather, the applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene. *See, e.g. United States v. Perry County Board of Education,* 567 F.2d 277, 279 (5th Cir.1978).

*Harris*, 820 F.2d at 601. Similarly, *Seneca* assessed intervenor rights distinct from those at

issue here and addressed *stare decisis* in the context of a threatened legal interest:

> "It is not sufficient that the claim be incidentally affected; rather, there must be
> 'a tangible threat' to the applicant's legal interest.... [T]his factor may be
> satisfied if, for example, a determination of the action in the [proposed
> intervenors'] absence will have a significant *stare decisis* effect on their
> claims, or if the [proposed intervenors'] rights may be affected by a proposed
> remedy." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir.
> 1992) (citation omitted) (quoting *Harris v. Pernsley*, 820 F.2d 592, 601 (3d
> Cir. 1987)); *see also Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216,
> 226–27 (3d Cir. 2005).

*Seneca Res. Corp.*, 863 F.3d at 256–57.

These cases indicate that the *stare decisis* consideration relates to the "tangible

threat" factor of the determination and a potential *stare decisis* effect is not itself a

cognizable legal interest--it is the threat to an *underlying right* that gives rise to a *stare*

*decisis* claim. Here the Senators have not satisfied their burden of establishing that right in

that the Court has found that the previously proffered interests are legally inadequate.

Thus, the Senators' reliance on the cited authority is misplaced--because the Court has

concluded that the Senators have not satisfied their burden of establishing "a *legally*

*cognizable interest*," *Harris*, 820 F.2d at 601, the "tangible threat," *id.*, element of the inquiry

is not reached.

The Court's conclusion is consistent with the *stare decisis* analysis set out *Liberty*

*Mutual Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005), where the Circuit Court

considered the intervenor applicants' argument that "the district court erred in failing to

recognize that their interests could be impaired by *stare decisis* and that this possibility

creates a legally sufficient interest to warrant intervention as of right." *Id.* at 226.

> [The applicants] cite *Brody v. Spang,* 957 F.2d 1108 (3d Cir.1992), where we
> wrote, in relevant part, as follows:

>> Once an applicant for intervention has established that he or she
>> possesses a sufficient legal interest in the underlying dispute, the
>> applicant must also show that this claim is in jeopardy in the
>> lawsuit. Under this element of the test, the [proposed
>> intervenors] must demonstrate that their legal interests may be
>> affected or impaired, as a practical matter by the disposition of
>> the action. In making this determination, we are required to
>> assess the practical consequences of the litigation, and may
>> consider any significant legal effect on the applicant's interest.

>> It is not sufficient that the claim be incidentally affected; rather,
>> there must be a tangible threat to the applicant's legal interest.
>> Yet, *this factor may be satisfied if, for example, a determination
>> of the action in the applicants' absence will have a
>> significant stare decisis effect on their claims,* or if the applicants'
>> rights may be affected by a proposed remedy."

*Treesdale,* 419 F.3d at 226 (quoting *Brody,* 957 F.2d at 1122–23) (emphasis added in

*Treesdale*). The *Treesdale* proposed intervenors specifically argued that a decision for the

insurance company in the insurance coverage declaratory judgment action finding that the

insurance policies at issue had been exhausted could impact their potential future suit under

the Pennsylvania Insurance Insolvency Act, 40 P.S. § 117, and the insurance company

would "raise, as *stare decisis,* the holding of the district court in the declaratory judgment

action that the [umbrella excess liability] policies have been exhausted." 419 F.3d at 227.

On this basis, they concluded that if they were not permitted to intervene there was "a

33

strong possibility that their claims against Liberty Mutual in a suit under the Act will be

impaired or even eliminated through *stare decisis.*" *Id.* The Circuit Court explained the

problem with the proposed intervenors' argument as follows:

> It fails to recognize that the "interest element" and the "impairment element" are
> separate and distinct aspects of our intervention as of right
> inquiry. *See Kleissler* [*v. U.S. Forest Service,* 157 F.3d 964, 969 (3d Cir.
> 1996)]. We examine the impairment element only after the applicant for
> intervention as of right has shown a protectable legal interest. *Brody,* 957 F.2d
> at 1122 ("Once an applicant for intervention has established that he or she
> possesses a sufficient legal interest in the underlying dispute, the applicant
> must also show that this claim is in jeopardy in the lawsuit."). However, as we
> explained above, Appellants have not established a sufficient interest to
> intervene as of right. Therefore, we do not proceed to the impairment inquiry.

*Treesdale,* 419 F.3d 216, 226–27 (3d Cir. 2005).

As set out above, the Senators here, like the proposed intervenors in *Treesdale,*

have not established a sufficient interest to intervene as of right and we do not proceed to

the impairment inquiry where their *stare decisis* argument would be we considered. In other

words, because the Senators have not shown that they have a significantly protectable

interest in this litigation, they cannot show they are entitled to intervene as of right.

Therefore, the Court will address their alternative argument that permissive intervention is

warranted. (Doc. 110 at 22.)

## C.    Permissive Intervention

The Senators assert that they should be permitted to intervene pursuant to Federal

Rule of Civil Procedure 14(b)(1)(B) because they have, "at a minimum demonstrated a

sufficiently developed interest to warrant permissive intervention." (Doc. 110 at 22.)

Defendants respond that permissive intervention should be denied. (Doc. 111 at 23; Doc. 112 at 24.) The Court concludes permissive intervention is properly denied.

Under Rule 24(b)(2) the Court may permit "anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In deciding whether to permit intervention under Rule 24(b), 'courts consider whether the proposed intervenors will add anything to the litigation.'" *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 (quoting *Kitzmiller v. Dover Area Sch. Dist.*, 229 F.R.D. 462, 471 (M.D. Pa. 2005)). The Court must also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Nat'l Collegiate Athletic Ass'n*, 296 F.R.D. at 350.

Here, the Court finds that the Senators' participation would prejudice the adjudication of the original parties' rights and doubts whether the Senators' participation will add anything to this litigation. First, as to prejudice, in analyzing the Senators' claim for intervention as of right, the Court found that Count II of the Senators' [Proposed] Complaint for "Regulatory Taking in Violation of the Fifth Amendment" (Doc. 108 at 25) "clearly presents more than a minor 'damages stage' consideration that would not require discovery beyond the scope anticipated by WLMG's declaratory judgment action. Insofar as the claim could require extensive additional discovery, Defendants would be prejudiced by the delay in the progress in the case as well as additional costs and expenses incurred." *Supra* pp. 12-13. On this basis, although the Court considered "the prejudice factor extremely

important given the broadened scope of the litigation which would result from the Senators' intervention" and the Court concluded that the prejudice factor weighed against finding the motion timely, the Court assumed *arguendo* that the motion was timely filed regarding the "general reluctance to dispose of a motion to intervene as of right on untimeliness grounds." *See supra* p. 14. Notably, the "general reluctance" consideration relates to intervention as of right, *Benjamin*, 701 F.3d at 949, and is not at issue with permissive intervention. Therefore, the prejudice previously discussed weighs against permissive intervention.

Regarding whether the Senators' participation will add anything to this litigation, the relevant question is whether they will clarify issues or contribute to resolution of the matter *now* pending before the Court. *See American Farm Bureau*, 278 F.R.D. at 111. Given that "the narrow issue currently before the Court is whether the DRBC lacks jurisdiction or authority to require Plaintiff to seek prior approval from it for Plaintiff's intended plan to construct a well pad and drill a natural gas well on property which Plaintiff owns in Wayne County Pennsylvania (75 acres of which is located in the Delaware River Basin)" (Doc. 67 at 12), the Court does not find a reason to vary from the previous decision that permissive intervention was not warranted because the court doubted "whether the Senators' participation will add anything to this litigation" (*id.* at 13). Nothing in the Third Circuit's opinion remanding the case to this Court alters that determination in that the Circuit Court's directives as to the matters which this Court was to address upon remand, *see, e.g., Wayne Land*, 894 F.3d at 534, would not be benefited by the Senators' intervention for the reasons

previously discussed in this Memorandum, see *supra* pp. 16-22. Therefore, the Court will deny the Senators' Motion for Permissive Intervention.

## IV.    CONCLUSION

For the reasons discussed above, Senators Joseph B. Scarnati, Lisa Baker, and Gene Yaw's Motion to Intervene as Parties Plaintiff (Doc. 108) will be denied. An appropriate Order is filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge