## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WAYNE LAND AND MINERAL GROUP, LLC,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **3:16-CV-00897** |
| | : **(JUDGE MARIANI)** |
| **DELAWARE RIVER BASIN COMMISSION,** | : |
| | : |
| **Defendant, and** | : |
| | : |
| **DELAWARE RIVERKEEPER NETWORK :** | |
| **MAYA K. VAN ROSSUM, THE** | : |
| **DELAWARE RIVERKEEPER,** | : |
| | : |
| **Intervenors-Defendants.** | : |

## MEMORANDUM OPINION

Presently before the Court are Defendants' motions to compel discovery: Delaware

River Basin Commission's Motion to Compel Discovery Responses from Wayne Land and

Mineral Group, LLC and to Extend the Fact Discovery Deadline (Doc. 116)[1] and Delaware

Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper's Motion to

Compel Discovery from Wayne Land and Mineral Group, LLC (Doc. 126). For the reasons

discussed below, the Court will grant Defendants' motions in part and deny them in part.

---

[1] Defendant Delaware River Basin Commission acknowledges that its request for an extension of the
discovery deadline is moot based on the Court's December 4, 2018, Order in which case management
deadlines were rescinded (Doc. 124). (Doc. 129 at 2 n.1.)

## I.    INTRODUCTION AND PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group LLC ("WLMG" "Wayne" "Plaintiff") filed a Complaint against Defendant Delaware River Basin Commission ("DRBC"). (Doc. 1.) In the Complaint, Plaintiff asks the Court to enter a declaratory judgment holding that the DRBC "does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the [DRBC] for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property." (Doc. 1 at 18, Wherefore Clause ¶ 1.)  WLMG owns approximately 180 acres of land, including the natural gas and minerals present on the land, in Wayne County, Pennsylvania. (Doc. 1 ¶ 12.)  Approximately 75 acres of the land owned by WLMG is located in the Delaware River Basin. (Id.)

Intervenors-Defendants the Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper (collectively "DRN") filed a motion to intervene on July 5, 2015, (Doc. 10) which the Court granted on September 12, 2016, (Doc. 26).[2]

---

[2] DRN is a not-for-profit organization established in 1988 whose purpose is "to protect, preserve, and enhance the Delaware River, all of its tributary streams, and the habitats and communities of the Basin." (Doc. 10 at 2-3). It has over 15,000 members and works on issues, actions, regulations, legislation, policies, programs, and decisions that impact the health of the Delaware River Basin. (Id. at 3). In this matter, DRN sought to intervene "to defend the validity of the DRBC's jurisdiction and authority over activities that may affect the water resources of the Basin and to protect and preserve the interests of DRN and its members in the Basin." (Id. at 2).

On March 23, 2017, the Court granted Defendant Delaware River Basin

Commission's Motion to Dismiss the Complaint (Doc. 12) and closed the case.[3] (Doc. 93.)

Plaintiff appealed the Court's dismissal to the United States Court of Appeals for the Third

Circuit. (Doc. 94.) The Circuit Court entered Judgment on July 3, 2018, ordering that the

District Court's Order entered on March 23, 2017, be vacated and the case be remanded to

this Court for further proceedings.[4] (Doc. 97.)

Following remand, the Court reopened the case. (Doc. 98.) On August 27, 2018,

the Court issued an Order establishing the pretrial schedule. (Doc. 107.) DRBC filed the

motion under consideration here and supporting brief on November 21, 2018. (Docs. 116,

117.) After conducting a conference call with the parties, the Court issued an Order on

December 4, 2018, which directed DRN to file its intended motion to compel, allowed

Plaintiff to file a consolidated brief in opposition to the motions, and rescinded the previously

set case management deadlines. (Doc. 124.) On December 12, 2018, DRN filed its motion

to compel and supporting brief. (Docs. 126, 127.) Plaintiff timely filed its opposition brief on

January 2, 2019. (Doc. 128.) With the filing of Defendants' reply briefs (Docs. 129, 130) on

January 16, 2019, the pending motions became ripe for disposition.

---

[3] See Wayne Land and Mineral Group LLC v. Delaware River Basin Commission, 247 F. Supp. 3d 477 (M.D. Pa. 2017).

[4] See Wayne Land and Mineral Group LLC v. Delaware River Basin Commission, 894 F.3d 509 (3d Cir. 2018).

## II.   STATEMENT OF FACTS

In the declaratory judgment action filed on May 17, 2016, WLMG asked the Court

"to declare that the Delaware River Basin Commission ('Commission') lacks authority under

the Delaware River Basin Compact ('Compact') to review and approve a natural gas well

pad, a gas well and related facilities and associated activities on WLMG's property in the

Delaware River Basin ('Basin')." (Doc. 1 at 1.)

As the Court has previously explained,

the Delaware River Basin Compact (the "Compact") is an interstate compact
dated November 2, 1961, by and among the Commonwealth of Pennsylvania,
New York State, New Jersey, Delaware, and the United States. The purpose
of the Compact is the conservation, utilization, development, management and
control of the water and related resources of the Delaware River Basin. The
Compact created the Defendant DRBC, which is tasked with the adoption and
promotion of uniform and coordinated policies for water conservation, control,
use and management in the Delaware River Basin.

(Doc. 67 at 2-3 (internal citations omitted).)

Plaintiff's Complaint contains one Count for Declaratory Judgment. (Doc. 1. at 16-

17.) The Complaint includes the following averments:

22. WLMG will proceed in phases, beginning with the construction of an access
road and well pad on the Property.

23. WLMG has identified a location for the access road and well pad on the
Property, taking into account siting requirements.

24. After the access road and well pad are constructed, WLMG will drill an
exploratory well to locate productive zones of natural gas located in shale
formations on the Property. The next phase of development will include the
drilling of one or more lateral wells followed by hydraulic fracturing and,
ultimately, the production of natural gas.

4

26. The well pad and appurtenant facilities to be constructed on the Property, as well as related activities to be carried out on the Property, will be designed, constructed and carried out in accordance with all applicable statutory and regulatory requirements including those implemented by PaDEP.

27. The well pad and the appurtenant facilities to be constructed on the Property, as well as all related activities to be carried out on the Property, will be designed, built, operated and carried out for the exploration, extraction and development of natural gas and not for the conservation, utilization, control, development or management of water resources.

28. WLMG does not propose to develop, construct or operate a water withdrawal, dam, impoundment or reservoir, or to construct or operate a wastewater treatment or discharge facility in connection with the development on the Property.

29. All water used in connection with the planned Well Pad on the Property will be obtained from properly licensed and approved sources owned and operated by persons or entities other than WLMG, will be managed and delivered to the Well Pad in accordance with all applicable laws and regulations and any applicable fees will be paid.

30. All wastewater generated in connection with the Well Pad on the Property will be managed by properly licensed and/or permitted entities other than WLMG in accordance with all applicable laws and regulations.

. . . .

46. The Commission's "project" approval jurisdiction does not extend to all human undertakings that may have a substantial effect on the water resources of the Basin.

47. The Commission's project approval jurisdiction under Section 3.8 of the Compact is limited to "projects" that have a substantial effect on the water resources of the Basin

48. The Well Pad as proposed by WLMG does not constitute a "project" under Section 3.8 of the Compact.

5

49. Because WLMG's proposed Well Pad does not constitute a "project," the Commission lacks authority under Section 3.8 of the Compact to require WLMG to obtain Commission approval for the Well Pad.

50. Because WLMG's proposed Well Pad does not constitute a "project," it is irrelevant whether or not the Commission believes that the proposed Well Pad may have a substantial effect on water resources in the Basin.

51. The Commission otherwise lacks authority to require WLMG to submit for its review, and to obtain its prior approval for, the proposed Well Pad.

52. The Commission, in asserting jurisdiction over WLMG's proposed Well Pad, is misconstruing and unlawfully exceeding its authority under the Compact.

53. The Commission, in asserting jurisdiction over, and by precluding the development of WLMG's proposed Well Pad, has and will continue to deprive WLMG of constitutionally protected rights.

(Doc. 1 at 8-10, 16-17.) In the Wherefore clause, Plaintiff specifically asks that the Court

Declare that the Commission does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the Commission for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property.

(Id. at 18, Wherefore Clause ¶ 1.)

A central issue in this action is whether Section 3.8 of the Compact which provides

for DRBC's review of a "project having a substantial effect on the water resources of the

basin" properly includes Plaintiff's proposed "well pad, appurtenant facilities and related

activities" (Doc. 1 at 18, Wherefore Clause ¶ 1). In considering Defendant Delaware River

Basin Commission's Motion to Dismiss the Complaint (Doc. 12), the Court determined that

the issue presented the need to interpret terms of the contract, specifically the meaning of

6

"project" under Section 1.2(g) as informed by the meaning of "water resources" under

Section 1.2(i). (Doc. 92 at 40.) The Court granted the motion to dismiss based on the

following findings:

On the face of Plaintiff's Complaint . . . it is apparent that its proposed activities
within the Delaware River Basin constitute a "project" within the meaning of that
term as defined in Sections 1.2(g) and 1.2(i) of the Compact. Accordingly, the
Compact requires Plaintiff to submit an application to the Commission for a
determination as to whether its proposed "project" has a "substantial effect on
the water resources of the Basin" and, if so, whether the Commission shall
approve or disapprove such project based on its determination that the project
would or would not substantially impair or conflict with the Commission's
comprehensive plan. Compact at § 3.8.

(Doc. 92 at 43.) The Circuit Court disagreed, concluding that "the meaning of the word

'project' as used in the compact is ambiguous" and, therefore, the district court's decision on

the merits was premature. *Wayne Land and Mineral Group LLC v. Delaware River Basin*

*Commission*, 894 F.3d 509, 515, 527 (3d Cir. 2018). The Circuit Court directed that, upon

remand, further fact-finding would be required to discover the Compact drafters' intent and

the interpretation of ambiguous terms which prevails should be "the one that aligns best with

the drafters' intent." *Id.* at 534.

## III. STANDARD OF REVIEW

The scope and conduct of discovery are within the sound discretion of the trial

court. *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003);

*Stockton v. Wetzel*, Civ. A. No. 1:16-CV-0613, 2018 WL 3453461, at *1 (M.D. Pa. July 17,

2018). Generally, courts afford considerable latitude in discovery to ensure that litigation

7

proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman*

*v. Taylor*, 349 U.S. 495, 501 (1947). Federal Rule of Civil Procedure 26(b) defines the

scope and limits of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is
> relevant to any party's claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery outweighs its likely
> benefit. Information within this scope of discovery need not be admissible in
> evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Limitations on the frequency or extent of discovery otherwise allowed is addressed in

Rule 26(b)(2) which provides the following in relevant part:

> On motion or on its own, the court must limit the frequency or extent of
> discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
> obtained from some other source that is more convenient, less burdensome,
> or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the
> information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Pursuant to Federal Rule of Civil Procedure 37, a party seeking discovery may move

for an order compelling the discovery sought, including answers to interrogatories and

production of documents, if a party fails to respond to discovery requests. Fed. R. Civ. P.

37(a)(1), (3). For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or

response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P.

37(a)(4).

> A party seeking discovery bears the initial burden of demonstrating the
> requested discovery is relevant to its claim or defense. . . . Once that
> initial burden is met, the party resisting the discovery has the burden to
> establish the lack of relevance by demonstrating that the requested discovery
> (1) does not come within the broad scope of relevance as defined under Fed.
> R. Civ. P. 26(b) (1), or (2) is of such marginal relevance that the potential harm
> occasioned by discovery would outweigh the ordinary presumption in favor of
> broad disclosure.

*Stockton*, 2018 WL 3453461, at *2 (internal quotations and citations omitted).

## IV. DISCUSSION

DRBC requests that the Court grant the Motion and compel Plaintiff to answer

Interrogatories 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10, to produce documents requested by

Requests for Production of Documents 1, 2, 3, 4, 5, 6, 7, 8, 11, 13, 14, 15, 17, 18, 19, 20,

and 21,[5] and to provide a description of information withheld as privileged in accordance

with Federal Rule of Civil Procedure 26(b)(5)(A). (Doc. 116 at 13.) DRBC maintains that

---

[5] DRBC notes that

> WLMG misnumbered its responses to DRBC's Requests for Production by numbering
> Request 18 as Request 17 on page 14 of its Answer to the Request for Production. WLMG
> repeats this error in each subsequent response, i.e. the number stated in WLMG's response
> is one less than the number stated in DRBC's Request for Production. For purposes of this
> Motion, when referring to Requests For Production or responses thereto, the Commission
> refers to each request as numbered in its Request For Production

(Doc. 116 at 6 n.1.) WLMG properly numbered its responses in Plaintiff's Supplemental Responses to
Defendant's First Set of Requests for Production of Documents. (Doc. 128-1 at 28-29.) To the extent a
discrepancy arises, the Court will refer to requests and responses using DRBC's numbers.

9

Plaintiff "responded to the Discovery Requests with boilerplate general objections,

supplemented by additional objections to almost every Discovery Request. Virtually no

information was provided concerning WLMG's fracking plans or the identity of individuals

with knowledge of those plans."[6] (Doc. 117 at 7.) DRBC generally asserts that its discovery

requests are relevant to the claims and defenses asserted in the pleadings and allowed by

discovery rules. (Doc. 117 at 12-18.) DRBC notes that the majority of requests to which

Plaintiff objects request information about Plaintiff's planned activities and facilities. (*Id.* at

12.) In support of its assertion that Plaintiff's specific plans are relevant, DRBC provides the

following:

> WLMG asks this Court to declare that WLMG's activities and facilities do not
> constitute a "project" subject to DRBC review. Yet the Complaint contains only
> general averments about the activity WLMG intends to undertake and any
> related infrastructure it intends to construct and utilize. *See, e.g.*, Complaint, ¶
> 26 ("appurtenant facilities"); *id.* at ¶ 7 ("related facilities"); *id.* at initial paragraph
> ("related facilities and associated activities"). Indeed, the Complaint avers that
> WLMG will drill an unspecified number of wells, *id.* at ¶ 24, use an unspecified
> quantity of water, *id.* at ¶ 29, and generate an unspecified amount of
> wastewater, *id.* at ¶ 30.
>
> In addition to alleging certain facts generally, the Complaint omits other
> facts entirely. It contains no information on the reasons WLMG deliberately
> chose to utilize and manage water as part of its plans, or why WLMG

[6] Defendant DRBC noted that Plaintiff

> produced a single file containing 1,908 pages, nearly all of which are either reproductions of
> the Commission's own documents, exhibits admitted as evidence during the Court's January
> 24, 2017 plenary hearing, or parts of the addendum to WLMG's brief to the Third Circuit.
> Neither information concerning WLMG's planned utilization of water resources nor the
> identities of persons with such knowledge was disclosed.

(*Id.* at 7 n.1.)

deliberately chose certain facilities to store and transmit such water. It does not aver the quantity of water WLMG intends to inject into shale formations, whether its well boring will penetrate drinking water aquifers, the amount of water that will be consumptively used, the amount of wastewater returning up the borehole and how it will be managed, or the types and sizes of water and wastewater storage tanks or other "appurtenant facilities" to be placed on or near its well pad. All of these activities and facilities, which may impair or conflict with DRBC's Comprehensive Plan, are useful for evaluating whether WLMG's activities are for the utilization or management of water resources, i.e. a "project."

(Doc. 117 at 12-13.)

DRN seeks an order compelling Plaintiff to produce documents in response to DRN's

First Request for Production of Documents 1 through 11 and DRN's First Set of

Interrogatories to Plaintiff 2 and 3. (Doc. 126 at 4-5.) DRN states that Plaintiff denied

requests which specifically sought information concerning Plaintiff's "plans to construct and

frack a natural gas well, individuals who had knowledge of such plans, and any information

that WLMG had gathered concerning how their proposed activities and facilities could affect

the water resources and other natural resources on the Property." (Doc. 127 at 3-4.) DRN

contends it is entitled to the requested information because

there is no question that WLMG's proposed use of the land is vital to the determination of this case. The crux of WLMG's argument is that this Court should find that WLMG's proposed gas well pad and related facilities and associated activities do not constitute a "project" subject to DRBC review. There is no logical way to assess this claim without a full exploration of the nature and scope of those proposed activities. Furthermore, the Third Circuit, in remanding the case for further fact-finding, stated that information concerning WLMG's proposed activities on the land is needed to determine if hydraulic fracturing projects fall within the scope of the DRBC's regulatory powers under the Compact. See Wayne II, 894 F.3d at 528 ("we also review

11

> de novo whether WLMG's proposed activities on the face of the complaint
> fall within the scope of the Compact's text.").

(Doc. 127 at 6.)

In its consolidated opposition brief, Plaintiff responds to Defendants' requests and

the bases on which they are asserted with general averments built on the proposition that its

fracking plans are not relevant to the resolution of the case because the Third Circuit

remanded the case only for this Court to consider the intent of the drafting parties regarding

the term "project" and not for fact-finding regarding Plaintiff's plans. (Doc. 128 at 2-10.)

Plaintiff further avers that, to the extent its fracking plans are at all relevant, it has provided

supplemental discovery responses which "make it clear that it intends to operate what can

best be described as a typical unconventional gas well."[7] (*Id.* at 3.)

In its reply brief, DRBC states that, for numerous reasons, WLMG's "supplemental

production, consisting of a few documents describing a 'typical' fracking operation, is helpful

but insufficient."[8] (Doc. 129 at 8.)

Given these divergent positions, the Court will first address the proper scope of

discovery in this case generally and then apply related findings to Defendants' specific

requests.

---

[7] In the instances where Plaintiff provides more narrowly focused argument relevant to certain interrogatories and requests for production, the Court will address them later in the text when considering specific discovery requests.

[8] DRN relies upon the arguments made in DRBC's reply. (Doc. 130 at 2 (citing Doc. 129).)

12

## A. Scope of Discovery

As set out above, WLMG seeks to limit discovery to what it asserts to be the Third Circuit's directive to this Court on remand, i.e,, the Court is to determine the meaning of the term "project" by evaluating "'how other interstate compacts, the parties' course of performance, and the negotiation and legislative history of the Compact, among other evidence, bear on the question of intent." (Doc. 128 at 7 (quoting 894 F.3d at 534).) Relying on this language, Plaintiff argues that "[t]he Commission's discovery requests have nothing at all to do with these 'other interpretive tools' identified by the Third Circuit and cannot possibly assist the Court in resolving the ambiguity as to the meaning of the word "project" in the Compact." (Id.) Beyond positing that the discovery sought is relevant to the claims and defenses asserted in the pleadings, Defendants maintain that Plaintiff misreads the Third Circuit's opinion which in reality supports the propriety of the discovery sought. For the reasons discussed below, the Court concludes that Plaintiff improperly seeks to narrow the scope of discovery, disregarding issues raised and relief sought in its Complaint and ignoring important aspects of the Circuit Court's decision.

Because the scope of the litigation is the basis for determining relevance for discovery purposes, Fed. R. Civ. P. 26(b)(1), the Court will consider, as a threshold matter, the scope of the case as filed and whether the Third Circuit Court of Appeals' remand has affected that scope.

13

As set out above, Plaintiff's Complaint contains many averments about what it

intends to do and not do on its property within the Basin. *See supra* pp. 4-6. The

Wherefore Clause of Plaintiff's Complaint specifically requests that the Court

> Declare that the Commission does not have jurisdiction over, or the authority
> to review and approve, or to require WLMG to seek prior approval from the
> Commission for, or to otherwise preclude the development of, WLMG's
> proposed well pad, appurtenant facilities or the related activities to be carried
> out on the Property.

(Doc. 1 at 18, Wherefore Clause ¶ 1.) In its brief opposing the pending motions, WLMG

emphatically states that it does not intend to limit the scope of relief sought in the Complaint.

(*See* Doc. 128 at 10.)

Averments contained in the Complaint and the Wherefore Clause clearly indicate

that WLMG asks this Court to make a determination about its specific project. Yet, in

resisting the discovery requested, WLMG does not consider issues raised in the Complaint

to be relevant to the resolution of this case. WLMG does not address the dissonance

between a request for the Court to make a determination about "*WLMG's* proposed well

pad, appurtenant facilities or the related activities" (Doc. 1 at 18, Wherefore Clause ¶ 1

(emphasis added)) and its current position that fact-finding related to its specific project is

irrelevant (Doc. 128 at 4-7).

WLMG relies on the Circuit Court's opinion to narrow the scope of discovery. (*Id.*)

However, several aspects of the opinion support a scope of discovery far broader than that

14

propounded by Plaintiff and directly support the relevance of information concerning Plaintiff's proposed fracking activity.

In explaining its standard of review, the Circuit Court stated that, if it found the term "project" unambiguous, it would "review *de novo* whether Wayne's proposed activities on the face of the complaint fall within the scope of the Compact." 894 F.3d at 528. Though the Circuit Court did not reach this issue because it found the term "project" ambiguous, the statement is indicative of the relevance of WLMG-specific activities in the ultimate resolution of the case. Further, while the Circuit Court stated that it interpreted the Compact with respect to only the facts stated on the face of the complaint, 894 F.3d at 528-29, the statement, which reflects the standard applicable to a motion to dismiss, *see, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), does not limit the scope of discovery now at issue because the case has moved beyond the motion to dismiss stage of the proceedings.

At the outset of its analysis, the Circuit Court stated that "the first step is to clearly define the issue in dispute." 894 F.3d at 528.

> Wayne asked in its complaint for a declaration "that the Commission does not have jurisdiction over, or the authority to review and approve, or to require [Wayne] to seek prior approval from the Commission for, or to otherwise preclude the development of, [Wayne's] proposed well pad, appurtenant facilities or the related activities to be carried out on the [p]roperty." In other words, Wayne framed the issue as whether the Compact's definition of "project" encompasses its proposed well pad and related activities.

15

894 F.3d at 528 (quoting Plaintiff's Wherefore Clause ¶ 1, Doc. 1 at 18) (alterations in Circuit Court opinion). In conjunction with the reiteration of Plaintiff's request for relief, the Circuit Court noted that Plaintiff's "complaint defines 'Well Pads' as 'natural gas well pads, all appurtenant facilities, and related activities carried out in connection with gas wells targeting shale formations in the Basin,'" 894 F.3d at 528 n.14.

The Court finds the Circuit Court's paraphrase of the issue framed by WLMG instructive: the use of the possessive "*its*," 894 F.3d at 528 (emphasis added), shows that the Circuit Court considered Plaintiff's specific well pad to be at issue. Further, the Circuit Court's reference to the definition of "well pad" found in the Complaint and the inclusion of "related activities" in the restatement of the issue shows that WLMG's attempt to disregard averments related to the "well pad" are unavailing given WLMG's own definition of the term.

In the section of the opinion titled "The Need for Further Fact-Finding," the Court more emphatically highlighted the relevance of Plaintiff's plans when it stated that

> Wayne's interpretation [of the term "project"] fails to explain how, at the very least, its proposed water storage tanks are not subject to the Commission's project review authority given that it agrees that "there can be components of an undertaking that can be a project." (Oral Arg. Tr., Nov. 7, 2017, at 8:23-24.) Wayne is bound by the allegations in its complaint, and those allegations include that water "will be managed and delivered to the [w]ell [p]ad" site and presumably stored until used, but, oddly, that none of "the appurtenant facilities to be constructed" will be for the "control ... or management of water resources." [(Doc. 1 ¶ 29.)]

894 F.3d at 533. In conjunction with this aspect of the need for further fact-finding, the

Circuit Court noted that the issue raised on appeal was arguably narrower than the

language in the Complaint and its decision did not limit that language:

> We note . . . that in its briefing before us, Wayne characterizes the issue on
> appeal as "whether land cleared to accommodate a natural gas well, known as
> a 'well pad,' and the natural gas well drilled on the pad, separately, or
> considered together, constitute a 'project' subject to review by the Commission
> under Section 3.8 of the Compact." (Opening Br. at 14.) An argument can be
> made that that restatement of the issue is narrower than the language in the
> complaint and that Wayne is essentially trying to characterize what it seeks as
> a less-aggressive limiting of the scope of the Commission's "project" review
> authority. Nothing in our opinion should be interpreted on remand as limiting
> the broad language of the complaint—which defines the dispute before the
> Court—or the District Court's discretion to manage the process of presenting
> and deciding any narrower questions which may prove particularly important to
> bringing this case to a final resolution (and perhaps to crafting a final remedy).
> Of course, that process of clarifying the issues to be litigated may include
> appropriate alterations to Wayne's complaint, which may be amended in the
> Court's discretion. See Fed. R. Civ. P. 15(a)(2).

894 F.3d at 533 n.22.

The Circuit Court also recognized the importance of the quantity of water used in

fracking a well:

> we question the assertion that fracking clearly constitutes a project subject to
> the Commission's authority, because it is not at all clear on this record how
> the five million gallons of water used in fracking a well compares with the
> quantity of water used to perform other activities that few if any people would
> say the Commission was intended to control.

894 F.3d at 530. This question shows that the Circuit Court considered the amount of water

used in fracking a well relevant to the question of intent now before this Court. In

questioning the water usage of a well compared to what "the Commission was intended to

control," the Circuit Court also recognized that, because fracking did not exist when the Compact was formed, the question of the drafter's intent will entail comparative analysis, in part extrapolating whether the drafters would have considered all or some fracking related activities a "project" from considerations expressed relevant to the drafting and adoption of the Compact. It follows that if proposed fracking related activities on a property include multiple wells, the multiplier effect relative to water usage cannot be ignored when comparing the activity to other activities the drafters intended the Commission to control. Thus, the Circuit Court inherently acknowledged that the number of wells proposed for a specific property could have a bearing on whether the activity constitutes a project for purposes of § 3.8.

Importantly, in response to DRBC's argument that the total amount of water used in fracking needed to be considered, the Circuit Court recognized that the amount of water used in fracking on a broad scale is an important issue. DRBC asserted that "even if one well only uses a relatively minor amount of water, the collective quantity of water used by all the fracking wells that could be drilled in the Basin is so large that it cannot be allowed to escape the Commission's reach." *Wayne Land*, 894 F.3d at 530. Although the Court did not find that the argument resolved the ambiguity question, the Court stated it was a "serious argument[]" which deserved "careful attention." *Id.*

The foregoing review of the Circuit Court's opinion shows that Plaintiff is mistaken that the Circuit Court remanded the case *only* to determine the intent of the contracting

18

parties with respect to the term "project" using specifically identified tools and without reference to Plaintiff's plans for its property within the Basin (see Doc. 128 at 5). The Circuit Court clearly rejected WLMG's attempt to frame the issues raised in narrow generic terms because the Court did not confine the issue as suggested by WLMG at oral argument where WLMG stated "we think when you look at that record, which we presented to you, the only question we need to answer is are well pads and wells, without more, . . . projects." (Oral Arg. Tr. Nov. 20, 2017, at 67:15-18.)[9]  The excerpts from the Circuit Court's opinion reviewed above indicate that no determination can be made whether a well pad is a project without inquiring into in the operations that are essential to the enterprise of which it is a part. To conclude otherwise would ignore the fundamental reality of the fracking process undertaken at a well pad--to find that information about the utilization of water is not relevant to the question of whether a well pad is a project ignores the fact that there can be no fracking without water use.[10]

Further, questions posed and matters discussed at Oral Argument are consistent with the Court's interpretation of fact-finding references found in the Circuit Court's opinion. At the beginning of Oral Argument, the Circuit Court recognized that the usage of water, as

_____

[9] WLMG added "[a]nd, then, if and when we have to come back about a storage tank or an impoundment or a pipe line -- if and when they make that assertion, we'll address it then." (Oral Arg. Tr. Nov. 20, 2017, at 67:19-22.)

[10] In discussing the use of water in fracking a well, the Circuit Court noted that "[a] fracking well, theoretically, could have some liquid other than water. It's the resource that's at hand to use, and it's been used effectively." (Oral Arg. Tr., Nov. 7, 2017, at 20:16-19.) Neither the Circuit Court nor a party to this litigation has suggested that any other liquid has been used in fracking to date.

19

it related to Plaintiff's plans, was integral to the resolution of this case. Early on the first day

of Oral Argument, the Court initiated the following discussion:

> THE COURT: . . . Even if we were to agree with you that the construction of the well pad and the fracking is for something other than the utilization, et cetera, of water resources, how do you deal with the fact that, under Pennsylvania law, you're required to -- you're not required. But you've said you're not going to discharge water. That's in your pleading, correct?
>
> MR. OVERSTREET: Correct, we're not going to operate a water treatment in this direct facility. That's correct.
>
> THE COURT: Okay. And then if you're not going to do that, though, under Pennsylvania law, you have to have storage tanks on site.
>
> MR. OVERSTREET: Correct.
>
> THE COURT: I don't recall you pleading that. Did you?
>
> MR. OVERSTREET: We pled that we would develop a well pad and all the ancillary facilities. So certainly, there may be some storage tanks on the property, correct.
>
> THE COURT: All right, all right. Well, how do you say that a storage tank is not for the utilization of water?
>
> MR. OVERSTREET: Well, --
>
> THE COURT: Seems sort of absurd to say that.
>
> MR. OVERSTREET: . . . [W]e don't argue that.
>
> . . . .
>
> THE COURT: . . . Then maybe -- then maybe that's the answer to this case, that part of your -- part of your enterprise is a project under the compact, namely the storage -- the water storage tanks. And the other part is not a project under the compact.

MR. OVERSTREET: No, no, absolutely not.

. . . .

THE COURT: Does that mean it's an all or nothing proposition? It either is a
project in its entirety, or it's not a project at all.

MR. OVERSTREET: Well, that's correct.

(Oral Arg. Tr., Nov. 7, 2017, at 5:21-6:24, 7:5-12, 7:25-8:3.)

Following further discussion, Plaintiff's counsel stated "there can be components of

an undertaking that can be a project." (Oral Arg. Tr., Nov. 7, 2017, at 8:23-24.) The

statement prompted the following exchange:

THE COURT: Right, so that gets me back to what I was challenging you on
before. So maybe this commission has no jurisdiction over the well pad and the
drilling, but they do have jurisdiction over the storage tanks.

MR. OVERSTREET: No, absolutely not, not as projects. Because the project
is the global undertaking.

(Oral Arg. Tr., Nov. 7, 2017, at 9:10-17.)

The finding in the Circuit Court's opinion that WLMG agreed at Oral Argument that

components of an undertaking can be a project, 894 F.3d at 533 (citing Oral Arg. Tr., Nov.

7, 2017, at 8:23-24), indicates that the Court rejected WLMG's insistence at Oral Argument

that dividing an undertaking into parts was unacceptable (Oral Arg. Tr., Nov. 7, 2017, at

7:25-8:3). The discussion also shows that the Circuit Court recognized that components of

a fracking operation involving water could be a "project" under the Compact.

21

Additional indications that the Circuit Court considered Plaintiff's plans for water

usage proper subjects of inquiry include the following dialogue:

> THE COURT: Where is the water to be
> sourced from, and where would it be disposed of or discharged?
>
> MR. OVERSTREET: Right, it would be –
>
> THE COURT: If at all.
>
> MR. OVERSTREET: The water is likely to be sourced from a licensed and
> approved water resources project within the basin, which they would then go
> to and acquire the water from an unapproved[11] project. And it would be
> disposed of and managed through approved, permitted projects disposal
> facilities outside of this well pad.
>
> THE COURT: All of which would be regulated by the commission?
>
> MR. OVERSTREET: All of which the commission has asserted jurisdiction over
> to the extent they're operating in the basin.

(Oral Arg. Tr., Nov. 7, 2017, at 13:18-14:9.)

Picking up on WLMG's assertion that it was taking an "all or nothing position"

concerning DRBC's authority regarding a "project," at the second Oral Argument, the Court

asked "[w]hy isn't it the case that the storage facility on – storage water – storage tank could

be a project and, yet, your well pad wouldn't be?" (Oral Arg. Tr., Nov. 20, 2017, at 9:11-17.)

WLMG responded that "the question actually before the Court . . . is simply whether . . .

well pads and gas wells, no details, categorically are projects." (Oral Arg. Tr., Nov. 20,

2017, at 8:11-13.) WLMG further attempted to explain its position, stating that "this Court

---

[11] The Court assumes "unapproved" is a typographical error and the intended word was "approved."

22

doesn't need to get into that fine parsing. We don't need advisory opinions as to whether

storage tanks are projects because the only thing the Commission has asserted here, the

only question we need relief on is whether well pads and wells, that's it, are categorically

projects." (Oral Arg. Tr., Nov. 20, 2017, at 10:2-7.) The Court then sought to clarify

Plaintiff's position:

> THE COURT: All right. So, if we say that the well pad is not a project and you build the well pad and, then, you build a storage tank as required by PA Code 78a.57(a) and the purpose of that tank is to collect the brine and other fluids produced during the operation of the well, the Commission has a right to regulate that tank at that time; does it not?
>
> MR. OVERSTREET: I would say we don't have to answer that question because if and when the Commission makes that assertion, we'll address it. And this Court can get into it –
>
> THE COURT: How can you -- how can you ask us to split that that way? I mean, it -- you say, only think about well pad, only, only think about well pad. But in the -- but in the real world, there's no such thing, is there, as a well pad without some facility to handle the waste water associated with the fracking. How can it be the case that in looking at this question, we could ignore what it sounds like is conceded must be a piece of any well pad project? There's got to be some way to deal with the waste water.
>
> MR. OVERSTREET: Because that question is not before the Court. It –
>
> THE COURT: We -- we're not communicating.
>
> MR. OVERSTREET: Yeah.
>
> THE COURT: How can it not be before us if it's impossible for you to actually, or anybody to actually, have a functioning well pad? Are you saying that we should -- talk about advisory opinion, are you looking for an opinion that says, you can build something that's of no use to anybody. Go ahead. But if you actually want it to do something meaningful, that is, have a functioning well, then you would be regulable.

23

MR. OVERSTREET: I think we have to deal with what the Commission has actually asserted and what we need relief from.

(Oral Arg. Tr., Nov. 20, 2017, at 10:9--11:24.)

In an attempt to dissuade the Court from considering details of its plan, WLMG

stated "[w]e could spend a decade parsing hypotheticals." (Oral Arg. Tr., Nov. 20, 2017, at

13:14-15.) The Court then questioned whether water-related concerns raised were

hypothetical:

THE COURT 2:[12] I -- here's what I -- I don't understand about your claim it's a hypothetical and -- and correct me if I'm misunderstanding this. It's my understanding that under Pennsylvania law, you have to do something with the water after the fracking occurs, correct?

MR. OVERSTREET: That's absolutely correct, Your Honor.

THE COURT 2: And -- and that something that's something that has to be done with the water is you either have to get a discharge permit or put up storage tanks. Your complaint, as I read it, specifically disclaimed any intent to discharge the water. So, by process of elimination, you are now required to put up storage tanks. Is that not correct?

MR. OVERSTREET: Well, maybe.

(Oral Arg. Tr. Nov. 20, 2017, at 14:1-18.) Later in the discussion, WLMG stated that

Judge Hardiman is exactly right. We will need to store water. We will need to manage it somehow. It may be tanks. It may be a pipeline. It may be an impoundment. But those are possibilities that are just not before this Court. And -- and we don't need to get into that to get the relief that we need. I -- granted, we sought broader relief in the complaint than we may get. And I -- I understand that. People do that all the time.

---

[12] Judge Hardiman, who participated remotely, is "Court 2." (Oral Arg. Tr., Nov. 20, 2017, at 7:24-8:1, 13:22-24.)

(Oral Arg. Tr., Nov. 20, 2017, at 19:9-18.)

This statement shows that WLMG agrees that the Complaint, the document which forms the basis for determining the scope of discovery, alleges a set of activities that it intends to perform on the site. Considered in context, the statement reinforces the Court's conclusion that Plaintiff does not attempt to explain the dissonance between issues raised and relief sought in the Complaint and its current posture regarding discovery. *See supra* p. 14.

The Oral Argument discussions, like the Circuit Court's subsequent opinion, indicate that the Circuit Court was not persuaded by WLMG's attempts to narrowly define the issues; rather, the Court consistently recognized the importance of knowing details about many aspects of a proposed fracking operation. Clearly the Circuit Court considered water consumption, waste water management, and waste water discharge integral to the proposed activity on WLMG's property. (*See, e.g.*, Oral Arg. Tr., Nov. 7, 2017, at 13:18-20, Oral Arg. Tr., Nov. 20, 2017, at 10:9--11:24.) The Court also unequivocally found that, in identifying its proposed activities, WLMG's Complaint raised water usage issues. (*See, e.g.*, Oral Arg. Tr., Nov. 7, 2017, at 13:18-14:15). Further, Judge Hardiman's assessment that "an argument can be constructed that a storage tank [which] is constructed appurtenant to a fracking well is for the storage and utilization of water" (Oral Arg. Tr., Nov. 20, 2017, at 19:9-18), presents a clear example of the relevance of Plaintiff's specific plans to its prayer for relief.

In sum, the Circuit Court's remand included, but was not limited to, the directive that the issue of intent was to be addressed by this Court employing identified tools and other evidence. 894 F.3d at 534. In no way did the Circuit Court circumscribe this Court's discretion to clarify the issues to be litigated and manage discovery considered in the scope presented by the Complaint. See, e.g., 894 F.3d at 533 n.22. The foregoing review of the Circuit Court's opinion and concerns expressed at Oral Argument demonstrates that Plaintiff's attempt to limit discovery to the specific tools identified by the Circuit Court related to the drafter's intent is unavailing.

Beyond its unfounded insistence that the Circuit Court opinion renders its fracking plans irrelevant, Plaintiff's attempt to limit discovery fails because it equates with an assertion that Plaintiff is exempt from discovery. Aside from Circuit Court considerations, such a proposition fails for at least three reasons.

First, the Federal Rules of Civil Procedure generally provide for a broad scope of discovery, including the directive that information within the scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). WLMG appears to misapprehend the standard for the scope of discovery in that Plaintiff lodged general objections to DRBN's and DRN's requests, stating that

WLMG objects to responding to any discovery request that seeks information which is not relevant to the subject matter of the pending action, which will not be admissible or as to which testimony will not be admissible at trial, and or which is not reasonably calculated to lead to the discovery of relevant admissible evidence.

26

(*See, e.g.*, Doc. 116-3 at 35, Doc. 126 at 37.) Contrary to the applicable Federal Rule of Civil Procedure, Plaintiff's articulation of the standard limits relevance to information that will be admissible. *See* Fed. R. Civ. P. 26(b)(1).

Second, Plaintiff's pleading contains specific averments about what it intends to do and not do on the property about which it seeks a declaration as to its own proposed development. (Doc. 1 at 9-10, 16-18.) Because the case has proceeded beyond the motion to dismiss stage, averments contained in the Complaint no longer need to be taken as true. Therefore, independent of anything stated in the Third Circuit opinion, Defendants are entitled to request discovery which seeks to clarify and verify averments contained in the Complaint. As explained by DRBC, WLMG's attempt to narrowly focus discovery is inappropriate given the relief sought in the Complaint and WLMG's concession at oral argument that all or portions of an overall plan can be separately evaluated to determine whether they are projects:

> At oral argument before the Third Circuit, WLMG conceded that portions of its overall plans can be separately evaluated to determine whether they are projects. Hr'g Tr. 8:23-24 (Nov. 7, 2017).

> Discovery may show that facilities and activities planned by WLMG are independently or collectively one or more projects. For example, it is important to examine whether WLMG plans to install tanks designed to hold water or wastewater, conduct activities to manage wastewater, design and operate pipes, pumps and well casings to transport millions of gallons of water into the shale formation and to recover wastewater from those formations, or design a well pad to hold water or wastewater tanks and chemicals and to capture spills of wastewater and chemicals. Depending on WLMG's plans and designs, any or all of these activities and facilities could be a project. In addition, WLMG's planned uses of land related to water and natural resources may comprise a

27

"project" and are proper subjects of discovery. See Compact, Section 1.2(i) (definition of "water resources").

Likewise, it is important to learn whether WLMG plans to penetrate underground aquifers, locate facilities or activities in floodplains or wetlands, or make any groundwater withdrawals or discharges. DRBC has existing regulations that require these activities to be reviewed under certain circumstances.[13]

(Doc. 129 at 5-6.)

Third, the Court concludes that no determination can be made whether the well pad

intended to be built on the property is a project without inquiring into the operations that are

integral to it, and no determination can be made whether the DRBC can review and

approve, "or otherwise preclude the development of, WLMG's proposed well pad,

appurtenant facilities or the related activities to be carried out on the Property" (Doc. 1 at 18,

Wherefore Clause ¶ 1) unless the Court knows with specificity what WLMG plans to do.

## B. Construction and Operation of Typical Well

WLMG maintains that, to the extent its plans are at all relevant, its supplemental

discovery responses make it clear that Plaintiff "intends to construct and operate what can

best be described as a typical unconventional gas well." (Doc. 128 at 3.) Plaintiff adds that

it cannot produce detailed fracking plans because they do not yet exist. (Id.)

---

[13] Defendant DRBC identifies the following review authority: DRBC Rules of Practice and Procedure, 18 C.F.R. §§ 401.35(b)(2), (6), (13), and (16); Delaware River Basin Water Code, § 2.20.6. (Doc. 129 at 6 n.5.)

28

DRBC responds that WLMG's supplemental production (see Doc. 128-1) describing

a "typical" fracking operation is "helpful but insufficient":

> These documents reveal that numerous aspects of natural gas exploration and
> production involve the deliberate, planned utilization of water resources.
> Examples include water withdrawal, penetration of underground aquifers,
> storage of water, injection of water and chemicals under pressure through pipes
> designed for that purpose, consumptive use of water, recovery, management
> and eventual disposal of wastewater, and related uses of land. Natural gas
> wells are often fracked multiple times. To avoid later disputes, WLMG should
> expressly state which of these activities and facilities are part of its plans and
> what, if any, additional activities and facilities it intends to employ. Otherwise,
> WLMG could spring surprises at trial simply by denying that its plans include a
> particular activity or facility, or denying that the activity or facility is "typical."
>
> In addition, WLMG's supplemental production of documents regarding
> a "typical" fracking operation do not reveal site-specific ways in which its
> activities and facilities may utilize or manage water resources.

(Doc. 129 at 7-8.) Defendant notes that WLMG's plans "could constitute a project for a

variety of other reasons, including, among others, utilization of site-specific water

resources." (Id. at 8 n.7.)  Defendant concludes that these considerations warrant

production of site-specific information because "information on whether and how WLMG

intends to utilize site-specific water resources such as wetlands, flood plains, local aquifers

and other water resources [are] not discernable from a third-party energy company's

description of its "typical" operation. (Id. at 8-9.) The Court agrees.

Plaintiff's assertions that it "intends" or "expects" that its fracking activities will be

"typical" (Doc. 128 at 3; Doc. 128-1 at 6), without more, is not a sufficient response when

resisting the discovery sought by Defendants given the broad declaratory relief requested in

the Complaint and the many considerations addressed in the preceding section of this Memorandum Opinion. Plaintiff's reliance on generic plans and operation would not allow the Court to ascertain Plaintiff's entitlement to the relief sought.

In its Supplemental Answers to Interrogatories, WLMG points to a video produced by Range Resources, a natural gas company, for information about a typical Marcellus Shale well pad and states "[a]t this time, WLMG has no reason to believe that its well will be drilled and completed in an atypical manner."[14] (Doc. 128-1 at 6.) The explanatory video states that there are "several wells from a single site typically three to five acres in size." (You Tube video at 1:05-1:12.) By way of example of what a "typical" well pad could mean applied to Plaintiff's property, the Court would have to consider the total number of wells which could be drilled on Plaintiff's 75 acres within the Basin (see Doc. 1 ¶ 12). Seen from another perspective, to answer the Circuit Court's question of "how an activity using five million gallons of water compares with the quantity of water used to perform other activities that few if any people would say the Commission was intended to control," 894 F.3d at 530, this Court would have to consider the multiplier effect of numerous wells on the property.

Similarly, WLMG's supplemental response provides information about what it does not propose to do and what other sources involved in the fracking process related to its property will do or not do in broad terms. (Doc. 128-1 at 6-7.) If WLMG does not have the

---

[14] See https://www.youtube.com/watch?v=C0oAmnyVcl8&feature=youtube.

requested information and cannot definitively say what its fracking activity will entail with sufficient specificity to provide a basis for assessment of relevant issues, WLMG opens the door to the Court needing to make broad assumptions to resolve this case, relying on industry standards and practices with an expansive view of what constitutes a fracking operation. In other words, the Court cannot declare that the Commission "does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the Commission for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property" (Doc. 1 at 18, Wherefore Clause ¶ 1) unless the Court knows what activities *will be* carried out on the property and *how* they will be carried out or assumes that any and/or all possible activities/methodologies will be involved in Plaintiff's plans for its property.

With the scope of the litigation determined to the extent necessary to decide the pending motions, the Court finds that, with the exceptions identified below, Defendants have shown the relevance of the discovery sought. Further, based on the Court's rejection of Plaintiff's general assertions that its fracking plans are not relevant to this litigation and the deficiencies discussed regarding WLMG's typicality and broad-brush averments, the Court finds that Plaintiff has not established a lack of relevance by "demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b) (1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad

disclosure." *Stockton*, 2018 WL 3453461, at \*2. The Court will now review Defendants'
specific discovery requests in the context of the foregoing findings.

## C. *DRBC's Requested Discovery*

### 1. Discovery Related to Site-Specific Plans

With Interrogatories 1 through 6 and Requests for Production of Documents ("RFPs")
1 through 8 and 21, DRBC seeks information about WLMG's plans for the property located
within the Basin. In general, the information sought with these Interrogatories and RFPs is
discoverable to the extent it falls within the scope of relevancy discussed above and Plaintiff
does not establish that information is withheld on an acceptable basis under the Federal
Rules of Civil Procedure.

Plaintiff does not claim privilege regarding Interrogatories 1 through 6 and RFPs 1
through 5, 7, 8, and 21. The Court finds that all information sought with these
Interrogatories and RFPs is relevant within the parameters discussed above. Therefore,
DRBC's motion is granted as to these Interrogatories and RFPs and Plaintiff is directed to
fully answer the Interrogatories and produce the documents requested.

RFP 6 requests the following:

Any and all documents describing the activities comprising your Fracking
Plans, including without limitation your plans to drill an exploratory well, drill
one or more lateral wells and to perform hydraulic fracturing as alleged in
paragraph 24 of the Complaint and plans to "proceed in phases" as alleged in
paragraph 22 of the Complaint.

32

(Doc. 116-3 at 27.) In addition to its general objection, Plaintiff's response to this RFP

includes the following statement: "WLMG objects to this request to the extent that it seeks

information which is protected by the attorney-client privilege or work-product doctrine."

(Doc. 128-1 at 22.)

Plaintiff does not state whether it has withheld information on a basis asserted. If

WLMG has withheld information based on either the attorney-client privilege or work-

product doctrine, it must comply with Federal Rule of Civil Procedure 26(b)(5)(A) which

provides the following:

(5) *Claiming Privilege or Protecting Trial-Preparation Materials.*

(A) *Information Withheld.* When a party withholds information otherwise
discoverable by claiming that the information is privileged or subject to
protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible
things not produced or disclosed--and do so in a manner that, without
revealing information itself privileged or protected, will enable other
parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Because the Court concludes DRBC is entitled to the production sought with this

RFP to the extent the discovery sought is nonprivileged and Plaintiff has not provided any

basis to withhold information sought, DRBC's motion is granted as to this RFP and Plaintiff

is directed to produce the documents requested. If documents are withheld on a recognized

basis, Plaintiff must comply with Federal Rule of Civil Procedure 26(b)(5)(A).

33

## 2. Specification of Relief Sought

With Interrogatory 7, DRBC seeks clarification of the relief sought. (Doc. 116-3 at

13.) Plaintiff objects to the request with a reference to attorney-client privilege and work-

product product doctrine as well as asserting its entitlement to pleading alternative forms of

relief. (Doc. 128 at 10; Doc. 128-1 at 10.) The Court concludes DRBC's motion is properly

granted as to this Interrogatory.

Interrogatory 7 specifically asks the following:

Is the relief that you are seeking in the above-captioned case limited to a
declaration that your Fracking Plans do not constitute one or more "projects"
and therefore the Commission lacks jurisdiction under Section 3.8 of the
Compact over your Fracking Plans? Unless your answer to this interrogatory is
an unqualified affirmative, a. state what additional or other relief you are
seeking, and b. state the basis on which you contend you are entitled to such
relief.

(Doc. 116-3 at 13.) In its Supplemental Answers, WLMG responded as follows:

Objection. WLMG objects to this interrogatory to the extent that it seeks
information which is protected by the attorney-client privilege or work-product
doctrine. Subject to the foregoing objections, and without waiving them, WLMG
seeks relief within the scope of its complaint in this matter. The basis on which
WLMG contends that it is entitled to such relief has been set forth in WLMG's
prior briefs submitted to the Court and Third Circuit. By way of further answer,
*see Wayne Land & Mineral Group, LLC v. Del. River Basin Commission*, 894
F.3d 509 (3d Cir. 2018).

(Doc. 128-1 at 10.)

In its brief opposing the pending motion, Plaintiff maintains that "[t]here is no basis –

in the rules of procedure or in precedent – for a suggestion that, during discovery, a party

must affirmatively abandon one or more alternative requests for relief. Until the merits of this

case are joined, WLMG is entitled to develop and explore the viability of such alternative forms of relief as may be appropriate under the circumstances." (Doc. 128 at 10.)

DRBC justifies its interrogatory with the assertion that Plaintiff's prayer for relief, on its face, requests a declaration that "is not limited to 'project' review jurisdiction under Section 3.8 and would encompass, among other things, a challenge to draft natural gas regulations." (Doc. 129 at 10.) DRBC compares this with Plaintiff's characterization of its claim at the motion to dismiss stage and before the Third Circuit:

in responding to DRBC's Motion to Dismiss in this case, WLMG characterized its claim as only challenging whether its activities are a "project," not whether they are otherwise subject to regulation under provisions of the Compact that do not use the term "project." Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss, at 35 (Doc. 22). And similarly, before the Third Circuit, WLMG sought only a ruling that its planned well pad and well are not "projects."

(Doc. 129 at 10.) Citing *Wayne Land and Mineral Grp. v. Del. Riv. Basin Comm'n*, 894 F.3d 509, 530 n.17 (3d Cir. 2018), DRBC avers that the request to the Circuit Court "not only disavowed and deferred a challenge to DRBC's regulatory authority, it inexplicably attempted to limit the activities and facilities at issue to just the natural gas well pad and well." (Doc. 129 at 10 (citing Brief for Appellant at 14 (June 19, 2017)).) DRBC also notes that, during oral argument, Judge Jordan commented that "a well pad and well with nothing more would be 'of no use to anybody.'" (Doc. 129 at 10-11 (quoting Oral Arg. Tr., Nov. 20, 2017, at 11:17-18).) Finally, DRBC states that the averments of the Complaint do not support the broad scope of relief requested in the prayer for relief in the Complaint. (Doc. 129 at 11.) DRBC then explains why Plaintiff's answer to the interrogatory was inadequate:

35

In response to DRBC's interrogatory seeking to clarify the relief sought, WLMG gave an unintelligible answer by referencing all of the conflicting statements it has made. Motion, Ex. 3 at 8-9. In its brief in response to the Motion, it does not purport to defend that answer, but rather states that it is entitled to pursue alternative forms of relief. WLMG Br. at 10. This response is beside the point. The interrogatory seeks clarification of what relief is sought, be it in the alternative or not. The scope of discovery, and the need for dispositive motions, depend on this clarification.

(Doc. 129 at 11.)

As discussed above, Plaintiff's prayer for relief is broad and Plaintiff has regularly attempted to narrow the scope of that relief without seeking to amend its Complaint. As became apparent in considering the proper scope of discovery, WLMG's framing of the issue or issues in this case has not been clear or consistent. From the averments and prayer for relief found in the Complaint, WLMG clearly challenges the Commission's Section 3.8 jurisdiction based on its assertion that its proposed well pad is not a "project" as the term is defined in the Compact. (See Doc. 1 ¶¶ 46-50, Wherefore Clause ¶ 1.) However, the Court cannot discern from the Complaint itself, Oral Argument testimony, and/or Plaintiff's current filings what forms the basis for WLMG's averment that "[t]he Commission *otherwise* lacks authority to require WLMG to submit for its review, and to obtain its prior approval for, the proposed Well Pad." (Doc. 1 ¶ 51 (emphasis added).) Similarly, with its prayer for relief, WLMG seeks an all-encompassing declaration that its plans are off-limits for the Commission without providing a foundation for the request beyond its Section 3.8 averments.

As our Circuit Court has noted, clarity is undermined by a "kitchen-sink" or "shotgun" approach to pleading. *Washington v. Warden SCI-Greene*, 606 F.App'x 49, 51 (3d Cir. 2015); *Greene v. Virgin Islands Water & Power Authority*, 557 F. App'x 189, 191 (3d Cir. 2014). The Circuit Court has also advised that a "[a] District Court enjoys substantial discretion in managing complex disputes, particularly when . . . the claims become unwieldy". *OFI Asset Management v. Cooper Tire & Rubber*, 843 F.3d 481, 491 (3d Cir. 2016) (citing *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 703 (3d Cir. 1996)).

Here Plaintiff's "otherwise" averment and broad prayer for relief equate with the discouraged "kitchen sink" or "shotgun" pleading style. Certainly, the "otherwise" aspect of Plaintiff's averment and prayer for relief present an undefined and potentially unwieldy claim. While the Court has been able to ascertain the starting point for relevance in determining the appropriate scope of discovery for purposes of the pending motions, its outer bounds are far from clear on the current record. Without the clarification sought by DRBC, the scope of discovery implicated by Plaintiff's averment that "[t]he Commission otherwise lacks authority to require WLMG to submit for its review, and to obtain its prior approval for, the proposed Well Pad" (Doc. 1 ¶ 51) and the Wherefore Clause may well impede the orderly progress of this litigation. Because DRBC is asking WLMG to clarify rather than limit the relief sought, for the reasons discussed above, DRBC's motion is properly granted as to this Interrogatory and Plaintiff is directed to fully answer it.

Further, Plaintiff's reference to privilege and work-product does not provide a basis

to limit the discovery sought for the reasons discussed regarding RFP 6 above. Should

Plaintiff withhold information on a recognized basis, Plaintiff must comply with Federal Rule

of Civil Procedure 26(b)(5)(A).

## 3. Identification of Witnesses

DRBC asserts that Interrogatories 8 and 9, and RFPs 18 and 19 "are designed to

identify witnesses with knowledge of WLMG's plans." (Doc. 117 at 20.) WLMG asserts that

DRBC has not carried its burden of showing that the requested information is relevant. For

the reasons discussed below, the Court concludes DRBC's motion is properly granted as to

these Interrogatories and RFPs.

Plaintiff argues that DRBC

attempts to justify its miscellaneous requests by suggesting it needs to look behind the ownership of WLMG in order to develop a better understanding of WLMG's "fracking plans." The problem with this suggestion is that it proceeds from the false premise that it is entitled to take additional discovery regarding WLMG's fracking plans. This premise is refuted above. In addition, even if information about WLMG's fracking plans is relevant, the Commission does not explain how having information about the ownership of WLMG and related issues will provide a better understanding of those plans. More fundamentally, however, the Commission does not even attempt to connect its discovery requests with open factual issues identified by the Third Circuit.

(Doc. 117 at 21). DRBC responds as follows:

WLMG asserts that identifying such individuals will not provide a better understanding of its plans, WLMG Br. at 9, even though WLMG may very well call them to testify at trial. Surely DRBC is entitled to explore that assertion by deposing those individuals who prepared or have direct knowledge of WLMG's plans before they are called to the witness stand. WLMG's concealment of the

38

identities of its principals also prevents DRBC from exploring whether they were executives or members of the Northern Wayne Property Owners Alliance ("NWPOA") at the time NWPOA resolved its administrative appeal of the Executive Director's 2010 determinations. DRBC interposed an affirmative defense that as a result of its Resolution and Order terminating the appeal with the consent of NWPOA, members of NWPOA agreed to raise any challenges to DRBC's jurisdiction over natural gas development projects in the context of an application, or at least a request for a jurisdictional determination. DRBC is entitled to obtain facts from WLMG supportive of this defense.

(Doc. 129 at 9.)

WLMG's attempt to undermine the relevance of individuals involved in the plans for the subject property is unavailing because the Court has rejected the arguments' foundational bases. First, it is not a "false premise" that DRBC is entitled to take additional discovery regarding WLMG's fracking plans in that the Court has specifically found otherwise in rejecting WLMG's attempts to limit discovery. Second, WLMG's assertion that the fundamental problem with the discovery requests is that DRBC does not connect them "with open factual issues identified by the Third Circuit" is unfounded because, as recognized by the Circuit, nothing in the opinion "should be interpreted on remand as limiting the broad language of the complaint—which defines the dispute before the Court— or the District Court's discretion to manage the process of presenting and deciding any narrower questions which may prove particularly important to bringing this case to a final resolution," 809 F.3d at 533 n.22.

For the reasons identified by DRBC, the requested information relates to matters relevant to WLMG's claims or DRBC's defenses. Defendants are entitled to verify, clarify,

and explore averments made in the Complaint which include plans for the fracking-related activities on the property, from the intent of the purchasers (Doc. 1 ¶ 21) to the intended phased development going forward (id. ¶¶ 22-31). DRBC's Seventh Defense directly relates to individuals involved in both WLMG and Northern Wayne Property Owners Alliance, LLC. (See Doc. 105 at 20-21.) Therefore, the identity of these individuals and related documents are relevant to matters before the Court and WLMG is directed to fully respond to the requested discovery.

### 4. Location of Property

Interrogatory 10 asks the following: "With respect to paragraph 13 of the Complaint, state the basis for your belief, if any, that the Property overlays natural gas reserves in shale formations that would be economically profitable to extract." (Doc. 116-3 at 16.) Paragraph 13 of the Complaint states that "[t]he Property is located in a part of the Basin that overlays natural gas reserves in shale formations." Because Plaintiff's averment does not relate to the economic profitability of the gas reserves, the interrogatory as posed is not relevant to the paragraph to which DRBC states it is related. Therefore, DRBC's motion is denied as to Interrogatory 10.

### 5. Withholding of Information

DRBC asserts that responses to RFPs 11, 13-15, 17, and 20 are confusing and incomplete.

> WLMG in each instance interposed objections and then stated it "will produce non-privileged documents currently in its possession that are responsive to this

40

request and that relate to the claims and defenses in this case." Because WLMG improperly organized its document production without reference to the specific requests, it is unclear whether documents are responsive to one or more of these requests. But more importantly, WLMG does not disclose whether it has withheld any non-privileged documents responsive to these requests as Fed. R. Civ. P. 34(b)(2)(C) expressly requires. DRBC requests that the Court order WLMG to so state, and to produce any non-privileged documents withheld.

(Doc. 117 at 24.) As stated originally (Doc. 116-3 at 58-61) and in its supplemental

responses to RFPs 11, 13-15, and 17, WLMG asserts that "WLMG objects to this request to

the extent that it seeks information which is protected by the attorney-client privilege or

work-product doctrine" (Doc. 128-1 at 24-28). However, in its supplemental responses,

rather than stating that it "will produce non-privileged documents" as it did originally with

regard to RFPs 11, 13-15, 17, and 20 (Doc. 116-3 at 58-62, 64 (emphasis added)), WLMG

states that "WLMG has produced all non-privileged documents currently in its possession

that are responsive to this request and that relate to the claims and defenses in this case"

(Doc. 128-1 at 25-30 (emphasis added)).

As to each of these RFPs, WLMG is directed to adhere to the Federal Rules

regarding the withholding of privileged documents and provide clarifying responses which

are to include the information required pursuant to Federal Rule of Civil Procedure

26(b)(5)(A).

## D.  DRN's Requested Discovery

As set out above, DRN seeks an order compelling Plaintiff to produce documents in

response to DRN's First Request for Production of Documents 1 through 11 and DRN's

41

First Set of Interrogatories to Plaintiff 2 and 3. (Doc. 126 at 4-5.) DRN states that Plaintiff denied requests which specifically sought information concerning Plaintiff's "plans to construct and frack a natural gas well, individuals who had knowledge of such plans, and any information that WLMG had gathered concerning how their proposed activities and facilities could affect the water resources and other natural resources on the Property." (Doc. 127 at 3-4.)

Interrogatories 2 and 3 seek discovery related to site-specific plans. For the reasons discussed above, see supra pp. 31-33, DRN is entitled to the information sought. Further, because WLMG states in response to these Interrogatories that it "objects to this discovery request to the extent that it seeks information which is protected by the attorney-client privilege or work-product doctrine" (Doc. 128-1 at 37-38), WLMG is again directed to follow the Federal Rules of Civil Procedure regarding the withholding of information on the basis of privilege or work-product.

For reasons similar to those discussed in relation to DRBC's motion, DRN's motion regarding RFPs 1-3 and 5-11 is properly granted. The motion will be denied as to RFP 4 because the Court concludes that DRN's request for "[a]ll documents that refer or relate to the existing features of the Property" (Doc. 126 at 21) is overly broad.

## V. CONCLUSION

For the reasons discussed above, Delaware River Basin Commission's Motion to Compel Discovery Responses from Wayne Land and Mineral Group, LLC and to Extend the

Fact Discovery Deadline (Doc. 116) will be **GRANTED IN PART and DENIED IN PART** and

Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper's

Motion to Compel Discovery from Wayne Land and Mineral Group, LLC (Doc. 126) will be

**GRANTED IN PART and DENIED IN PART**. Delaware River Basin Commission's Motion to

Compel Discovery Responses from Wayne Land and Mineral Group, LLC and to Extend the

Fact Discovery Deadline (Doc. 116) is **DENIED** as to Interrogatory 10, and **GRANTED** as to

Interrogatories1-9 and RFPs 1-8, 11, 13-15, and 17-21. Delaware Riverkeeper Network

and Maya K. Van Rossum, the Delaware Riverkeeper's Motion to Compel Discovery from

Wayne Land and Mineral Group, LLC (Doc. 126) is **DENIED** as to RFP 4 and **GRANTED** as

to Interrogatories 2 and 3 and RFPs 1-3 and 5-11. An appropriate Order will be filed

simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge