THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WAYNE LAND AND MINERAL GROUP, LLC** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **3:16-CV-00897** |
| | : | **(JUDGE MARIANI)** |
| **DELAWARE RIVER BASIN COMMISSION** | : | |
| | : | |
| **Defendant, and** | : | |
| | : | |
| **DELAWARE RIVERKEEPER NETWORK** | : | |
| **MAYA K. VAN ROSSUM, THE** | : | |
| **DELAWARE RIVERKEEPER** | : | |
| | : | |
| **Intervenors-Defendants** | : | |

## MEMORANDUM OPINION
### I. INTRODUCTION

Presently before the Court is Plaintiff's Motion to Compel. (Doc. 138.) With its

motion, Plaintiff seeks to compel production of documents withheld by Defendant Delaware

River Basin Commission ("DRBC" "Defendant") based on DRBC's assertion of the

deliberative process privilege. (*Id.*) Plaintiff maintains that even if the deliberative process

privilege is applicable it should not preclude disclosure here because, based on the

Privilege Log, the documents withheld are relevant to the central issue before this Court on

remand from the Court of Appeals for the Third Circuit, i.e., the intent of the parties to the

Compact. (Doc. 138 at 1.) Following the Court's in camera review of the documents

identified in the Privilege Log (Doc. 138-1 at 10-17), the Court will grant Plaintiff's motion in part and deny it in part for the reasons discussed below.

## II. PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group LLC ("WLMG" "Plaintiff") filed a Complaint against Defendant Delaware River Basin Commission (the "DRBC"). (Doc. 1.) In the Complaint, Plaintiff asks the Court to enter a declaratory judgment holding that the DRBC "does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the [DRBC] for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property." (Doc. 1 at 18.) WLMG owns approximately 180 acres of land, including the natural gas and minerals present on the land, in Wayne County, Pennsylvania. (Doc. 1 ¶ 12.) Approximately 75 acres of the land owned by WLMG is located in the Delaware River Basin. (*Id.*)

Intervenors-Defendants the Delaware Riverkeeper Network and Maya K. Van Rossum, the Delaware Riverkeeper (collectively referred to as the "DRN") filed a motion to intervene on July 5, 2015, (Doc. 10) which the Court granted on September 12, 2016, (Doc. 26).[1]

---

[1] The DRN is a not-for-profit organization established in 1988 whose purpose is "to protect, preserve, and enhance the Delaware River, all of its tributary streams, and the habitats and communities of the Basin." (*Id.* at 2-3). It has over 15,000 members and works on issues, actions, regulations, legislation, policies, programs, and decisions that impact the health of the Delaware River Basin. (*Id.* at 3). In this matter, the DRN "seeks to intervene to defend the validity of the DRBC's jurisdiction and authority over

On March 23, 2017, the Court granted Defendant Delaware River Basin Commission's Motion to Dismiss the Complaint (Doc. 12) and closed the case. (Doc. 93.) Plaintiff appealed the Court's dismissal to the United States Court of Appeals for the Third Circuit. (Doc. 94.) The Circuit Court entered Judgment on July 3, 2018, ordering that the District Court's Order entered on March 23, 2017, be vacated and the case be remanded to this Court for further proceedings. (Doc. 97.)

Following remand, the Court reopened the case (Doc. 98) and, on August 27, 2018, issued an Order establishing the pretrial schedule (Doc. 107). The schedule included the directive that "all fact discovery shall be completed by December 19, 2018." (Doc. 107 at 2 ¶ 3.) The Court's December 4, 2018, Order rescinded that deadline (Doc. 124 at 2 ¶ 5), and the Order of June 4, 2019, established that fact discovery "shall be completed by September 9, 2019" (Doc. 134 at 2 ¶ 6).

Plaintiff filed the motion under consideration here on August 19, 2019. (Doc. 138.) The motion was accompanied by a supporting brief. (Doc. 139.) Defendant filed its opposition brief (Doc. 140) on September 3, 2019, and Plaintiff filed a reply brief (Doc. 141) on September 9, 2019. In the Privilege Log attached to Defendant's brief, Defendant identified thirty-five (35) Reference Numbers which it withheld based on the assertion of the deliberative process privilege. (Doc. 138-1 at 10-37.) On October 30, 2019, the Court

---

activities that may affect the water resources of the Basin and to protect and preserve the interests of DRN and its members in the Basin." (*Id.* at 2).

directed Defendant to submit the documents to the Court for in camera review (Doc. 144),

and Defendant DRBC timely produced the required documents. By correspondence of

November 21, 2019, Defendant asserted that several Reference Numbers identified in the

Privilege Log were also protected by the attorney-client privilege and requested the Court's

consideration of this privilege as well as the deliberative process privilege. (Doc. 145.)

Plaintiff responded that the Court should consider the attorney-client privilege waived as

Defendant did not initially assert the privilege despite having had the opportunity to do so.

(Doc. 146.) The Court has now conducted in camera review of the documents in question.

## III. STATEMENT OF FACTS

As the Court has previously explained,

the Delaware River Basin Compact (the "Compact") is an interstate compact
dated November 2, 1961, by and among the Commonwealth of Pennsylvania,
New York State, New Jersey, Delaware, and the United States. The purpose
of the Compact is the conservation, utilization, development, management and
control of the water and related resources of the Delaware River Basin. The
Compact created the Defendant DRBC, which is tasked with the adoption and
promotion of uniform and coordinated policies for water conservation, control,
use and management in the Delaware River Basin.

(Doc. 67 at 2-3 (internal citations omitted).)

At issue in this action is Section 3.8 of the Compact which provides for DRBC's

review of a "project having a substantial effect on the water resources of the basin." In

considering Defendant Delaware River Basin Commission's Motion to Dismiss the

Complaint (Doc. 12), the Court determined that the issue presented the need to interpret

terms of the contract, specifically the meaning of "project" under Section 1.2(g) as informed

4

by the meaning of "water resources" under Section 1.2(i). (Doc. 92 at 40.) The Court

granted the motion to dismiss based on the following findings:

> On the face of Plaintiff's Complaint . . . it is apparent that its proposed activities within the Delaware River Basin constitute a "project" within the meaning of that term as defined in Sections 1.2(g) and 1.2(i) of the Compact. Accordingly, the Compact requires Plaintiff to submit an application to the Commission for a determination as to whether its proposed "project" has a "substantial effect on the water resources of the Basin" and, if so, whether the Commission shall approve or disapprove such project based on its determination that the project would or would not substantially impair or conflict with the Commission's comprehensive plan. Compact at § 3.8.

(Doc. 92 at 43.) The Circuit Court confirmed that the Compact was to be "construed as a

contract under the principles of contract law." *Wayne Land and Mineral Group LLC v.*

*Delaware River Basin Commission*, 894 F.3d 509, 527 (3d Cir. 2018). However, the Circuit

Court disagreed with this Court's determination that the proposed activities constituted a

"project," concluding that "the meaning of the word 'project' as used in the compact is

ambiguous" and, therefore, the district court's decision on the merits was premature. *Id.*

The Circuit Court explained that

> if the text of the Compact is ambiguous, we must then "turn to other interpretive tools to shed light on the intent of the Compact's drafters." [*Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 620 (2013)]. One of those interpretative tools is the background notion "that States do not easily cede their sovereign powers, including their control over waters within their own territories[.]" *Id.* Other guideposts include the treatment of similar issues in other interstate water compacts, the parties' course of performance under the Compact, and the negotiation and legislative history of the Compact. *Id.*; *Oklahoma v. New Mexico*, 501 U.S. 221, 235 n.5, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1991).

894 F.3d at 527. The Circuit Court further found that these interpretive tools require factual determinations to be made about the Compact drafters' intent and

> [t]he District Court must have the opportunity to evaluate in the first instance how other interstate compacts, the parties' course of performance, and the negotiation and legislative history of the Compact, among other evidence, bear on the question of intent. The interpretation that should prevail is the one that aligns best with the drafters' intent.

*Id.* at 534.

## IV. ANALYSIS

Turning now to the motion at issue, the Court has conducted in camera review of the documents Defendant withheld based on privilege. The Court has considered all documents, which are either emails or email strings (some with attachments), in the context of the deliberative process privilege and the six documents Defendant identifies as additionally protected by the attorney-client privilege. For the reasons discussed below, the Court concludes that Defendant is to produce all but Reference Number 5.

### A. Attorney-Client Privilege

As noted above, Defendant asserts that the attorney-client privilege applied to several Reference Numbers in the previously provided Privilege Log, Reference Numbers 5, 13, 15, 30, 31, and 34. (Doc. 145 at 1-2.) Plaintiff objects to the assertion of the privilege because Defendant did not initially assert attorney-client privilege with its objections to Plaintiff's discovery requests and, therefore, Defendant should be deemed to have waived

the privilege. (Doc. 146 at 1.) Plaintiff further asserts that Defendant has not satisfied its burden of proving that the privilege applies to the documents in question. (*Id.*)

In general, the attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26 which provides that relevant but privileged matters are not discoverable. *See* Fed. R. Civ. P. 26(b)(1). The party asserting attorney-client privilege has the burden of proving that the privilege applies. *Matter of Grand Jury Empanelled February 14, 1978,* 603 F.2d 469, 474 (3d Cir.1979) (citing *United States v. Lansdorf,* 591 F.2d 36, 38 (9th Cir.1978)). In *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851 (3d Cir. 1994), the Court of Appeals for the Third Circuit noted that the attorney-client privilege "is worthy of maximum legal protection" because it serves the interests of justice. *Id.* at 862 (citing *Haines v. Liggett Group Inc.,* 975 F.2d 81, 90 (3d Cir. 1992)). The following requirements must be met for the privilege to attach to a communication: "'it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Chevron Corp.,* 650 F.3d 276, 289 (3d Cir. 2011) (quoting *In re Teleglobe Communications Corp.,* 493 F.3d 345, 359 (3d Cir. 2007) (internal quotation omitted)). *Chevron* again quoted *Teleglobe* to explain with respect to the third requirement that "if persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach." 650 F.3d at 289 (quoting 495 F.3d at 361). *Teleglobe* added that "[d]isclosing a communication to a third party

7

unquestionably waives the privilege." *Id.* In the government agency context, the agency

may be considered the "client" and the agency lawyer the "attorney." *Tax Analysts v.*

*Internal Revenue Service,* 117 F.3d 607, 618 (D.C.Cir.1997).

Plaintiff asserts that Defendant has waived the attorney-client privilege by not raising

it in its response to Plaintiff's motion to compel. (Doc. 146 at 1.) Although Plaintiff is

correct that Defendant did not assert the privilege until after it was directed to produce the

documents withheld on the basis of the deliberative process privilege for in camera review,

this fact does not conclusively establish waiver in that it is within the Court's discretion to

determine if the privilege has been properly invoked, *Deitz & Watson, Inc. v. Liberty Mut.*

*Ins. Co.,* Civ. A. No. 14-4082, 2015 WL 2069280, at *4 (E.D. Pa. May 5, 2015) (listing

cases).

Here the Court concludes that the "maximum legal protection" afforded the attorney-

client privilege warrants consideration of its application to the six Reference Numbers

identified in Defendant's November 21, 2019, correspondence (Doc. 145). Having reviewed

all documents identified by Defendant, the Court finds the attorney-client privilege applicable

only to Reference Number ("Ref. No.") 5.

Reference Number 5 is an email from Chad Pindar, Supervisor of DRBC's Project

Review Section, to Pamela Bush, DRBC Commission Secretary/Assistant General Counsel,

which Pindar copied to four other DRBC staff members—DRBC's Deputy Executive

Director, General Counsel, Manager of the Water Resources Management Branch, and the

Project Review Section's Geologist and Hydrologist. Because Pindar's email responded to Bush's question about revisions she had made to a draft of the "Determination of the Executive Director Concerning Natural Gas Extraction Activities Within the Drainage Area of Special Protection Waters," the communication is properly considered the submission of comments to the Commission's Assistant General Counsel for legal review. Thus, the communication from DRBC's Project Review Section Supervisor Pindar to Assistant General Counsel Bush is protected by the attorney-client privilege.

The Court rejects Defendant's remaining claims of attorney-client privilege. Reference Number 13 is a communication between Pamela Bishop, Assistant General Counsel for the Pennsylvania Department of Environmental Protection, DRBC's General Counsel, and DRBC's Secretary/Assistant General Counsel with three others copied: two Pennsylvania Alternate DRBC Commissioners and the Pennsylvania Associate Director of the Office of Water Management, Water Planning of the Pennsylvania Department of Environmental Protection. As such, this inter-agency communication goes beyond the general application of the privilege in the government agency context, *see Tax Analysts,* 117 F.3d at 618, and Defendant has not shown that the communication at issue is between privileged persons, *Chevron,* 650 F.3d at 289, nor has Defendant shown that the communication is subject to an exception to the principle that disclosure to a third-party waives the privilege, e.g., the third-party consultant exception, *see Chevron*, 633 F.3d at 165, or the common-interest privilege, *see Teleglobe*, 493 F.3d at 361; *Federal Trade*

*Comm. V. Abbvie, Inc.*, Civ. A. No.14-5151, 2015 WL 8623076, at *3 (E.D. Pa. Dec. 14, 2015).

Reference Number 15 is an email from DRBC's Communications Director to numerous other DRBC officials, including Warren and Bush (DRBC General Counsel and Assistant General Counsel) in which the Communications Director asks if an advance copy of a news release will be provided to commissioners before issuance. The involvement of an attorney in a communication does not mean the privilege must apply—a document merely incorporating attorney comments is an insufficient basis to deem the document protected. *Abbvie*, 2015 WL 8623076, at *3 (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005); *In re Avandia Mktg., Sales Practices & Prods. Liab.*, MDL No. 07-md-01871, 2009 WL 4807253, at *3 (E.D. Pa. Oct. 2, 2009)). Whether a communication is made for the purpose of securing legal assistance can be difficult to discern, particularly where in-house counsel performs a dual role. *See Abbvie*, 2015 WL 8623076, at *3 (citations omitted). In the corporate setting, a marketing or advertising decision is generally not privileged—although it may be based on legal advice, the communication is primarily a business policy. *Id.* In such instances, the proponent of the privilege must clearly demonstrate its applicability. *Id.* Here Defendant has not attempted to make the necessary specific showing that the communication related to a news release is covered by the attorney-client privilege. Without such a showing, the Court cannot find that the attorney-client privilege attaches to Reference Number 15.

The Court finds that Defendant has not shown that the privilege attaches to Reference Numbers 30 and 31 for reasons similar to those related to Reference Number 13: the documents are inter-agency communications, and Defendant has not shown that the communications at issue are between privileged persons, *Chevron,* 650 F.3d at 289, nor has Defendant shown that the communications are subject to an exception to the principle that disclosure to a third-party waives the privilege, e.g., the third-party consultant exception, *see Chevron*, 633 F.3d at 165, or the common-interest privilege, *see Teleglobe*, 493 F.3d at 361; *Abbvie, Inc.*, 2015 WL 8623076, at *3.

Finally, the Court finds that Reference Number 34 is not protected from disclosure by the attorney-client privilege in that the request for a hearing received from an attorney to the DRBC which the DRBC Assistant General Counsel forwarded to others does not involve any substantive DRBC attorney involvement. As stated in *SmithKline*, "attorney-client privilege does not shield documents merely because they were transferred to or routed through an attorney." 232 F.R.D. at 478 (citation omitted).

Based on the foregoing findings, only Reference Number 5 is protected from discovery by the attorney-client privilege. The Court will now turn to the question of whether the documents withheld by Defendant are protected by the deliberative process privilege.

## B. Deliberative Process Privilege

In support of the assertion of the deliberative process privilege, Defendant provided the Affidavit of Delaware River Basin Commission Executive Director Steven J. Tambini

Asserting Deliberative Process Privilege (Doc. 138-1) in which he stated that he had reviewed the withheld documents and believed them to be protected by the privilege because they are pre-decisional, deliberative materials relating to the issuance of the May 19, 2009, "Determination of the Executive Director Concerning Natural Gas Extraction Activities Within the Drainage Area of Special Protection Waters," the June 14, 2010, "Supplemental Determination of the Executive Director Concerning Natural Gas Extraction Activities Within the Drainage Area of Special Protection Waters," and the Commission's May 5, 2010, Resolution for the Minutes effecting a "moratorium." (Doc. 138-1 at 8 ¶¶ 8-9.) Plaintiff requested in camera review of the documents for the Court to determine whether the documents fall within the asserted privilege and argued that, even if the Court were to find that the privilege applied, the privilege must yield here because the Commission's deliberations are directly at issue in this litigation. (Doc. 139 at 4-5.) After conducting in camera review of the documents submitted by Defendant, the Court concludes that the privilege does not apply to a number of the documents, and, where it applies, the need for production outweighs Defendant's interest in the privacy of its internal deliberations.

The deliberative process privilege protects "the decision making processes of government agencies" and, in particular, "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N. L. R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (internal quotations omitted). As summarized in Paul F. Rothstein and Susan

W. Crump, *Federal Testimonial Privileges Relating to Witnesses & Documents in Federal-Law Case* § 5:3 (2d ed. 2006), the deliberative process privilege, also known as the "Inter- and Intra-Agency Deliberative Communication Privilege," "protects from disclosure those communications within the federal government, and between the government and its duly retained outside consultants, which consist of advice, recommendations, opinions, and other information transfers involved in the deliberative and policymaking processes of the government agency." The Court of Appeals for the Third Circuit described the privilege as one which "permits the government to withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'" *Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995) (quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)). The ultimate purpose of the privilege "is to prevent injury to the quality of agency decisions." *NLRB*, 421 U.S. at 151.

Considered in the context of the Federal Rules of Civil Procedure, *Redland* noted that, in analyzing the government's assertion of privilege,

> the district court should keep in mind the fact that Federal Rule of Civil Procedure 26 authorizes broad discovery into "any matter, not privileged, which is relevant to the subject matter involved in the pending action, [*see* Federal Rule of Civil Procedure 26(b)(1)] but the deliberative process privilege, like other executive privileges, should be narrowly construed." *See Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 868 (D.C.Cir.1980); *Cooney v. Sun Shipbuilding & Drydock Co.,* 288 F.Supp. 708, 716 (E.D.Pa.1968) (collecting cases).

55 F.3d at 856.

Because the privilege "'protects agency documents that are both predecisional and deliberative,'" *Abdelfattah v. U.S. Dept. of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)), the government must show that the document satisfies both requirements.

To satisfy the predecisional prong of the inquiry, the proponent of the privilege must show that the document is "actually antecedent to the adoption of a policy or arrival at a decision." Rothstein & Crump, *supra*, § 5.3. However, in *NLRB*, the Court noted that the agency need not have actually reached a final decision or issued a final policy to be afforded protection of a document:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*NLRB*, 421 U.S. at 153 n.18.

To satisfy the deliberative prong of the inquiry, the document for which protection is sought must be "actually related to the process by which the policy was formulated or decision reached." Rothstein & Crump, *supra*, § 5.3. The privilege distinguishes between opinions, which are protected, and facts, which fall outside of the privilege: factual material is not protected as long as it is severable from the deliberative information, even if the

14

factual information is located in an otherwise privileged document. *Redland*, 55 F.3d at 854; *In re Grand Jury*, 821 F.2d at 959.

Factors to consider in determining whether a document is predecisional and part of the deliberative process include the following: 1) the identity and position of the author and recipient; 2) the contents of the document; 3) the timing of the document relative to the decision at issue; and 4) the status of the document as an opinion or recommendation. Rothstein & Crump, *supra*, § 5.3.

"The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, ad hoc basis." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) "[E]ach time it is asserted the district court must undertake a fresh balancing of the competing interests." *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992). As explained in *Redland*,

> The privilege, once determined to be applicable, is not absolute. *First Eastern Corp.* [*v. Mainwaring*, 21 F.3d 465, 468 n.5 (D.C. Cir.1994)]; [*United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)]. After the government makes a sufficient showing of entitlement to the privilege, the district court should balance the competing interests of the parties. The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest. This Court has previously stated that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ... or by making a *prima facie* showing of misconduct." *In re Grand Jury*, 821 F.2d at 959 (internal citations omitted). The United States Court of Appeals for the District of Columbia, recently determined that a district court, in balancing the

15

interests, should consider at least the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *First Eastern Corp.*, 21 F.3d at 468 n. 5.

55 F.3d at 854.

With this extensive guidance, the Court will now proceed to review the documents withheld pursuant to the deliberative process privilege.

## 1. Applicability of the Privilege

Reference Numbers 1 through 4 contain comments from various agencies on a draft of the DRBC Executive Director's Determination concerning natural gas drilling which Henry Gruber (Chief, Basin Planning Section, U.S. Army Corps of Engineers and 3rd Alternate DRBC Commissioner) had solicited and forwarded to Pamela Bush (DRBC Commission Secretary and Assistant General Counsel) from April 10, 2009, to April 22, 2009. The comments were generated by the Supervisor of the Pennsylvania Field Office of the U.S. Fish and Wildlife Service, the Director of the Water Protection Division of EPA Region III, an EPA Region II official, and the Northeast Region Chief of the Conservation and Recreation Division of the National Park Service. Similarly, Reference Numbers 6 through 13 either seek or provide comment on proposed drafts of the Executive Director's Determination generated between April 24, 2009, and May 12, 2009.[2] The authors and recipients are

---

[2] As discussed earlier in the text, Reference Number 5 is an internal DRBC communication submitting changes made to a draft of the Executive Director Determination by the Supervisor of the Project Review Section to the Commission Secretary/Assistant General Counsel for review. *See supra* pp. 8-9.

DRBC officials or officials of federal and state agency partners including those from Delaware, New Jersey, New York, and Pennsylvania. The solicitations and comments contained in these documents are predecisional because they related to the "Determination of the Executive Director Concerning Natural Gas Extraction Activities Within the Drainage Area of Special Protection Waters" which was ultimately issued on May 19, 2009. The contents of the documents are deliberative because they express the opinions and recommendations of the authors and the comments were sought to help formulate the final version of the May 19, 2009, Executive Director Determination. *See Wadhwa v. Sec'y United States Dep't of Veterans Affairs*, 707 F. App'x 61, 63 (3d Cir. 2017) (draft reports and communications generated as part of agency decisionmaking may be properly withheld pursuant to the deliberative process privilege). Therefore, the Court concludes that Reference Numbers 1-4 and 6-13 are protected by the deliberative process privilege and disclosure of the documents will hinge on the second stage analysis which the Court will conduct below.[3]

Reference Numbers 14 through 16 relate to drafts of a planned news release concerning the Executive Director's Determination sent by DRBC's Communications

---

Though the Court has determined that the document is not discoverable because it is protected by the attorney-client privilege, *id.*, the Court notes that the document would also be protected by the deliberative process privilege. Because the document is not discoverable under the attorney-client privilege, further discussion of Reference Number 5 is not warranted.

[3] The Court adopts this analytical structure because the parties address the second stage inquiry as to all withheld documents rather than addressing the documents separately. (*See* Doc. 139 at 5-7; Doc. 140 at 13-21.)

Manager to DRBC officials. The emails are dated May 18, 2009, and May 19, 2009. Three drafts are identified and comments/approval are sought, but no substantive comments are contained in the documents. As recently discussed at length in *Heffernan v. Azar*, No. CV 15-2194, 2019 WL 5215546, at *9–11 (D.D.C. Oct. 16, 2019), the application of the deliberative process privilege to draft press releases and related documents is far from straight-forward. It is a very fact-intensive inquiry with the proponent of the privilege bearing the burden of showing that the documents at issue are properly considered predecisional and deliberative. *Id.* Here Defendants have not addressed factors relevant to the determination such as the similarity of the drafts to the final release, and whether the documents can be construed to contain discussions regarding the advisability/need for a release or how to present the decision to the public. *Id.* (citations omitted). On this record, the Court concludes that Defendant has not satisfied its burden of showing that the documents related to draft press releases are covered by the deliberative process privilege. Therefore, Reference Numbers 14, 15, and 16 must be disclosed.

Reference Number 17 contains an email string with messages dated February 25, 2010, and February 26, 2010, related to the March 3, 2010, DRBC meeting materials. The only substantive aspect of the string is a request from Fred Sickels, 4th Alternate DRBC Commissioner and Assistant Director of the New Jersey Department of Environmental Protection's Office of Water Supply Permitting, to have certain items discussed at the upcoming meeting. Defendant does not identify what decision is related to Reference

Number 17 or otherwise indicate how this document is predecisional and deliberative. As with Reference Numbers 14-16, on this record, the Court concludes that Defendant has not satisfied its burden of showing that the documents referencing meeting topics for discussion are covered by the deliberative process privilege. Therefore, Reference Number 17 must be disclosed.

Reference Number 18 is an email from DRBC's Executive Director to other DRBC officials dated April 26, 2010, in which she simply makes statements about receipt of numerous emails and asks the email recipients to let her know if anyone wants to see them. While deliberations about public relations issues and press inquiries may be covered by the deliberative process privilege, *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 22 (D.D.C. 2004); *Judicial Watch, Inc. v. Reno*, Civ. Action No. 00-0723 (JR), 2001 WL 1902811, at *3 (D.D.C. Mar. 30, 2001), Reference Number 18 contains no deliberation and references no decision. Therefore, Defendant has not satisfied its burden of showing that the document is protected by the deliberative process privilege, and the document must be produced.

Reference Number 19 is a May 3, 2010, email from DRBC's Executive Director to the Director of the Division of Water Resources of Delaware's Department of Natural Resources and Environmental Control who is also 2nd Alternate DRBC Commissioner. Though not on its face related to a specific decision, the email includes references to the need for decisionmaking on the issue of exploratory test wells which was the subject of the

June 14, 2010, "Supplemental Determination of the Executive Director Concerning Natural Gas Extraction Activities Within the Drainage Area of Special Protection Waters." Therefore, Reference Number 19 is properly protected by the deliberative process privilege.

Reference Number 20 is a related email from the recipient of Reference Number 19 on the subject of test/exploratory wells which is predecisional as to the June 14, 2010, Supplemental Determination and is deliberative as to identifying next-steps, including public relations issues. *See Sierra Club*, 384 F. Supp. 2d at 22; *Judicial Watch*, 2001 WL 1902811, at *3. Therefore, the Court concludes Reference Number 20 is covered by the deliberative process privilege.

Reference Numbers 21 through 23 relate to a draft of the June 14, 2010, Supplemental Determination in that they contain the DRBC's Executive Director's solicitation and receipt of comments on the draft. As discussed with Reference Numbers 1-4 and 6-13, these documents are predecisional and deliberative. Therefore, Reference Numbers 21-23 are covered by the deliberative process privilege.

Reference Number 24 is a request from DRBC's Commission Secretary/Assistant General Counsel dated June 9, 2010, to Pennsylvania officials seeking to confirm the accuracy of factual data identified in the email in anticipation of post-Supplemental Determination issuance. Because facts, which fall outside of the privilege, *Redland*, 55 F.3d at 854; *In re Grand Jury,* 821 F.2d at 959, are the focus of this email, the Court does not find

that it is covered by the deliberative process privilege. Therefore, Reference Number 24 must be produced.

Reference Numbers 25 through 33 dated June 9, 2010, and June 10, 2010, relate to the Supplemental Determination and comments/clarifications by Pennsylvania and DRBC officials regarding the language contained in the circulated draft. For reasons similar to those discussed regarding Reference Numbers 1-4 and 6-13, see supra pp. 16-18, these documents are predecisional and deliberative, and, therefore, they are protected by the deliberative process privilege.

Reference Number 34 is a July 2, 2010, email from the Commission Secretary/Assistant General Counsel to other DRBC officials attaching a request for a hearing seeking review of the June 14, 2010, "Supplemental Determination of the Executive Director Concerning Natural Gas Extraction Activities Within the Drainage Area of Special Protection Waters." The request, directed to the attention of the Secretary of the Commission, is made by an attorney as a member, and on behalf of, an informal association of Wayne County, Pennsylvania, land owners. The Commission Secretary/Assistant General Counsel references the enclosure but does not discuss the correspondence or any related matter. Therefore, Reference Number 34 is neither predecisional nor deliberative and must be disclosed.

Reference Number 35 is an email dated July 6, 2010, from DRBC's Executive Director to other DRBC officials which discusses Wayne County landowner and industry

concerns, ways to deal with them, and potential modifications to the Supplemental

Determination. As such, though not associated with a specific decision, pursuant to *NLRB*

guidance, 421 U.S. at 153 n.18, the document is predecisional. The document is

deliberative because it expresses the opinions and recommendations of the Executive

Director regarding modification of the Supplemental Determination and public relations

strategy. Therefore, Reference Number 35 is protected by the deliberative process

privilege.

To summarize, Reference Numbers 1-13, 19-23, 25-33, and 35 are protected by the

deliberative process privilege, and Reference Numbers 14-18, 24, and 34 are not covered

by the privilege. Thus, Reference Numbers 14-18, 24, and 34 must be disclosed.

Reference Number 5 is protected from disclosure by the attorney-client privilege and is not

subject to further inquiry under the balancing prong of the deliberative process privilege.

Reference Numbers 1-4, 6-13, 19-23, 25-33, and 35 must be further considered in the

context of Plaintiff's claim of need for the documents. *Redland*, 55 F.3d at 584. The Court

will now turn to the requisite second step in determining whether the documents must be

produced.

## 2. Need for Disclosure and Balancing of Interests

Having determined that numerous documents are protected by the qualified

deliberative process privilege, the Court must now review Plaintiff's asserted need for the

documents and proceed with balancing the competing interests of the parties.

Plaintiff contends that the privilege must yield here where

the Commission's deliberations themselves – i.e., its 'course of performance'—
are directly at issue in this litigation. *See Wayne Land & Mineral Group, LLC*,
894 F.3d at 534. There is, thus, a demonstrable need for the withheld material
in the context of the facts and nature of this case, the nondisclosure of which
would unfairly impede WLMG's ability to fully prosecute its claims. *See Johnson*
[*v. Wetzel*,] 2016 U.S. Dist. LEXIS 103074, *14 [(M.D. Pa. Aug. 5, 2016)]
(concluding that needed for disputed evidence overcame arguably applicable
deliberative process privilege).

The Commission cannot claim its interpretation of the Compact should
prevail while shielding from disclosure materials that may bear directly on the
question of intent. *See Wayne Land & Mineral Group, LLC*, 894 F.3d at 534;
*Johnson*, 2016 U.S. Dist. LEXIS 103074, at *14.

The withheld documents, as the Commission has by its admission of
relevance acknowledges, fall into one the categories of evidence specifically
identified by the Court of Appeals. The most likely category here – the
contracting parties' postcontracting course of performance. This category of
evidence, as the Court of Appeals recognized, "bear[s] on the question of
intent." *Wayne Land & Mineral Group, LLC*, 894 F.3d 534.

Specifically, the withheld documents are likely to bear on the question
of the intent of the contracting parties. They are the type of documents that are
likely to evidence, or point the way to other documents or testimony that will
evidence, course of performance or an intentional departure therefrom. Among
other things, the documents may help to establish that, when confronted by
natural gas development and under pressure from anti-fossil fuel groups, the
Commission decided to dramatically reinterpret the Compact in an effort to
expand its "project" review jurisdiction by effectively asserting, for the first time
ever, that every, planned human activity that uses water is a "project."

Documents that evidence or explain such an unprecedented extension
of the Commission's asserted "project" review jurisdiction, or the reasoning the
[sic] went into such a sweeping assertion of jurisdiction, should not be withheld
from the Court or the parties. Moreover, if the Commission wants to attempt to
justify its assertion of "project" review jurisdiction over gas wells and pads as

23

consistent with its course of performance since 1961, then all related evidence – including evidence that the Commission knew it was departing from precedent – should be considered. As such, the deliberative process privilege should not apply and the Commission should be compelled to produce the withheld documents to WLMG.

(Doc. 139 at 5-6.)

The Court concludes that Plaintiff has made a sufficient showing of need for the

Court to engage in the balancing of interests required under *Redland*, 55 F.3d at 854. *See*

*also In re Grand Jury,* 821 F.2d at 959. In so doing, the Court will consider Defendant's

arguments against disclosure which, in some instances, correspond to the factors identified

in *Redland* (*see* Doc. 140 at 13-21), which are

[1] the relevance of the evidence sought to be protected; [2] the availability of other evidence; [3] the "seriousness" of the litigation and the issues involved; [4] the role of the government in the litigation; and [5] the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

55 F.3d at 854.

a.    *Relevance*

Defendant maintains that the privileged documents are not relevant to Plaintiff's case

because the issue before this Court is "whether WLMG's planned activities and facilities

constitute a 'project' when viewed under the prism of the intent of the Compact drafters"

(Doc. 140 at 14) and the "predecisional communications and deliberations of the

Commission have no bearing on whether WLMG's fracking activities are a project" (*id.*). [4]
The Court disagrees.

To reiterate key language in the Third Circuit's opinion, this Court is to evaluate how recognized interpretive tools shed light on the drafters' intent. *Wayne Land*, 894 F.3d at 534. The Court is to be mindful of "the background notion that States do not easily cede their sovereign powers, including their control over waters within their own territories." *Id.* at 527 (internal quotation and citation omitted). The Court is to look at "the treatment of similar issues in other interstate water compacts, the parties' course of performance under the Compact, and the negotiation and legislative history of the Compact." *Id.* (internal citation omitted).

Contrary to Defendant's narrow view of relevance, the documents at issue need not address the meaning of the term "project" to be relevant. First, insofar as communications from State personnel may be indicative of their understanding of the ceding of control over waters and related activities within their own territories under the Compact, such documents may be relevant. *Tarrant Regional Water Dist. v. Hermann*, 599 U.S. 614, 631 (2013); *Wayne Land*, 569 F. 3d at 527. In other words, how the parties historically interpret the scope of the Commission's authority sheds light on the parties' views, as state actors, of what was ceded to the Commission upon entering into the Compact. While the analysis of

---

[4] At this second stage of the inquiry, the parties do not independently address the documents withheld but rather provide the same rationale as to all documents. (Doc. 139 at 5-7; Doc. 140 at 13-21; Doc. 141 at 4-6.) Therefore, the Court will collectively balance the interests of the parties as to all documents withheld.

principles relating to the ceding of sovereignty is multi-faceted, see *Tarrant*, 599 U.S. at

631-33, that analysis is for another day. At this juncture, the Court looks broadly at what is

relevant to resolving the issues presented with this litigation. Fed. R. Civ. P. 26(b). Under

this standard, the parties' ongoing understanding of the powers retained and the powers

ceded is certainly within the scope of the inquiry directed by the Circuit Court, 894 F.3d at

527, 534. Therefore, documents related to DRBC's planned exertion of authority over

activities in the Delaware River Basin, i.e., documents withheld based on the deliberative

process privilege, are relevant to issues presented with this litigation.

Second, the importance of "the parties' course of performance under the Compact" is

not limited to what the DRBC has historically officially determined to be a project. In

*Alabama v. North Carolina*, 560 U.S. 330 (2010), the Court stated that the parties' course of

performance under the interstate compact at issue was "highly significant." *Id.* at 346 (citing

*New Jersey v. New York*, 523 U.S. 767, 830–831 (1998) (Scalia, J., dissenting);

Restatement (Second) of Contracts §§ 202(4), 203 (1979)). In *New Jersey v. New York*,

Justice Scalia provided valuable guidance on what "course of performance" means in the

context of a compact:

> It is hornbook contracts law that the practical construction of an ambiguous
> agreement revealed by later conduct of the parties is good indication of its
> meaning. See, e.g., 17A Am.Jur.2d, Contracts § 357 (1991); Restatement
> (Second) of Contracts §§ 202(4), 203 (1979); Uniform Commercial Code § 2–
> 208(1), 1 U.L.A. 407 (1989). We have applied that principle before to treaty
> cases (the Compact here is of course a treaty). See, e.g., *Air France v.
> Saks*, 470 U.S. 392, 396 . . . (1985) ("'[T]o ascertain [the] meaning [of treaties]
> we may look beyond the written words to ... the practical construction adopted

by the parties'") (quoting *Choctaw Nation v. United States,* 318 U.S. 423, 431–432 . . . (1943)). We have also applied similar reasoning to the precise area of interstate boundary disputes. See *Vermont v. New Hampshire,* 289 U.S. 593, 619 . . . (1933) ("[T]he practical construction of the boundary by the acts of the two states and of their inhabitants tends to support our interpretation of the Order-in-Council of 1764").

*New Jersey v. New York*, 523 U.S. at 830–31. The Restatement (Second) of Contracts § 202 states that "[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." Restatement (Second) of Contracts § 202(4).

This guidance indicates that the course of performance by the parties to the Compact at issue here includes the "later conduct" of the parties and situations where a party had an opportunity to object to actions taken or proposed by the Commission but did not. It follows that activities beyond the Commission's official decisions are relevant--what happened behind the scenes can shed light on what the parties believe to be within the purview of the Compact. *See Tarrant*, 569 U.S. at 636-37. The broad construction of the "course of performance" concept in the interstate compact context is particularly significant in a situation where, as here, the interpretive task seeks to discern how the drafters would have considered activities that did not exist and could not have been anticipated at the time the compact was drafted and ratified. Thus, the importance of the parties' course of performance renders the documents withheld relevant.

Third, the reference in certain documents to the Susquehanna River Basin Commission ("SRBC"), see, e.g., Ref. Nos. 1, 8, is relevant to the inquiry of "the treatment of similar issues in other interstate water compacts," 894 F.3d at 527, in that the 1972 Susquehanna River Basin Compact is an interstate compact involving Pennsylvania, Maryland, and New York. In these documents, state actors refer to steps taken by the SRBC related to project review of natural gas development in the SRBC watershed. As stated in *Tarrant*, "[l]ooking to the customary practices employed in other interstate compacts also helps us to ascertain the intent of the parties to this Compact." 569 U.S. at 633 (citing *Alabama v. North Carolina*, 560 U.S. 330 (2010); Restatement (Second) of Contracts § 203(b) (explaining that "usage of trade" may be relevant in interpreting a contract)). Thus, the practices of the SRBC in interpreting its authority under the Compact related to natural gas development is relevant to issues before this Court.

Finally, Defendant's narrow view of relevance is not consistent with the Third Circuit's opinion which did not view the drafters' intent in static terms. The Circuit Court directed this Court to use all tools identified to discern the drafters' intent which includes a retrospective consideration of the interactions among the parties to the Compact in the intervening years. Because the documents at issue demonstrate the parties' interactions on the issue of control over activities related to water within the basin, they are relevant to this case.

### b. *Availability of Other Evidence*

Defendant asserts that "course of performance is shown by the actions it has taken, not the predecisional exchange of ideas among its Commissioners and staff" (Doc. 140 at 16) and it has produced voluminous evidence that shows DRBC's course of performance (*id.*). The Court concludes that the production of voluminous evidence does not preclude the production of additional relevant evidence in the circumstances presented here.

First, for the reasons discussed above, the Court disagrees with Defendant's assertion that "course of performance" in the current context does not require production of documents related to predecisional deliberations.

Second, on the current record, the Court cannot definitively determine whether the "voluminous" documents produced obviate the need for the documents withheld. DRBC has properly produced its project review files and other non-privileged information in response to Plaintiff's request for "documents related to the Compact parties' course of performance that bear on the intent of the Compact's drafters as it pertains to the meaning of the word 'project' as used in the Compact" (*id.*). However, just as legislative history may be informative of intent, predecisional deliberations, i.e., the negotiating history of a decision, may be indicative of the parties' interpretations of the drafters' intent. *See, e.g., Oklahoma v. New Mexico*, 501 U.S. 221, 234-37 & n.5 (1991). Notably, the relevant inquiry includes consideration of the purpose of the compact at issue, *id.* at 237, and the purpose of the Delaware River Basin Compact is referenced in many documents withheld. *See, e.g.,*

Reference Numbers 4, 8. Further, as discussed above, predecisional deliberations may also shed light on the parties' views on the Commission's course of performance under the Compact, similar interstate commissions' course of performance, and the ceding of member states' control to the Commission, information that may not be included in the documents which Defendant has produced but is relevant to this action. In sum, because the documents withheld contain information which is within the purview of that deemed relevant by the Circuit Court, this factor weighs in favor of production.

c.    *Seriousness of Litigation and Issues Involved*

Defendant does not address the "seriousness" factor of the relevant inquiry. Although Defendant pointed to the limited scope of the litigation in discussing the relevance factor (Doc. 140 at 13-14), "whether WLMG's planned activities and facilities constitute a 'project' when viewed under the prism of the intent of the Compact drafters" (*id.* at 14) is a serious question with potentially broad implications for natural gas development and water utilization within the Delaware River Basin.

d.    *Role of the Government*

Defendant argues that its participation in this litigation is not sufficient to find a substantial need for the documents withheld. (Doc. 140 at 19.) In support of the argument, Defendant states that "[w]hat is lacking in this case is any rational connection between the government's involvement in the litigation and the requested documents. Contrary to WLMG's position, the Privileged Documents have no bearing on the intent of the drafters or

any other issue relevant to the litigation." (*Id.* at 19-20.) As discussed in consideration of the relevance factor, the Court disagrees—the documents withheld may shed light on several interpretive tools identified by the Third Circuit. *See supra* pp. 24-29.

Recognizing that the government's role as party is considered under this factor, Defendant posits that its role in this litigation provides no basis on which to require disclosure. (Doc. 140 at 10.) The assertion is based on a case from the Eastern District of Pennsylvania where the court stated that "'[w]hen the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over.'" (*Id.* (quoting *E.E.O.C. v. Airborne Express*, No. CIV. A. 98-1471, 1999 WL 124380 (E.D. Pa. 1999) (citing *E.E.O.C v. Citizens Bank & Trust Co.*, 117 F.R.D. 365, 366 (D. Md. 1987)). Defendant concludes that, because it seeks no affirmative relief, its role as a party in this litigation does not provide a basis for disclosure. DRBC's history and course of performance are central to this litigation pursuant to the Third Circuit's decision and Supreme Court guidance on the issue of interstate compact interpretation. *See supra* pp. 25-28. Thus, to allow Defendant to evade discovery of relevant material would be contrary to the evaluation of intent with which this Court is tasked. *See Wayne Land*, 894 F.3d at 534.

*e.*    *Effect of Disclosure on Future Deliberations*

In support of its argument that it would be harmed by disclosure of the privileged

documents, Defendant quotes Executive Director Tambini's statement on the issue. (Doc.

140 at 21. In his Affidavit, Tambini stated the following:

> Disclosing pre-decisional, deliberative communications between the
> Commission's former Executive Director and members of Commission staff on
> the one hand and our Commissioners and their key staff and personnel on the
> other would greatly inhibit the frank intergovernmental policy deliberations and
> coordinated action that DRBC was created to encourage and thus would be
> contrary to [our policy] and to the public interest.

(Doc. 138-1 at 8-9 (Tambini Aff. ¶ 9).) DRBC's policy states that

> [t]he Commission will make the fullest possible disclosure of records to the
> public, consistent with the rights of individuals to privacy, the property rights of
> persons in trade secrets and confidential commercial or financial information,
> and the need for the Commission to promote frank internal policy deliberations
> and to pursue its regulatory activities without disruption.

18 C.F.R. § 401.101.

The Court does not find Defendant's position persuasive. Here there are no rights to

privacy implicated in the documents at issue: emails seeking and providing comment on

proposed draft determinations and other matters contained in the documents withheld,

many of which were sent to numerous individuals without overtly expressed need for

secrecy, were communicated to and from individuals in their professional capacities. The

documents do not implicate property rights in trade secrets, confidential commercial

information, or confidential financial information. Although Tambini and Defendant aver that

disclosure would inhibit frank intergovernmental policy deliberations, the contents of the

communications at issue are not indicative of "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable," *Redland*, 55 F.3d at 854. As noted above, the wide dissemination and subject matter of many documents belie general characterization of the documents as secretive. On careful in camera review, the Court finds nothing in the documents covered under the deliberative process privilege which would suggest that release of the documents would chill the frank exchange of ideas.

For the foregoing reasons, each of the five factors identified in *Redland* weighs in favor of disclosure. The difficult task of interpreting the intent of the drafters of a compact which was adopted over fifty years ago and the limited interpretive tools available to conduct the evaluation mandated by the Circuit Court, 894 F.3d at 534, indicate that the need for relevant information outweighs DRBC's interest in nondisclosure. Therefore, documents protected only by the deliberative process privilege must be disclosed.[5]

## V. CONCLUSION

For the reasons set out above, the Court has made the following determinations: 1) Reference Number 5 is protected by the attorney-client privilege and is not discoverable; 2) Reference Numbers 14-18, 24, and 34 are not covered by the deliberative process privilege and are thus discoverable; 3) Reference Numbers 1-4, 6-13, 19-23, 25-33, and 35 are

---

[5] As discussed in the context of the attorney-client privilege, Reference Number 5 is protected from disclosure based on that privilege. *See supra* pp. 8-9. Therefore, although it is also protected by the deliberative process privilege, it is not discoverable. *See supra* pp. 16-17 n.2.

covered by the deliberative process privilege, but the need for disclosure outweighs Defendant's interest in nondisclosure, and, therefore, the documents are discoverable. With this determination, Plaintiff's Motion to Compel (Doc. 138) will be granted in part and denied in part. An appropriate Order will be filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge