## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**WAYNE LAND AND MINERAL** :
**GROUP, LLC** :
 :
      **Plaintiff,** :
      **v.** :    **3:16-CV-00897**
 :    **(JUDGE MARIANI)**
**DELAWARE RIVER BASIN** :
**COMMISSION** :
 :
      **Defendant, and** :
 :
**DELAWARE RIVERKEEPER NETWORK** :
**MAYA K. VAN ROSSUM, THE** :
**DELAWARE RIVERKEEPER** :
 :
      **Intervenors-Defendants** :

### MEMORANDUM OPINION
### I. INTRODUCTION

Presently before the Court is Plaintiff's Motion to Compel. (Doc. 152.) With its

motion, Plaintiff seeks to compel production of documents withheld by Defendant Delaware

River Basin Commission ("DRBC" "Defendant") based on DRBC's assertion of the

deliberative process privilege and the attorney-client privilege. (*Id*.) Plaintiff raises several

issues regarding Defendant's assertion of privilege and seeks in camera review of the

documents withheld to determine if the documents fall within the asserted privilege. (*Id.* at

10-11.) Following the Court's in camera review of the documents identified in the Privilege

Log (Doc. 152-1 at 16-31), the Court will grant Plaintiff's motion in part and deny it in part for

the reasons discussed below.

## II. PROCEDURAL HISTORY

On May 17, 2016, Plaintiff Wayne Land & Mineral Group LLC ("WLMG" "Plaintiff")

filed a Complaint against Defendant Delaware River Basin Commission (the "DRBC").

(Doc. 1.) In the Complaint, Plaintiff asks the Court to enter a declaratory judgment holding

that DRBC "does not have jurisdiction over, or the authority to review and approve, or to

require WLMG to seek prior approval from the [DRBC] for, or to otherwise preclude the

development of, WLMG's proposed well pad, appurtenant facilities or the related activities to

be carried out on the Property." (Doc. 1 at 18.) WLMG owns approximately 180 acres of

land, including the natural gas and minerals present on the land, in Wayne County,

Pennsylvania. (Doc. 1 ¶ 12.) Approximately 75 acres of the land owned by WLMG is

located in the Delaware River Basin. (Id.)

Intervenors-Defendants the Delaware Riverkeeper Network and Maya K. Van

Rossum, the Delaware Riverkeeper (collectively referred to as the "DRN") filed a motion to

intervene on July 5, 2015, (Doc. 10) which the Court granted on September 12, 2016, (Doc.

26).[1]

---

[1] The DRN is a not-for-profit organization established in 1988 whose purpose is "to protect, preserve, and enhance the Delaware River, all of its tributary streams, and the habitats and communities of the Basin." (Id. at 2-3). It has over 15,000 members and works on issues, actions, regulations, legislation, policies, programs, and decisions that impact the health of the Delaware River Basin. (Id. at 3). In this matter, the DRN "seeks to intervene to defend the validity of DRBC's jurisdiction and authority over activities that may affect the water resources of the Basin and to protect and preserve the interests of DRN and its members in the Basin." (Id. at 2).

On March 23, 2017, the Court granted Defendant Delaware River Basin Commission's Motion to Dismiss the Complaint (Doc. 12) and closed the case. (Doc. 93.) Plaintiff appealed the Court's dismissal to the United States Court of Appeals for the Third Circuit. (Doc. 94.) The Circuit Court entered Judgment on July 3, 2018, ordering that the District Court's Order entered on March 23, 2017, be vacated and the case be remanded to this Court for further proceedings. (Doc. 97.)

Following remand, the Court reopened the case (Doc. 98) and, on August 27, 2018, issued an Order establishing the pretrial schedule (Doc. 107). The schedule included the directive that "all fact discovery shall be completed by December 19, 2018." (Doc. 107 at 2 ¶ 3.) The Court's December 4, 2018, Order rescinded that deadline (Doc. 124 at 2 ¶ 5), and the Order of June 4, 2019, established that fact discovery "shall be completed by September 9, 2019" (Doc. 134 at 2 ¶ 6).

The Court recently decided Plaintiff's Motion to Compel (Doc. 138) filed on August 19, 2019. (*See* Docs. 163, 164.) Following in camera review of the documents at issue, the Court granted Plaintiff's motion in part and denied it in part, concluding that only one document was protected from disclosure by the attorney-client privilege and the documents protected by the deliberative process privilege were to be disclosed because Plaintiff's need for the documents outweighed Defendant's interest in nondisclosure. (Doc. 163 at 33-34.)

Plaintiff filed the motion under consideration here on December 11, 2019. (Doc. 152.) The motion was accompanied by a supporting brief. (Doc. 153.) Defendant filed its

opposition brief (Doc. 157) on December 26, 2019, and Plaintiff filed a reply brief (Doc. 158) on January 9, 2020.  In the Privilege Log submitted, Defendant identified forty-five (45) Document Numbers which it withheld in whole or in part based on the assertion of the deliberative process privilege, the attorney-client privilege, or both.  (Doc. 152-1 at 16-31.) On January 17, 2020, the Court directed Defendant to submit the documents to the Court for in camera review (Doc. 160), and Defendant timely produced the required documents.

## III. STATEMENT OF FACTS

As the Court has previously explained,

the Delaware River Basin Compact (the "Compact") is an interstate compact dated November 2, 1961, by and among the Commonwealth of Pennsylvania, New York State, New Jersey, Delaware, and the United States.  The purpose of the Compact is the conservation, utilization, development, management and control of the water and related resources of the Delaware River Basin. The Compact created the Defendant DRBC, which is tasked with the adoption and promotion of uniform and coordinated policies for water conservation, control, use and management in the Delaware River Basin.

(Doc. 67 at 2-3 (internal citations omitted).)

At issue in this action is Section 3.8 of the Compact which provides for DRBC's review of a "project having a substantial effect on the water resources of the basin."  In considering Defendant Delaware River Basin Commission's Motion to Dismiss the Complaint (Doc. 12), the Court determined that the issue presented the need to interpret terms of the contract, specifically the meaning of "project" under Section 1.2(g) as informed by the meaning of "water resources" under Section 1.2(i).  (Doc. 92 at 40.)  The Court granted the motion to dismiss based on the following findings:

4

On the face of Plaintiff's Complaint . . . it is apparent that its proposed activities within the Delaware River Basin constitute a "project" within the meaning of that term as defined in Sections 1.2(g) and 1.2(i) of the Compact. Accordingly, the Compact requires Plaintiff to submit an application to the Commission for a determination as to whether its proposed "project" has a "substantial effect on the water resources of the Basin" and, if so, whether the Commission shall approve or disapprove such project based on its determination that the project would or would not substantially impair or conflict with the Commission's comprehensive plan. Compact at § 3.8.

(Doc. 92 at 43.) The Circuit Court confirmed that the Compact was to be "construed as a

contract under the principles of contract law." *Wayne Land and Mineral Group LLC v.*

*Delaware River Basin Commission*, 894 F.3d 509, 527 (3d Cir. 2018). However, the Circuit

Court disagreed with this Court's determination that the proposed activities constituted a

"project," concluding that "the meaning of the word 'project' as used in the compact is

ambiguous" and, therefore, the district court's decision on the merits was premature. *Id.*

The Circuit Court explained that

if the text of the Compact is ambiguous, we must then "turn to other interpretive tools to shed light on the intent of the Compact's drafters." [*Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 620 (2013)]. One of those interpretative tools is the background notion "that States do not easily cede their sovereign powers, including their control over waters within their own territories[.]" *Id.* Other guideposts include the treatment of similar issues in other interstate water compacts, the parties' course of performance under the Compact, and the negotiation and legislative history of the Compact. *Id.*; *Oklahoma v. New Mexico*, 501 U.S. 221, 235 n.5, 111 S.Ct. 2281, 115 L.Ed.2d 207 (1991).

894 F.3d at 527. The Circuit Court further found that these interpretive tools require factual

determinations to be made about the Compact drafters' intent and

[t]he District Court must have the opportunity to evaluate in the first instance how other interstate compacts, the parties' course of performance, and the

5

negotiation and legislative history of the Compact, among other evidence, bear on the question of intent. The interpretation that should prevail is the one that aligns best with the drafters' intent.

*Id.* at 534.

## IV. ANALYSIS

Turning now to the motion at issue, the Court has conducted in camera review of the documents Defendant withheld based on privilege. Mindful of the general principle that evidentiary privileges are to be strictly construed, *see University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990), the Court has considered all documents in the context of the deliberative process privilege and/or the attorney-client privilege.[2] Because the attorney-client privilege provides absolute protection, *see, e.g., United States v. Nobles,* 422 U.S. 225, 239 (1975), and the deliberative process privilege is qualified, *see, e.g., In re*

---

[2] Defendant divides the forty-five Document Numbers provided for in camera review into eight categories. (*See* Doc. 152-1 at 8-10.) The Court reviews the documents on an individual rather than categorical basis. To the extent Defendant relies on the withholding of certain documents based on the United States District Court for the District of New Jersey's decision to do so in *Del. Riverkeeper Network v. Del. River Basin Comm'n*, 300 F.R.D. 207 (D.N.J. 2014), (*see, e.g.*, Doc. 152-1 at 7 n.1, 8-10; Doc. 157 at 4, 6), the Court concludes that the unique inquiry required by the Circuit Court regarding the intent of the drafters of the Compact, *Wayne Land*, 894 F.3d at 527, 534, requires the Court to conduct de novo review of all documents. The issue of intent was not before the court in *Del. Riverkeeper Network* in which the "[p]laintiffs cited cases finding that the deliberative process privilege was not applicable when the intent of the decision-maker was contested." 300 F.R.D. at 212. The court distinguished an inquiry regarding DRBC's intent and the issue presented:

> There is no challenge in this case, however, to the intent of the DRBC. Plaintiffs concede as much. They instead argue for an extension of that case law, urging that the deliberative process privilege should also dissipate when the decision-making process of an agency is challenged under the arbitrary and capricious standard of the Administrative Procedures Act *without* a contemporaneous accusation as to the agency's intent.

300 F.R.D. at 212-13.

*Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997), the Court will first review the documents for which Defendant asserts the attorney-client privilege.

## A. Attorney-Client Privilege

Defendant asserts that the attorney-client privilege applies to Document Numbers 24 through 45. (Doc. 152-1 at 28-31.) Plaintiff objects to the assertion of the privilege regarding the documents at issue, which it characterizes as "historical documents from the 1960s" held in public project files before being withheld. (Doc. 153 at 7.) Defendant responds that project review files are not public and the passage of time does not erode the attorney-client privilege. (Doc. 157 at 2, 3, 13 n.7.) For the reasons that follow, the Court concludes that Defendant properly asserts the attorney-client privilege as to many but not all of the documents withheld.

In general, the attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26 which provides that relevant but privileged matters are not discoverable. *See* Fed. R. Civ. P. 26(b)(1). The party asserting attorney-client privilege has the burden of proving that the privilege applies. *Matter of Grand Jury Empanelled February 14, 1978,* 603 F.2d 469, 474 (3d Cir.1979) (citing *United States v. Lansdorf,* 591 F.2d 36, 38 (9th Cir.1978)). In *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851 (3d Cir. 1994), the Court of Appeals for the Third Circuit noted that the attorney-client privilege "is worthy of maximum legal protection" because it serves the interests of justice. *Id.* at 862 (citing *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir.

1992)).  The following requirements must be met for the privilege to attach to a communication: "'it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Chevron Corp.,* 650 F.3d 276, 289 (3d Cir. 2011) (quoting *In re Teleglobe Communications Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (internal quotation omitted)). *Chevron* again quoted *Teleglobe* to explain with respect to the third requirement that "if persons other than the client, its attorney, or their agents are present, the communication is not made in confidence, and the privilege does not attach."  650 F.3d at 289 (quoting 495 F.3d at 361).  *Teleglobe* added that "[d]isclosing a communication to a third party unquestionably waives the privilege."  *Id.*  Further, confidentiality must be maintained after the initial communication: a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

In the government agency context, the agency may be considered the "client" and the agency lawyer the "attorney." *Tax Analysts v. Internal Revenue Service,* 117 F.3d 607, 618 (D.C.Cir.1997).  In considering the attorney-client privilege in the executive branch context, the District of Columbia Circuit Court concluded that an attorney's "advice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege" based on  the principle that "'where one consults an attorney not as a lawyer but as a friend or as a business adviser or banker, or

negotiator . . . the consultation is not professional nor the statement privileged.'" *In re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (quoting 1 McCormick on Evidence § 88, at 322–24 (4th ed.1992)).

Plaintiff specifically contends that Defendant's assertion of attorney-client privilege should be rejected on several bases: 1) the documents being withheld based on the privilege were "housed in the Commission's public 'project files' but were removed by the Commission prior to WLMG's review of those files for discovery" (Doc. 153 at 7); 2) Defendant does not satisfy its burden of showing that the documents at issue are protected by the attorney-client privilege because the "cryptic descriptions" set out in the Privilege Log do not provide sufficient detail for the Court to determine "whether the document is at least potentially protected from disclosure" (*id.* at 9-10 (citing *Farkas v. French Coast Coffee, Corp.*, Civ. A. No. 1:14-CV-272, 2016 WL 4611427, at *4 (M.D. Pa. Sept. 6, 2016)); and 3) the privilege was waived with respect to Document 32 because the Memorandum was sent to multiple third parties (Doc. 153 at 10).

First, regarding Plaintiff's assertion that the documents were housed in "public 'project files'" (Doc. 153 at 7), Defendant states that its project review files are not "'public' files" (Doc. 157 at 2). Plaintiff does not address this issue in its reply brief (Doc. 158), and therefore, does not refute Defendant's position. The Court thus assumes that the project files were not public and waiver cannot be inferred from the mere fact that the withheld information was contained in project files.

Second, the question of whether the descriptions set out in the Privilege Log are sufficient to allow the Court to determine whether the document is protected is not relevant at this juncture because the Court agreed to conduct the in camera review requested by Plaintiff and, in deciding whether a document is protected from disclosure by the attorney-client privilege, the Court relies on independent in camera review of the entire document, not on Defendant's description of it.

Having reviewed the twenty-two documents withheld based on attorney-client privilege, the Court concludes that Document Numbers 24 through 28, 30, 31, 34, and 36 through 45, satisfy the necessary criteria.[3]  The Court rejects Defendant's claim of attorney-client privilege as to Document Numbers 29, 32, 33, and 35.  Because discussion of details of the Document Numbers determined to be protected under the attorney-client privilege is not appropriate, the Court will review in detail only those Document Numbers which are not privileged.

Document Number 29 is not protected because the correspondence, from DRBC General Counsel William Miller to DRBC Executive Director James Wright, is plainly marked "PERSONAL" and the body of the correspondence references an enclosure which was sent to Miller "not for official purposes, but 'as one lawyer to another.'"  The protection of the attorney-client privilege is only available when the document is "for the purpose of obtaining

---

[3] The Court notes that Document Number 28 is privileged only as to the material redacted in green in Defendant's submission to the Court for in camera review, i.e., the Sequence of Activities' January 6, 1964, entry and the first sentence of the January 15, 1964, entry.  Document Number 28 is otherwise not privileged and must be produced.

or providing legal assistance for the client." *In re Chevron Corp.,* 650 F.3d at 289 (internal quotation omitted). Document 29 does not satisfy this basic requirement and, therefore, is not protected under the attorney-client privilege. As Defendant does not identify any other basis for withholding the document, the Court concludes Document Number 29 must be disclosed.

Document Number 32 is a letter from DRBC's Executive Director James Wright dated March 29, 1965, to Rex Whitton, Federal Highway Administrator at the United States Department of Commerce, with an attached Memorandum titled "Effect of Interstate 80 on Hackettstown Reservoir" written by DRBC's General Counsel William Miller to "The Commissioners and Executive Director." Defendant claims that the Document is protected by both the attorney-client privilege and the deliberative process privilege. As to attorney-client privilege, Plaintiff maintains that the privilege was waived because the Memorandum was also attached to a letter dated June 3, 1965, which was sent to multiple third parties outside DRBC. (Doc. 153 at 10 (citing *Westinghouse Elec. Corp. v. Republic of Philippines,* 951 F.2d 1414, 1427 (3d Cir.1991) ('under traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else.").)

Defendant responds that it has not waived the attorney-client privilege for Miller's Memorandum because the governmental agencies and personnel that received the Memorandum shared a common interest with DRBC Commissioners and staff sufficient to

preserve the privilege. (Doc. 157 at 14 (citing *Animal Welfare Inst. v. Nat'l Oceanic and Atmospheric Admin.*, 370 F. Supp. 3d 116, 132-43 (D.D.C. 2019)).)

The Court of Appeals for the Third Circuit in *In re Teleglobe Communications Corp.*, 493 F.3d 345 (3d Cir. 2007), tracked the development of the "common-interest privilege," which it also referred to as the "community-of-interest" privilege, and explained that it

> protects all communications shared within a proper "community of interest," whether the context be criminal or civil. [PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES] § 4.35 (2d ed.1999) (hereinafter "RICE"); *see also* Andrew R. Taggart, *Parent-Subsidiary Communications & the Attorney-Client Privilege,* 65 U. CHI. L.REV. 315 (1998). Thus, the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others. It applies in civil and criminal litigation, and even in purely transactional contexts. RICE § 4:35; RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76.
>
> Two aspects of the modern community-of-interest privilege are noteworthy. First, to be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest. *Cf. Ramada Inns, Inc. v. Dow Jones & Co.,* 523 A.2d 968, 972 (Del.Super.Ct.1986) (emphasizing that the relevant Delaware evidentiary rule protects communications disclosed to an attorney). Sharing the communication directly with a member of the community may destroy the privilege. Second, all members of the community must share a common legal interest in the shared communication. RICE § 4:35.

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 364 (3d Cir. 2007), *as amended* (Oct. 12, 2007). Importantly, the privilege addresses waiver of the attorney-client privilege so the first step in the relevant inquiry is whether the attorney-client privilege applies to the original communication at issue. *In re Chevron Corp.*, 650 F.3d 276, 290 (3d Cir. 2011) (citing *In re Teleglobe,* 493 F.3d at 366) ("inasmuch as the communications disclosed were not

privileged, it is obvious that we need not address the community-of-interest doctrine, which protects the confidentiality of privileged communications shared by parties with common legal interests against a common adversary.")

In his Declaration, Executive Director Tambini describes Document 32 as a letter and attached memorandum regarding federal projects prepared by DRBC's General Counsel, William Miller, and sent to the Federal Highway Administrator, Rex Whitton. (Doc. 152-1 at 13.) Tambini assumes that Document 32 is protected by the attorney-client privilege, but he provides no explanation for the assumption that a communication from DRBC's Executive Director to an official at another agency would be protected by the attorney-client privilege or why the Executive Director's dissemination of a memorandum would be so privileged. In its opposition brief, DRBC states that it has not waived the attorney-client privilege regarding the memorandum based on the common-interest privilege, but it does not address the issue of whether the attorney-client privilege attached to the letter and/or the disclosed memorandum. (Doc. 157 at 14-16.)

The letter portion of Document 32 does not satisfy the requirements of the attorney-client privilege in that it is not a communication between privileged persons. *See, e.g.,* *Chevron,* 650 F.3d at 289. More specifically, in the government agency context, the agency may be considered the "client" and the agency lawyer the "attorney." *Tax Analysts,* 117 F.3d at 618. Executive Director Wright is not DRBC's attorney and the Federal Highway Administration is not the client agency. While Miller's Memorandum to Wright and the

Commissioners may have been privileged in the first instance because Miller was DRBC's General Counsel and his Memorandum was directed to DRBC officials, Wright disclosed the Memorandum to Whitton and "[d]isclosing a communication to a third party unquestionably waives the privilege." *Teleglobe*, 493 F.3d at 481.

Under *Teleglobe*, Defendant's assertion of the common-interest privilege is unavailing because Miller's Memorandum was not shared by DRBC's attorney with the Federal Highway Administration's attorney; it was shared by the Executive Director with the Federal Highway Administrator. *Teleglobe*, 493 F.3d at 364 ("the community-of-interest privilege allows attorneys representing different clients with similar legal interests to share information . . . . Sharing the communication directly with a member of the community may destroy the privilege"). Further, less than three months later, Richard Hughes, identified as "Chairman" in a letter he sent on DRBC letterhead[4] to Nicholas de B. Katzenbach, United States Attorney General, attached the Wright letter and Miller Memorandum and copied several DRBC officials as well as the following: Governors Rockefeller, Scranton and Terry; Secretary of the Interior, Stewart Udall; Secretary of Commerce, John Conner; Congressman Thompson; and Highway Commissioner Palmer (NJ). (Doc. 152-1 at 82-83.) This broad non-attorney dissemination to numerous non-attorney recipients precludes finding that that the Miller Memorandum is protected by the common interest privilege.

---

[4] Hughes is not identified in the "Key to Names" attached to Tambini's Declaration. (Doc. 152-1 at 32-36.)

*Animal Welfare*, upon which Defendant relies, arguably took a broader approach to

the common-interest privilege and explained the privilege as follows:

> When one agency shares a privileged document with another agency, the
> sharing of the document can destroy the privilege. However, when "the two
> agencies have a substantial identity of legal interest in a particular matter, the
> attorneys for each agency can be treated as representing both agencies
> jointly." *Id.* Government agencies share a substantial identity of legal interest
> when they are "engaged in a common effort and [seek] the advice of counsel
> about fulfilling their statutory mission." *Modesto Irrigation v. Gutierrez*, No.
> 1:06-00453, 2007 WL 763370, *17 (E.D. Cal. March 9, 2007).

370 F. Supp. 3d at 133. In *Animal Welfare*, the draft memorandum at issue was produced

by a government attorney for an agency client, the National Oceanic and Atmospheric

Administration ("NOAA"), the defendant in the litigation. 370 F. Supp. 3d at 131. The

district court determined that the draft memorandum was covered by the attorney-client

privilege. *Id.* NOAA later shared the draft memorandum with two other agencies, the

Marine Mammal Commission ("MMC") and Fish and Wildlife Services ("FWS"). The court

concluded that sharing the document with MMC and FWS did not waive the attorney-client

privilege because the common interest doctrine protected the third-party disclosure: the

MMC had oversight responsibilities, i.e., ensuring that all agencies, including NOAA,

adhered to the requirements of the Marine Mammal Protection Act ("MMPA"); and FWC and

NOAA had a common legal interest in that they had similar responsibilities under the

MMPA. *Id.* at 133-34. *Animal Welfare* did not discuss whether the third-party disclosure

had been made by an attorney and/or to an attorney or acknowledge such a requirement.

Therefore, in *Animal Welfare*, the District of Columbia District Court did not consider a key

element to the application of the common-interest privilege identified by the Third Circuit Court of Appeals in *Teleglobe*, 493 F.3d at 364.

As discussed above, here DRBC officials shared the Miller Memorandum with numerous agencies and individuals. Even if the Court were to overlook the *Teleglobe* attorney-to-attorney communication requirement, Defendant has not shown that all of those to whom Wright and Hughes sent the Memorandum shared "a substantial identity of legal interest" because they were "engaged in a common effort and [sought] the advice of counsel about fulfilling their statutory mission." *Animal Welfare*, 370 F. Supp. 3d at 133. Defendant states only that the recipients of the Miller Memorandum "shared a common legal interest in the proper administration of the Compact with respect to a federal highway project, and distribution of Miller's memorandum was in furtherance of such common interest." (Doc. 157 at 15-16.) As argued in Plaintiff's reply brief, "[u]nlike the federal agencies involved in *Animal Welfare*, which each had express responsibilities under the MMPA, none of foregoing recipients of the 1965 Miller memorandum, aside from being involved in federal or state government generally, have any responsibilities under the Compact." (Doc. 158 at 6.) On this record, Defendant's broad assertion that the need for cooperation "between the Commission and other instrumentalities of the federal government regarding federal projects that may affect the water of related land resources of the Delaware River Basin" (Doc. 157 at 15), does not satisfy its burden of showing a substantially similar legal interest in the matter at issue. Thus, the Court concludes that

Defendant has not shown that it did not waive the attorney-client privilege regarding the Miller Memorandum. With this determination, Document Number 32 must be disclosed unless application of the deliberative process privilege, which Defendant also claims, indicates a different result.

Document Number 33 is not protected from disclosure because there is no indication that any of the three communications contained therein satisfy the requirements of the attorney-client privilege. The note from "Buzz" to "Herb" references "Miller" and his "advice," but the mention of an attorney's name does not satisfy any necessary requirement. There is no indication that Herb and Buzz have an attorney-client relationship or that the communication was confidential and sought or provided legal assistance. *Teleglobe*, 493 F.3d at 359. The letter from V. J. Burns, Deputy Chief Engineer of the New York Department of Public Works, to Miller, DRBC's General Counsel, does not satisfy the application of the attorney-client privilege in the government agency context where the agency may be considered the "client" and the agency lawyer the "attorney," *Tax Analysts,* 117 F.3d at 618, in that the agency seeking advice is the New York Department of Public Works and Miller is the lawyer for DRBC. Milller's response to Burns is not privileged for the same reason, i.e., the communication is not between client and attorney. Because the attorney-client privilege is the only privilege asserted as to Document Number 33, this Document must be disclosed.

Document Number 35 is not protected by the attorney-client privilege because the recipient is unknown, and, therefore, the Court is unable to determine whether the communication is between privileged persons.[5] *Teleglobe*, 493 F.3d at 359. Because no other privilege is claimed as to Document 35, this Document must be disclosed.

With the foregoing conclusions, Document Numbers 29, 32, 33, and 35 are not protected by the attorney-client privilege. Document Numbers 24 through 28, 30, 31, 34, and 36 through 45 are protected by the attorney-client privilege, and, with the exception of Document 28, they are protected from disclosure in their entirety. Document 28 must be disclosed except for the two sentences redacted in green at pages 2 and 4 of the eleven-page document as this is the only material for which Defendant seeks protection. *See supra* p.10 n.3. Although Document Number 32 is not protected by the attorney-client privilege, because Defendant claims that it is also protected by the deliberative process privilege, the Court will determine whether it must be disclosed following consideration of whether it is protected by the deliberative process privilege.

## B. Deliberative Process Privilege

Plaintiff maintains that Defendant's assertion of the deliberative process privilege should be rejected, and, if the Court finds documents privileged in whole or in part, it should conclude that the documents should be produced because the required balancing of

---

[5] The sender is "Mr. J. Boardman" whom Defendant identifies in the Privilege Log as "John Boardman, DRBC." (Doc. 152-1 at 30.) Boardman is not identified in the Key to Names attached to Tambini's Affidavit. (*See* Doc. 152-1 at 32-36.)

interests shows that the need for production outweighs the benefits of the application of the privilege.  (Doc. 153 at 4-5.)  Defendant responds that the deliberative process privilege applies to the documents withheld on the basis of the privilege and Plaintiff has not shown a substantial need for the documents.  (Doc. 157 at 7-8.)  After conducting in camera review, the Court concludes that the deliberative process privilege does not apply to a number of the documents, and, where it applies, in some instances the need for production outweighs Defendant's interest in the privacy of its internal deliberations.

The deliberative process privilege protects "the decision making processes of government agencies" and, in particular, "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *N. L. R. B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (internal quotations omitted).  As summarized in Paul F. Rothstein and Susan W. Crump, *Federal Testimonial Privileges Relating to Witnesses & Documents in Federal-Law Case* § 5:3 (2d ed. 2006), the deliberative process privilege, also known as the "Inter- and Intra-Agency Deliberative Communication Privilege," "protects from disclosure those communications within the federal government, and between the government and its duly retained outside consultants, which consist of advice, recommendations, opinions, and other information transfers involved in the deliberative and policymaking processes of the government agency."  The Court of Appeals for the Third Circuit described the privilege as one which "permits the government to withhold documents containing 'confidential

19

deliberations of law or policymaking, reflecting opinions, recommendations or advice.'"

*Redland Soccer Club, Inc. v. Dep't of Army of U.S.*, 55 F.3d 827, 853 (3d Cir. 1995)

(quoting *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987)). The ultimate purpose of the

privilege "is to prevent injury to the quality of agency decisions." *NLRB*, 421 U.S. at 151.

Considered in the context of the Federal Rules of Civil Procedure, *Redland* noted

that, in analyzing the government's assertion of privilege,

> the district court should keep in mind the fact that Federal Rule of Civil
> Procedure 26 authorizes broad discovery into "any matter, not privileged, which
> is relevant to the subject matter involved in the pending action, [*see* Federal
> Rule of Civil Procedure 26(b)(1)] but the deliberative process privilege, like
> other executive privileges, should be narrowly construed." *See Coastal States
> Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 868 (D.C.Cir.1980); *Cooney v.
> Sun Shipbuilding & Drydock Co.,* 288 F.Supp. 708, 716 (E.D.Pa.1968)
> (collecting cases).

55 F.3d at 856.

Because the privilege "'protects agency documents that are both predecisional and

deliberative,'" *Abdelfattah v. U.S. Dept. of Homeland Sec.*, 488 F.3d 178, 183 (3d Cir. 2007)

(quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)), the government

must show that the document satisfies both requirements.

To satisfy the predecisional prong of the inquiry, the proponent of the privilege must

show that the document is "actually antecedent to the adoption of a policy or arrival at a

decision." Rothstein & Crump, *supra*, § 5.3. However, in *NLRB*, the Court noted that the

agency need not have actually reached a final decision or issued a final policy to be

afforded protection of a document:

Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

*NLRB*, 421 U.S. at 153 n.18.

To satisfy the deliberative prong of the inquiry, the document for which protection is sought must be "actually related to the process by which the policy was formulated or decision reached." Rothstein & Crump, *supra*, § 5.3. The privilege distinguishes between opinions, which are protected, and facts, which fall outside of the privilege: factual material is not protected as long as it is severable from the deliberative information, even if the factual information is located in an otherwise privileged document. *Redland*, 55 F.3d at 854; *In re Grand Jury,* 821 F.2d at 959.

Factors to consider in determining whether a document is predecisional and part of the deliberative process include the following: 1) the identity and position of the author and recipient; 2) the contents of the document; 3) the timing of the document relative to the decision at issue; and 4) the status of the document as an opinion or recommendation. Rothstein & Crump, *supra*, § 5.3.

"The deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, ad hoc basis." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

"[E]ach time it is asserted the district court must undertake a fresh balancing of the

competing interests." *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd.*

*of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992). As explained in

*Redland*,

> The privilege, once determined to be applicable, is not absolute. *First Eastern Corp.* [*v. Mainwaring,* 21 F.3d 465, 468 n.5 (D.C. Cir.1994)]; [*United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir. 1993)]. After the government makes a sufficient showing of entitlement to the privilege, the district court should balance the competing interests of the parties. The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest. This Court has previously stated that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ... or by making a *prima facie* showing of misconduct." *In re Grand Jury,* 821 F.2d at 959 (internal citations omitted). The United States Court of Appeals for the District of Columbia, recently determined that a district court, in balancing the interests, should consider at least the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *First Eastern Corp.,* 21 F.3d at 468 n. 5.

55 F.3d at 854.

With this extensive guidance, the Court will now proceed to review the documents

withheld pursuant to the deliberative process privilege.

In support of the assertion of the deliberative process privilege, DRBC Executive

Director Tambini states in his Declaration that

> Documents Nos. 1-24, and 27 contain email communications between Commission staff and the DRBC Commissioners or their state or federal agency staff advising them as Commissioners, and related communications

among Commission staff. The communications occurred during the drafting and prior to the issuance of the Stone Energy dockets (D-2009-13-1, D-2009-18-1) and are thus pre-decisional. Each document reflects communications that evidence the Commission's deliberations regarding the substance of the docket. Staff members of both the Commission and the agencies of the signatory states would be reluctant to engage in these candid exchanges if they are subject to disclosure. Additionally, the chilling of such communications would impede the operations of the Commission.

(Doc. 152-1 at 13.)  In its opposition brief, Defendant essentially reiterates Tambini's assertions.  (*See* Doc. 157 at 7-8.)

Plaintiff objects to the assertion of the deliberative process privilege on the basis that the Privilege Log is unreliable.  First, Plaintiff avers that Defendant asserted the privilege "to pull relevant documents from the Stone Energy docket. . . . As its privilege log and related production demonstrates, it has selectively invoked deliberate [sic] process privilege over certain documents, while producing others involving the very same subject matter and participants." (Doc. 153 at 4.)  Defendant responds that its "assertion of the deliberative process privilege over only twenty-six of the thousands of documents in DRBC's project files" is not defective, but is "precisely how the deliberative process privilege is required to be invoked." (Doc. 157 at 6-7.)  Earlier in its brief, Defendant stated that the documents were withheld when Plaintiff requested review of "the project files for the first twenty dockets issued by the Commission, and those for certain specific dockets including Docket D-2009-18-1 issued to Stone Energy for its Matoushek 1 Well Site shale gas exploration and development project." (*Id*. at 4.)  Although it is noteworthy that the documents withheld all relate to the Stone Energy dockets when review of twenty other dockets was requested (*id*.

at 3-4), the Court will not further consider this issue because the first twenty dockets are not

of record such that the Court could conduct a comparison of the earlier dockets and the

Stone Energy dockets. Moreover, judicial efficiency counsels against such a comparison

where the Court will undertake de novo review of the Document Numbers for which

Defendant asserts the deliberative process privilege. *See supra* p. 6 n.2.

Plaintiff further asserts that the privilege log is not reliable because, in some

instances, Defendant has produced documents that appear to contain the same information

for which the deliberative process privilege is asserted. (Doc. 153 at 4 (citing Privilege Log

Document Numbers 1, 6, 7, and 23).) Defendant responds that the corresponding

documents which it produced "were produced in error, and this inadvertent production was

not intended to serve as a voluntary waiver of an assertion of privilege." (Doc. 157 at 6 n.1

(citing *Redland*, 55 F.3d at 856).) Defendant further states that the documents produced

are "clearly predecisional and deliberative communications that would properly be protected

by the deliberative process privilege." (*Id.*) Plaintiff replies that Defendant must do more

than claim inadvertency and Defendant has not done so here. (Doc. 158 at 2 (citing *Stewart*

*Title Guar. Co. v. Owlett & Lewis, P.C.*, 297 F.R.D. 232, 240-41 (M.D. Pa. 2013) (applying

Fed. R. Evid. 502(b), by analogy, to inadvertent disclosure of confidential mediation

documents and a non-testifying expert report)).)

The Court does not find a basis to conclude that the assertedly inadvertent

disclosure of four documents renders all assertions of the deliberative process privilege

unreliable. However, the Court will consider the narrower question of whether Defendant's inadvertent disclosure of documents allegedly protected by the deliberative process privilege waived the privilege as to those documents. Based on *Bayliss v. New Jersey State Police*, 622 F. App'x 182, 186 (3d Cir. 2015) (not precedential), the Court will consider Defendant's post-disclosure conduct in determining whether the privilege was waived.

The Third Circuit panel in *Bayliss* considered whether the deliberative process privilege was waived and agreed that it was not

> because the disclosure was inadvertent, and the State took reasonable steps in preventing and rectifying the disclosure. *See* Fed. R. Evid. 502(b). The record is unclear regarding how the [disclosure took place], but the State demonstrated that the disclosure was unauthorized . . . . Moreover, upon learning of the disclosure via references in [the] Motion to Amend, the State immediately requested return of the [documents].

622 F. App'x at 186. The panel's analysis shows that it applied the attorney-client privilege and work product inadvertent disclosure considerations of Federal Rule of Evidence 502(b) to the deliberative process privilege. Rule 502 (b) provides as follows:

> Inadvertent Disclosure. When made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if:
>
> > (1) the disclosure is inadvertent;
> >
> > (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> >
> > (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b).

As noted above, Defendant asserts in a footnote that the disclosure of privileged material was inadvertent. (*See* Doc. 157 at 6 n.1.) However, Defendant does not address the steps it took to prevent disclosure. More importantly, Defendant does not address what steps it took to rectify the error which it became aware of, at the latest, when Plaintiff filed the Motion and supporting brief under consideration here on December 11, 2019. (*See* Docs. 152, 153.) Unlike the defendant in *Bayliss*, Defendant did not immediately request return of the inadvertently disclosed documents or notify Plaintiff of its inadvertent disclosure. On this record, the Court cannot conclude that the disclosed documents are entitled to protection under the deliberative process privilege. Therefore, Document Numbers 1, 6, 7, and 23 are not protected by the deliberative process privilege. Document Numbers 1, 6, and 23 must be disclosed in their entirety. Because only the first three pages of Document Number 7 were disclosed (*see* Doc. 152-1 Ex. G, pp. 71-73), the remaining seven pages of Document Number 7, which contain confidential contact information, are not subject to disclosure based on waiver. Defendant does not seek protection of this portion of Document Number 7 based on the deliberative process privilege but refers to it as a "Confidential Attachment" about which the District of New Jersey Court instructed the parties to meet and confer concerning its production. This Court will do the same.

Beyond these specific reasons for rejecting the deliberative process privilege, Plaintiff maintains that

the Court should conclude that the documents the Commission is withholding should be produced because the deliberative process privilege is not absolute and a balancing of interests reveals that the need for production in this case outweighs the benefits of the application of the privilege. . . .

Here, the contracting parties' *post-contracting course of performance* is directly at issue in the litigation. This category of evidence, as the Court of Appeals recognized, "bear[s] on the question of intent." *Wayne Land and Mineral Grp. LLC v. Del. River Basin Comm'n et al.*, 894 F.2d 509, 534 (3d Cir. 2018). The Commission cannot, on one hand, claim its interpretation of the Compact should prevail while, on the other, shield from disclosure materials that may bear directly on the question of intent. *Id.* The documents that the Commission is withholding, all of which were generated in connection with the Commission's assertion of "project" review jurisdiction over Stone Energy's commencing natural gas drilling activities in the Basin without the Commission's prior review and approval, are likely to evidence, or point the way to other documents or testimony that will evidence, course of performance or an intentional departure therefrom.

(Doc. 153 at 5-6.)

As discussed in the context of Plaintiff's earlier Motion to Compel (Doc. 138), the Court takes a broad view of the Third Circuit's directives regarding the relevant inquiry on remand, *see Wayne Land*, 894 F.3d at 534, and agrees with Plaintiff's assessment that any evidence which bears on the question of intent in the documents withheld pursuant to the deliberative process privilege should be disclosed. (*See* Doc. 163 at 22-33.) The Court also takes into account the Circuit Court's notation that Plaintiff agreed at oral argument that "'there can be components of an undertaking that can be a project.'" 894 F.3d at 533 (quoting Oral Arg. Tr., Nov. 7, 2017, at 8:23-24). Of further significance in the balancing of interests is the fact that DRBC considered the Stone Energy dockets to be prototypes and

those who reviewed the draft dockets considered them as such. *See, e.g.,* Document Number 1.

Turning now to whether Document Numbers 2 through 5, 8 through 22, and 32 are protected from disclosure by the deliberative process privilege, the Court finds that they satisfy the first prong of the analysis. Document Numbers 2 through 5 and 8 through 22 are predecisional because they relate to draft Stone Energy dockets. They are deliberative because interested parties share their impressions, opinions, and suggestions for revision of the drafts, and are "actually related to the process" by which decisions on the dockets were reached. *See* Rothstein & Crump, *supra*, § 5.3. Although the Document Numbers contain factual material that falls outside the privilege, the interweaving of fact and deliberative information in the documents is not practically severable. *See Redland*, 55 F.3d at 854; *In re Grand Jury*, 821 F.2d at 959.

Document 32 is predecisional because it relates to the funding of an alteration in a proposed federal highway project needed to avoid impinging on a reservoir within the Delaware River Basin. It is deliberative because the letter and attached Memorandum share opinions and impressions on the issue.

Although Document Numbers 2 through 5, 8 through 22, and 32, are protected by the deliberative process privilege, the Court concludes that Defendant has waived the privilege as to Document Numbers 14 and 32. Defendant acknowledges in its description of Category 4 that Document Number 14, which is included in Category 4, was produced in

*Del. Riverkeeper Network v. DRBC* except for the material redacted in yellow. If the disclosure was voluntary, Defendant waived the deliberative process privilege when it disclosed the material. *See, e.g., In re Sealed Case*, 121 F.3d at 741–42 (concluding that agency's voluntary disclosure of documents waived the deliberative process privilege). Defendant does not claim that the disclosure was inadvertent or otherwise seek to satisfy the requirements of Federal Rule of Evidence 502(b) which, for the reasons discussed above, *see supra* pp. 24-26, the Court has determined apply to inadvertent disclosure of material claimed to be protected by the deliberative process privilege. Therefore, Document Number 14 must be produced except for the redactions in yellow which were not previously disclosed.

Similarly, Document Number 32 was voluntarily disclosed to individuals who were not directly involved in the matter at issue. *See supra* pp. 11, 14-17. Therefore, Defendant waived the deliberative process privilege as to Document Number 32 and it must be produced in its entirety.

Because Document Numbers 2 through 5, 8 through 13, and 15 through 22, are protected from disclosure by the deliberative process privilege and Defendant has not waived the privilege as to these documents, the Court will now turn to the question of whether Plaintiff's need for the Documents (or the redacted material contained therein) outweighs Defendant's interest in their confidentiality. Having carefully reviewed the Document Numbers at issue, the Court finds limited instances in which Plaintiff's need

outweighs Defendant's interest in confidentiality.  In most instances where Plaintiff's need is predominant, specific comments regarding the docket under review are raised in the broader context of concerns about Marcellus shale activities in the Delaware River Basin and/or DRBC's authority over related matters.  As such, these comments and/or responses thereto may be relevant to the intended ceding of powers of member states, the parties' course of performance, and other issues that may bear on the question of intent.

Regarding the *Redland* balancing factors, 55 F.3d at 854, Defendant first asserts that "the subjective views of Commissioners and staff exchanged during the give-and-take of agency decision making in 2009 when developing the dockets" are not relevant to the inquiry required by the Third Circuit--the drafter's intent as to the meaning of the term "project."  (Doc. 157 at 9.)  However, as discussed in the Court's January 31, 2020, Memorandum Opinion, the documents at issue need not address the meaning of the term "project" to be relevant.  (Doc. 163 at 25-26 (citations omitted).)  Communications from State personnel may be indicative of their understanding of the ceding of control over the waters of the Basin and related activities within their own territories under the Compact.  (*Id.* (citations omitted).)  Further, such documents may be relevant to the parties' course of performance under the Compact which is not limited to what DRBC has historically officially determined to be a project.  (*Id.* at 26-27 (citations omitted).)  Indeed, what happened behind the scenes can shed light on what the parties believe to be within the purview of the Compact.  (*Id.*)  Finally, the broad construction of the "course of performance" concept in the

interstate compact context is particularly significant in a situation where, as here, the interpretive task seeks to discern how the drafters would have considered activities that did not exist and could not have been anticipated at the time the compact was drafted and ratified. (*Id.* at 27-28.)

The Court also rejects Defendant's arguments regarding the remaining *Redland* factors, i.e., the availability of other evidence; the "seriousness" of the litigation and the issues involved; the role of the government in the litigation; and "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable," 55 F.3d at 854. (*See* Doc. 257 at 10-13.) As discussed in the January 31, 2020, Memorandum Opinion, Defendant's production of voluminous evidence does not preclude the production of additional evidence in the circumstances presented here; whether Plaintiff's planned activities and facilities constitute a "project" is a serious question with potentially broad implications; the government's role in the litigation is sufficient to support disclosure of the documents; and the effect of disclosure on future deliberations does not weigh in Defendant's favor because the wide dissemination and subject matter of the material contradict its characterization as secretive. (*See* Doc. 163 at 29-33 (citations omitted).)

Having conducted the requisite balancing of Document Numbers 2 through 5, 8 through 13, and 15 through 22, the Court concludes that the following redacted material is in

the category outlined above, i.e., Plaintiff's need for the material outweighs Defendant's interest in confidentiality.[6]  Therefore, the following material must be produced:

- Document Number 3: "PADEP Comment Responses" numbers 4 and 6; "NYSDEC Comment Responses" numbers 7 and 8; "DNREC Comment Responses" numbers 3, 4, and 7.

- Document Number 4: Comment from Peter Freehafer regarding the intent of NYSDEC's comments.

- Document Number 8: DRBC's "Response to NJDEP Comments on Draft Stone Energy Dockets" response number 4.[7]

- Document Number 9: "NJDEP Comments" dated 2/9/10 comment number 11.

- Document Number 12:  Katherine Bunting-Howarth's comment regarding docket review generally.

- Document Number 13: Katherine Bunting-Howarth's comment regarding Delaware's reservation about approval of dockets for gas-related activities.

- Document Number 16: Carol Collier and Peter DeLuca emails regarding cumulative impact studies and docket review process.

- Document Number 21: PADEP's Marcus Kohl's email regarding DRBC's regulation of well construction and DRBC's response thereto.

---

[6] Where a comment which the Court determines to be discoverable upon balancing the parties' interests is found more than once in the Documents submitted for review, the Court identifies only one source of the information.  For example, in the instance where Document Number 2 contains a comment from PADEP about appropriate matters for DRBC regulation, and Document Number 3 contains PADEP's comment and DRBC's response, the Court identifies only the relevant information in Document Number 3 as discoverable.

[7] NJDEP's comments are found in the January 12, 2010, Memorandum contained in Document Number 6 which the Court determined must be produced in its entirety based on Defendant's waiver of the deliberative process privilege.

## V. CONCLUSION

For the reasons set out above, the Court has made the following determinations: 1) Document Numbers 24 through 28, 30, 31, 34, and 36 through 45 are protected in whole or in part by the attorney-client privilege and the protected material is not discoverable; 2) Document Numbers 2, 5, 10, 11, 15, 17 through 20, and 22 are protected by the deliberative process privilege and, because the need for disclosure does not outweigh the need for confidentiality, the protected material in these Document Numbers is not discoverable; 3) Document Numbers 1, 6, 7, 14, 23, 29, 32, 33, 35 are not protected by the attorney-client privilege or the deliberative process privilege and must be disclosed for the reasons discussed in the body of this Memorandum Opinion;[8] and 4) Document Numbers 3, 4, 8, 9, 12, 13, 16, and 21 are protected by the deliberative process privilege, but the need for disclosure of material identified therein outweighs Defendant's interest in nondisclosure, and, therefore, specifically identified material in these documents must be disclosed. The Court makes no determination as to the confidential information contained in Document Number 7 and directs the parties to meet and confer about the protection of this information. Based on the foregoing, Plaintiff's Motion to Compel (Doc. 152) will be granted in part and

---

[8] *See supra* pp. 28-29 regarding production of Document Number 14.

denied in part.[9]  An appropriate Order will be filed simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge

---

[9] The Court notes that Plaintiff is correct that "fundamental fairness" precludes Defendant "from offering any testimony in this proceeding with respect to the subject matter of any documents being withheld on the basis of . . . privilege." (Doc. 153 at 5.)  It is well recognized that the use of privilege as a "shield" against discovery precludes the party asserting the privilege from later using the undiscoverable information as a "sword."  *See, e.g., Lyons v. Johnson,* 415 F.2d 540, 541–42 (9th Cir.1969); *see also Leamer v. Fauver*, Civ. A. No. 95-5105, 2008 WL 630046, at *3 & n.1(D.N.J. Mar. 5, 2008).