**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYNE LAND AND MINERAL** | : | |
| **GROUP, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:16-CV-00897** |
| | : | **(JUDGE MARIANI)** |
| **DELAWARE RIVER BASIN** | : | |
| **COMMISSION,** | : | |
| | : | |
| **Defendant, and** | : | |
| | : | |
| **DELAWARE RIVERKEEPER NETWORK** | : | |
| **MAYA K. VAN ROSSUM, THE** | : | |
| **DELAWARE RIVERKEEPER,** | : | |
| | : | |
| **Intervenors-Defendants.** | : | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Defendant Delaware River Basin Commission's Suggestion of Mootness and Motion

to Dismiss (Doc. 216) is pending before the Court. With the Motion, Defendant Delaware

River Basin Commission ("DRBC" "Commission"), requests that the Court dismiss this case

as moot based on regulations promulgated by the DRBC which prohibit high-volume

hydraulic fracturing in the Delaware River Basin ("Basin"). (*Id.* ¶¶ 7-16.) Plaintiff Wayne

Land and Mineral Group, LLC, ("WLMG") opposes the Motion, asserting that this case is not

moot: as long as "the Commission's assertion that it has project review jurisdiction over

WLMG's proposed development under Section 3.8 of the Compact remains, WLMG

continues to be injured by it, and a declaration by this Court would redress the injuries alleged in WLMG's complaint." (Doc. 218 at 1.) For the reasons that follow, the Court will grant Defendant Delaware River Basin Commission's Suggestion of Mootness and Motion to Dismiss (Doc. 216).

## II. BACKGROUND

In the Complaint filed on May 17, 2016, Plaintiff asked the Court to

[d]eclare that the Commission does not have jurisdiction over, or the authority to review and approve, or to require WLMG to seek prior approval from the Commission for, or to otherwise preclude the development of, WLMG's proposed well pad, appurtenant facilities or the related activities to be carried out on the Property.

(Doc. 1 at 18.) In its opinion concerning the DRBC's motion to dismiss, the Court of Appeals for the Third Circuit stated that WLMG's Complaint "sought a ruling in the District Court under the Declaratory Judgment Act that an interstate compact does not give the Delaware River Basin Commission authority to review Wayne's proposed fracking activities." *Wayne Land & Min. Grp. LLC v. Delaware River Basin Comm'n*, 894 F.3d 509, 515 (3d Cir. 2018). The Circuit Court noted that the parties' jointly submitted appendices which include the statement that WLMG "sought a declaratory judgment from the District Court that the Commission's jurisdiction extends only to matters fitting the Compact's definition of 'project' and that the activities proposed by Wayne do 'not constitute a 'project' under Section 3.8 of the Compact.'" 894 F.3d at 519 & n.2 (citing Joint App. at 77-78).)

WLMG sought the requested relief because it "owns approximately 180 acres of land, including the natural gas and minerals present on the land, in Wayne County, Pennsylvania, and approximately 75 acres of the land owned by WLMG is located in the Basin (the 'Property')." (Doc. 1 ¶ 12.) The Property "is located in a part of the Basin that overlays natural gas reserves in shale formations." (*Id.* ¶ 13.) WLMG states that it "acquired the Property with an intent to explore for, extract and sell the natural gas located in shale formations associated with the Property and other nearby land in order to recoup, and earn a reasonable return on, its investment in the Property." (*Id.* ¶ 21.)

Defendant Delaware River Basin Commission was created by the Delaware River Basin Compact ("Compact"), an interstate agreement entered into in 1961 which aimed to ensure "a unified approach to the conservation, utilization, development, management, and control of the water and related resources of the Basin." *Wayne Land*, 894 F.3d at 515. The Delaware River Basin is "an area of land surrounding and draining into the Delaware River that extends through parts of Delaware, New Jersey, New York, and Pennsylvania (the "Basin States"). *Id.* The Commission is comprised of the Governors of the Basin States and a commissioner appointed by the president of the United States. *Id.*

Summarizing the powers and responsibilities of the Commission and Compact provisions, the Third Circuit stated that the Compact gives the Commission a broad range of powers to protect water quantity and quality within the Basin. *Id.* Consistent with the Commission's responsibility, the Commission has the authority to review "projects"

3

undertaken in the Basin if they will have "a substantial effect on the water resources of the [B]asin[.]" *Id.* at 515-16 (quoting Joint App. at 370, § 3.8). The Commission has the power to promulgate rules "for the procedure of submission, review and consideration of projects[.]" *Id.* at 516 (quoting Joint App. at 370, § 3.8). More fully, § 3.8 of the Compact states the criteria for that review process as follows:

> "No project having a substantial effect on the water resources of the [B]asin shall hereafter be undertaken by any person, corporation or governmental authority unless it shall have been first submitted to and approved by the [C]ommission, subject to the provisions of Sections 3.3 and 3.5. The [C]ommission shall approve a project whenever it finds and determines that such project would not substantially impair or conflict with the comprehensive plan and may modify and approve as modified, or may disapprove any such project whenever it finds and determines that the project would substantially impair or conflict with such plan."

*Wayne Land*, 894 F.3d at 516 (quoting Joint App. at 370, § 3.8).

The Compact also gives the Commission power to address pollution within the Basin. "Under Article 5 of the Compact, "[t]he [C]ommission may undertake investigations and surveys, and acquire, construct, operate and maintain projects and facilities to control potential pollution and abate or dilute existing pollution of the water resources of the [B]asin." *Id.* (quoting Joint App. at 372, § 5.1).

As a general matter, "[i]t is plain that the Commission has broad rulemaking and enforcement powers. Under Article 14 of the Compact, the Commission may '[m]ake and enforce reasonable rules and regulations for the effectuation, application and enforcement of this [C]ompact[.]'" *Id.* at 517 (quoting Joint App. at 389, § 14.2(a)).

In the Complaint, WLMG expresses the source of its disagreement with the Commission to be the interpretation of § 3.8 which gives the Commission jurisdiction over natural gas well pads and related facilities and activities based on its determination that well pads constitute "projects" requiring Commission approval and that the Commission would not consider applications for well pads until after it adopted relevant regulations. (Doc. 1 ¶¶ 17-19.) WLMG refers to the DRBC's position as a "*de facto* moratorium." (Doc. 1 ¶ 20.)

The Commission asserted authority over fracking-related activities in the Basin in 2009, when "then-Executive Director of the Commission, Carol Collier, issued a moratorium banning most natural gas fracking projects located 'within the drainage area of Special Protection Waters,' unless there was prior Commission approval." *Wayne Land*, 894 F.3d at 517-18.

> The initial 2009 moratorium covered projects that included a "drilling pad upon which a well intended for eventual production is located, all appurtenant facilities and activities related thereto and all locations of water withdrawals used or to be used to supply water to the project." (Joint App. at 98.) But, at that time, "[w]ells intended solely for exploratory purposes" were not covered by the moratorium. (Joint App. at 98.)

> Collier expanded that moratorium in 2010 in a supplemental notice letter. She withdrew the exclusion for exploratory wells and stated that "all natural gas well project sponsors, including the sponsors of natural gas well projects intended solely for exploratory purposes, ... may not commence any natural gas well project for the production from or exploration of shale formations within the drainage area of Special Protection Waters without first" obtaining the approval of the Commission. (Joint App. at 113 (emphasis omitted).) Collier said that the inclusion of exploratory wells in the moratorium would "support the Commission's goal that exploratory wells do not serve as a source of degradation of the Commission's Special Protection Waters," by "remov[ing] any regulatory incentive" to engage in purportedly "exploratory"

drilling before the Commission could implement final natural gas regulations. (Joint App. at 113.)

894 F.3d at 518.

The DRBC issued proposed fracking regulations at the end of 2010 and released revised draft regulations in 2011. *Id.* at 518 n.5. No final decision had been made on the draft regulations at the time this action was filed in 2016.[1] *See id.*

In this factual context, the DRBC filed Defendant Delaware River Basin Commission's Motion to Dismiss the Complaint (Doc. 12).With the March 23, 2017, Memorandum Opinion and Order (Docs. 92, 93), the Court granted DRBC's motion, concluding that WLMG's proposed activities within the Basin constituted a "project" which required WLMG to submit an application to the Commission. (Doc. 92 at 43.) WLMG appealed the Court's decision and the Third Circuit vacated this Court's dismissal based on its determination that "the meaning of the word 'project' as used in the compact is ambiguous." *Wayne Land*, 894 F.3d at 515. The Circuit Court remanded the case "for fact-finding on the intent of the compact's drafters." *Id.*

Following an extensive discovery period, Defendant Delaware River Basin Commission filed a Motion for Partial Summary Judgment (Doc. 169) on April 6, 2020, and Intervenors-Defendants Delaware Riverkeeper Network and Maya Van Rossum filed their

---

[1] In September 2017, the DRBC adopted a resolution instructing its Executive Director to publish new proposed natural gas fracking regulations by November 30, 2017. *Wayne Land*, 894 F.3d at 518 n.5. The proposed regulations were published on that day. *Id.* As set out in the text *infra*, relevant regulations were adopted on February 25, 2021.

Motion for Summary Judgment (Doc. 171) on April 7, 2020. On January 6, 2021, the Court

denied both motions (*see* Docs. 205-207), concluding that "the ambiguity identified by the

Circuit Court cannot be resolved on summary judgment given the dearth of agreed upon

facts, the parties' divergent arguments based on citation to extrinsic evidence, [and] issues

of credibility whose resolution is inappropriate on summary judgment." (Doc. 205 at 38; *see*

*also* Doc. 207 at 5.)

On January 14, 2021, the Court scheduled trial to commence on October 18, 2021.

(Doc. 214.) On February 25, 2021, the Court received a letter from Kenneth Warren, the

DRBC's counsel, informing the Court that the DRBC had adopted final regulations on that

date "prohibiting high volume hydraulic fracturing in hydrocarbon bearing rock formations

within the Delaware River Basin."  (Doc. 215 at 1.)

Section 440.3 of the regulations adopted on February 25, 2021, address high volume

hydraulic fracturing ("HVHF") and provide as follows:

> (a) **Determination**. The Commission has determined that high volume
> hydraulic fracturing poses significant, immediate and long-term risks to the
> development, conservation, utilization, management, and preservation of the
> water resources of the Delaware River Basin and to Special Protection Waters
> of the Basin, considered by the Commission to have exceptionally high scenic,
> recreational, ecological, and/or water supply values. Controlling future pollution
> by prohibiting such activity in the Basin is required to effectuate the
> Comprehensive Plan, avoid injury to the waters of the Basin as contemplated
> by the Comprehensive Plan and protect the public health and preserve the
> waters of the Basin for uses in accordance with the Comprehensive Plan.
>
> (b) **Prohibition**. High volume hydraulic fracturing in hydrocarbon bearing rock
> formations is prohibited within the Delaware River Basin.

Resolution No. 2021-01, p. 11 (https://www.nj.goc/drbc/libraryy/documents/Res2021-

01_HVHF.pdf.).[2] Resolution 2021-01 ¶ C provides that

> [t]he Comprehensive Plan amendments and final rules adopted today replace
> the Executive Director Determinations of May 19, 2009, June 14, 2010 and July
> 23, 2010. The Resolution for the Minutes of May 5, 2010, which postponed the
> Commission's consideration of well pad projects until the adoption of final rules,
> expires by its own terms.

Resolution No. 2021-01, p. 5 (https://www.nj.goc/drbc/libraryy/documents/Res2021-
01_HVHF.pdf.).

On April 13, 2021, the DRBC filed the motion under consideration here, Defendant

Delaware River Basin Commission's Suggestion of Mootness and Motion to Dismiss (Doc.

216). As noted above, WLMG argued that the case was not moot. *See supra* p. 1. WLMG

alternatively requested that the Court stay the case pending the outcome of a case filed in

the United States District Court for the Eastern District of Pennsylvania challenging the

newly-adopted regulatory ban. (Doc. 218 at 5-6.) In its reply brief, the DRBC continued to

maintain that dismissal of the case was the appropriate outcome but stated "[i]f . . . the

Court were to find this case to remain justiciable, . . . DRBC agrees that a stay would be

---

[2] The Definitions section of Resolution 2021-01 provides the following relevant definitions:

High volume hydraulic fracturing (HVHF) - hydraulic fracturing using a combined total of
300,000 or mcre gallons of water during all stages in a well completion, whether the well is
vertical or directional, including horizontal, and whether the water is fresh or recycled and
regardless of the chemicals or other additives mixed with the water.

Hydraulic Fracturing - a technique used to stimulate the production of oil and natural gas
from a well by injecting fracturing fluids down the wellbore under pressure to create and
maintain induced fractures in the hydrocarbon-bearing rock of the target geologic formation.

Resolution No. 2021-01, p. 11 (https://www.nj.goc/drbc/libraryy/documents/Res2021-01_HVHF.pdf.).

appropriate." (Doc. 219 at 9.) The Court conducted a telephone conference on May 18,

2021, to determine the viability of a stipulated stay given the procedural posture of the case.

(*See* Docs. 220- 223.) The parties agreed that a stay was appropriate given the then-

pending Eastern District litigation concerning the validity of the regulations banning HDHF in

the Basin. The parties submitted a draft stipulation for the Court's approval. (Doc. 224.)  The

Court approved the Stipulation by Order of May 21, 2021. (Doc. 225.)

Thereafter, the parties filed the required status reports (Docs. 227-229), culminating

with the report that the relevant litigation had been concluded with the Third Circuit's

decision in *Yaw v. DRBC*, 49 F.4th 302 (3d Cir. 2022), which affirmed the District Court's

dismissal of the action for lack of standing. (Doc. 229 at 4.)  With the established regulations

remaining intact, DRBC suggested a stipulation to dismiss this case without prejudice;

WLMG did not agree. (*Id.*) Given this procedural posture, Defendant Delaware River Basin

Commission's Suggestion of Mootness and Motion to Dismiss (Doc. 216) is ripe for

disposition.

### III. ANALYSIS

As set out above, the DRBC requests that the Court dismiss this case as moot

based on regulations promulgated by the DRBC which prohibit high-volume hydraulic

fracturing in the Delaware River Basin. (Doc. 216 ¶¶ 7-16.) WLMG opposes the Motion,

asserting that this case is not moot: as long as "the Commission's assertion that it has

project review jurisdiction over WLMG's proposed development under Section 3.8 of the

Compact remains, WLMG continues to be injured by it, and a declaration by this Court

would redress the injuries alleged in WLMG's complaint." (Doc. 218 at 1.) For the reasons

that follow, the Court concludes that this case is moot.

Article III of the Constitution dictates that a federal court may adjudicate "only actual,

ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477

(1990); *Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009). "This case-or-controversy

requirement subsists through all stages of federal judicial proceedings [and for jurisdiction to

exist the] parties must continue to have a 'personal stake in the outcome' of the lawsuit."

*Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S.

472, 477-78 (1990)); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 282 (2021).

*Uzuegbunam* explains that

> [t]he doctrine of standing generally assesses whether that interest exists at the
> outset, while the doctrine of mootness considers whether it exists throughout
> the proceedings. To demonstrate standing, the plaintiff must not only establish
> an injury that is fairly traceable to the challenged conduct but must also seek a
> remedy that redresses that injury. And if in the course of litigation a court finds
> that it can no longer provide a plaintiff with any effectual relief, the case
> generally is moot.

592 U.S. 279, 282; *see also Road-Con, Inc. v. City of Philadelphia*, 120 F.4th 346, 356 (3d

Cir. 2024). The question of mootness "turns on the relief sought." *Road-Con*, 120 F.4th at

356 (citing *Doe v. Delie*, 257 F.3d 309, 314 (3d Cir. 2001)).

The Court of Appeals for the Third Circuit provided a comprehensive analysis of

Article III mootness in *Gulden v. Exxon Mobil Corp.*, 119 F.4th 299 (3d Cir. 2024), beginning

with the general proposition that "a case [is] moot in the Article III sense, [if] all plaintiffs who

once had Article III standing . . . have lost it, and none of the recognized exceptions to

mootness can apply." *Id.* at 305 (citing *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Recognized standing elements are: "(i) an injury-in-fact; (ii) fairly traceable to the

defendant's conduct; and (iii) capable and likely of being prevented or redressed through

the exercise of traditional judicial powers." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330,

338 (2016)). *Gulden* further provides that

> the loss of one or more of those elements during the pendency of the litigation,
> if established by the defendant, subjects the affected claims or requests for
> relief to potential dismissal on mootness grounds. . . . The loss of Article III
> standing by itself, however, does not moot a case; the defendant must also
> demonstrate that no mootness exception applies. . . . Thus, a case cannot be
> moot if a plaintiff establishes Article III standing, and the defendant is unable to
> demonstrate both the loss of standing and the inapplicability of the exceptions
> to mootness.

119 F.4th at 305 (internal citations omitted). *Gulden* proceeds with the mootness analysis by

first assessing whether the defendant established that the plaintiff had lost standing based

on the absence of a required element and then considers whether a recognized exception

to mootness existed. *Id.* at 306-10. The Court will proceed in a similar manner.

## A. Continuation of Standing Requirements

Early in this litigation, the DRBC sought dismissal of WLMG's complaint on

numerous grounds, including that the Court did not have subject matter jurisdiction based

on WLMG's lack of standing. (*See* Doc. 92 at 24.) The Court found that WLMG had

standing based on the following analysis of the requisite elements.

The Court is satisfied that WLMG has met its burden to demonstrate it has standing. First, WLMG's Complaint sufficiently alleges that it is suffering an injury in fact. WLMG intends to construct a well pad, drill an exploratory well on its Property, and commence hydraulic fracturing "as soon as the uncertainty and threat of fines, penalties and other sanctions resulting from the Commission's assertion of jurisdiction is resolved." (Doc. 22, at 30). "Absent the relief requested in its Complaint, WLMG cannot develop the natural gas on its Property in a reasonable and timely manner." *Id.* In the Complaint, WLMG further alleges that it "has incurred, and will continue to incur, economic injury by being prevented from exploring for, extracting and selling natural gas associated with the Property and also from benefitting from an increase in the market value of the property." *Id.* The Court is satisfied that WLMG has demonstrated an injury in fact.

Second, the Court agrees with WLMG that its injury has a sufficient causal connection to the DRBC's conduct. As WLMG notes, "[t]he material and adverse effect on WLMG's rights to use the Property and to conduct a lawful business activity is caused by the Commission's . . . assertion of jurisdiction, not simply by the existence of the Compact," (*Id.* at 31), and "[n]o action of a third party is a more immediate cause of these harms." *Id.*

Finally, there is a likelihood that WLMG's injury will be redressed by a favorable decision of this Court. A decision in favor of WLMG would permit it to plan and develop the Property without first submitting an application to the DRBC for its approval.

(Doc. 92 at 27-28.)

Turning to whether the DRBC has shown that the standing elements are no longer satisfied, the DRBC asserts that declaratory relief would not redress WLMG's alleged injury. (Doc. 217 at 11; Doc. 219 at 2.) The DRBC first contends that "the final regulations prohibit high-volume hydraulic fracturing in the Basin regardless of whether the planned activities constitute a 'project.' A declaration that the Compact's definition of 'project' does

not encompass WLMG's planned activities would not alter the prohibition or redress the alleged harm." (Doc. 217 at 11-12.)

The Court agrees. Here, no declaratory judgment by this Court will allow WLMG to proceed with its plan to pursue HDHF on its land within the Basin. Based on the DRBC's authority to control pollution within the Basin pursuant to Article 5 of the Compact, the relevant regulatory provision clearly prohibits **ALL** HDHF activity in the Basin as that term is defined in the regulation. *See supra* pp. 7-8 & n.2. Although the Court found at the outset of the litigation that WLMG's claimed injury would likely be redressed by a favorable decision because "[a] decision in favor of WLMG would permit it to plan and develop the Property without first submitting an application to the DRBC for its approval" (Doc. 92 at 28), that possibility is now foreclosed by the regulation prohibiting WLMG's planned development of the Property.

(Doc. 92 at 27-28.)

The DRBC also contends that the case is moot because "WLMG's obligation to submit plans to conduct hydraulic fracturing activities to the Commission for its review and approval no longer exists." (Doc. 217 at 12.) WLMG disagrees with this assertion, claiming that it "continues to be injured by the Commission's assertion of Section 3.8 project review jurisdiction over its project. That WLMG is, now, also injured by a new regulatory ban does not mean that its injury flowing from the Commission's assertion of Section 3.8 jurisdiction has somehow evaporated." (Doc. 218 at 3.)

13

With its argument, WLMG disregards the adopting Resolution's clear statement in

paragraph C that

> [t]he Comprehensive Plan amendments and final rules adopted today **replace** the Executive Director Determinations of May 19, 2009, June 14, 2010 and July 23, 2010. The Resolution for the Minutes of May 5, 2010, which postponed the Commission's consideration of well pad projects until the adoption of final rules, **expires** by its own terms.

Resolution No. 2021-01, p.5 (https://www.nj.goc/drbc/libraryy/documents/Res2021-

01_HVHF.pdf.) (emphasis added). The referenced 2009 and 2010 Executive Director

Determinations are those which exerted § 3.8 project review over WLMG's proposed HDHF

activities in the Basin. *See supra* pp. 5-6 (*see also* Doc. 22 at 11-12; Doc. 92 at 11 & n.3;

Doc. 216 ¶ 2). They are no longer in effect based on paragraph C of Resolution 2021-01.

Therefore, the DRBC's former designation of WLMG's proposed activity as a "project" is

unrelated to the comprehensive regulatory ban currently in effect--the implementation of the

provision negates previously established 2009 and 2010 Executive Director Determinations

establishing § 3.8 project review. *See supra* pp. 5-8. In that the DRBC no longer asserts §

3.8 project review jurisdiction over WLMG's desired activities within the Basin, WLMG's

contention that it continues to be harmed by the DRBC's assertion of § 3.8 project review

jurisdiction is without merit.

For the foregoing reasons, the DRBC has shown that the redressability requirement is no longer met. Therefore, this case is moot unless an exception to the mootness doctrine exists.[3].

## B. Mootness Exceptions

The parties recognize that the mootness doctrine contains two exceptions: voluntary cessation and conduct capable of repetition yet evading review. (Doc. 217 at 9-10; Doc. 218 at 3.)

### 1. Voluntary Cessation

"The voluntary-cessation exception applies when a defendant ceases the allegedly illegal conduct that caused the injury but remains 'free to return to his old ways.'" *Gulden*, 119 F.4th at 308 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). The rationale for this exception is that "'the voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.'" *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). *Gulden* cites *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979), for the proposition that "the voluntary-cessation exception can be defeated when (1) it can be said with assurance that there is no

---

[3] The Court acknowledges that Defendant notes the Third Circuit has recognized a court's ability to exercise its discretionary power to withhold injunctive and declaratory relief on prudential grounds even in a case that is not constitutionally moot. (Doc. 217 at 8-9 (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 700 (3d Cir. 1996) (citing *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987); *United States v. W.T. Grant*, 345 U.S. 629 (1953); *A.L. Mechling Barge Lines, Inc., v. U.S.*, 368 U.S. 324 (1961)).) Discussion of this issue is not warranted in that the DRBC does not develop application of the issue to this case. (*See id.*)

reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." 119 F.4th at 308 n.3 (internal quotation omitted)). The Supreme Court has stated that, in a voluntary-cessation case, the standard for the party asserting mootness is "stringent": "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968)).

The inquiry concerning the recurrence of the allegedly wrongful behavior centers on the reason for the change.

> To be sure, the defendant's reason for changing its behavior is often probative of whether it is likely to change its behavior again. We will understandably be skeptical of a claim of mootness when a defendant yields in the face of a court order and assures us that the case is moot because the injury will not recur, yet maintains that its conduct was lawful all along. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012); *see also* 13C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3533.5, at 248 (3d ed. 2008). On the other hand, if the defendant ceases because of a new statute or a ruling in a completely different case, its argument for mootness is much stronger. *See, e.g.*, *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 260 (3d Cir. 2007); *Khodara Envtl., Inc. ex rel. Eagle Envtl., L.P. v. Beckman*, 237 F.3d 186, 193 (3d Cir. 2001) (Alito, J.).

> In short, the touchstone of the voluntary-cessation doctrine is not how willingly the defendant changed course. Rather, the focus is on whether the defendant made that change unilaterally and so may "return to [its] old ways" later on. *Friends of the Earth*, 528 U.S. at 189, 120 S.Ct. 693 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)).

*Hartnett v. Pennsylvania State Educ. Ass'n*, 963 F.3d 301, 306-07 (3d Cir. 2020).

The DRBC asserts that the purpose of the exception is "to deter a 'manipulative litigant [from] immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after.'" (Doc. 217 at 9 (quoting *Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 59 (1st Cir. 2016)).) The DRBC contrasts this scenario with the situation where the doctrine may not apply at all because the voluntary cessation was initiated before litigation began. (Doc. 217 at 9 (citing *Drenth v. Bookvar*, Civ. A. No. 1:20-CV-00829, 2020 WL 4805621, at *6 (M.D. Pa. Aug. 18, 2020) (citing *Hartnett*, 963 F.3d at 306); *Fed'n of Adver. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 929-30 (7th Cir. 2003)).)

The DRBC first argues that, in this case, "the rulemaking process predates the Complaint, and the February 2021 regulation, following notice and comment, is the action of sovereign entities working within the congressionally approved Compact structure to make a binding decision impacting each state in the Basin." (Doc. 217 at 10.) The DRBC is correct that the rulemaking process predates the Complaint in that the DRBC first released proposed fracking regulations in 2010. *See supra* p. 6.

The Court concludes that the timeline of the rulemaking process and the source of the relevant regulation support the DRBC's mootness argument. This is not a case where Defendant DRBC "yield[ed] in the face of a court order." *Hartnett*, 963 F.3d at 306 (citations omitted). Rather, the rulemaking was systematically undertaken over an extended period of

time which began years before this action was filed. *See supra* p. 6 & n.1. Further, it is a

case where Defendant DRBC "cease[d]" its assertion of § 3.8 project review over WLMG's

proposed activities because of a new regulation, a situation which makes the "argument for

mootness much stronger." *Hartnett*, 963 F.3d at 307 (citations omitted). Further, the DRBC

is not "free to return to [its] old ways," *Gulden*, 119 F.4th at 308, because the basis for the

asserted project review, i.e., the 2009 and 2010 Executive Director determinations asserting

§ 308 project review, have been replaced by the regulation banning HDHF in the Basin, *see*

*supra*. Thus, there is no returning to old ways: any potential assertion of project review over

HDHF activities in the Basin would necessarily be preceded by repeal of the relevant

regulation and a new assertion of project review authority.

Further, the regulation at issue has been challenged in the Eastern District of

Pennsylvania and the Third Circuit Court of Appeals and remains intact. *See Yaw v. DRBC*,

49 F.4th 302 (3d Cir. 2022). With the relevant regulation remaining intact and the asserted §

3.8 project review no longer in existence, "the voluntary-cessation exception [is] defeated

[because] (1) it can be said with assurance that there is no reasonable expectation that the

alleged violation will recur, and (2) interim relief or events have completely and irrevocably

eradicated the effects of the alleged violation." *Gulden*, 119 F.4th at 308 n.3 (internal

quotation omitted).

For similar reasons, the capable-of-repetition-yet-evading-review exception does not

apply here. "The capable-of-repetition prong of the exception requires 'a reasonable

expectation' or a 'demonstrated probability' that 'the *same* controversy will recur involving the *same* complaining party.'" *Gulden*, 119 F.4th at 309 (quoting *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (emphasis added in *Gulden*) (internal quotation omitted)) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.")). As discussed above, the same controversy will not likely occur because the regulation banning HDHF controls WLMG's planned activities in the Basin and would have to be repealed before the DRBC could assert project review authority over the activities.

Assuming *arguendo* that the first prong were satisfied, analysis of the second prong does not support application of this mootness exception. "[T]o satisfy the evading-review prong of the exception, 'the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration[.]'" *Gulden*, 119 F.4th at 309 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam)). Here, should the relevant regulation be repealed and the DRBC assert project review over WLMG's activities in the Basin, there would be no durational concern regarding potential litigation contesting project review authority. WLMG asserts that the DRBC "should not be able to pivot back and forth between barriers asserted to WLMG's proposed development." (Doc. 218 at 5.) This characterization does not fairly summarize the actions taken by the DRBC where the adoption of Resolution

No. 2021-01 is the culmination of a multi-year information-gathering and rulemaking

process. Thus, neither prong of the second mootness exception applies in this case.

## C. Prudential Considerations

WLMG also asserts that, in addition to the mootness exceptions, "prudential

considerations weigh against mooting this case." (Doc. 218 at 5 (citing *Bhd. of Boilermakers*

*v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987) ("In addition to its threshold constitutional

dimension, mootness doctrine incorporates prudential considerations as well.")).) WLMG's

rationale is that

> [t]his case has been extensively litigated by the parties, including two trips to
> the Court of Appeals and multiple decisions by this Court. The parties are
> prepared to proceed to trial. The Court should not eviscerate the investment of
> time and resources by the parties and the Court because the Commission,
> faced with a trial over its flawed assertion of Section 3.8 project review
> jurisdiction, has decided to erect a new regulatory barrier to WLMG's proposed
> development.

(Doc. 218 at 5.)

The Court rejects this argument for the reasons discussed in the previous sections of

this Memorandum Opinion. The fundamental flaw in WLMG's position is its failure to

acknowledge that § 3.8 project review jurisdiction over WLMG's proposed activities is no

longer in existence. As this is the only prudential basis asserted to defeat mootness, the

Court finds that it presents no barrier to concluding that this case is moot.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Delaware River Basin

Commission's Suggestion of Mootness and Motion to Dismiss (Doc. 216). An appropriate

Order will enter.

_____
Robert D. Mariani
United States District Judge